UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA          :

          -v.-                     :        INDICTMENT

MUSTAFA KAMEL MUSTAFA,             :        S1 04 Cr. 356 (JFK)
     a/k/a "Abu Hamza,"
     a/k/a "Abu Hamza al-Masri,"   :
     a/k/a "Mustafa Kamel,"
     a/k/a "Mostafa Kamel Mostafa,":

     and                           :

HAROON RASHID ASWAT,               :
     a/k/a "Haroon,"
     a/k/a "Haroon Aswat,"         :

          Defendants.

- - - - - - - - - - - - - - - - - -X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: SEP 1 2 2005

## COUNT ONE

CONSPIRACY TO TAKE HOSTAGES
(THE ATTACK IN YEMEN)

The Grand Jury charges:

1.   From on or about December 23, 1998, up to and
including on or about December 29, 1998, in an offense begun out
of the jurisdiction of any particular State or district, MUSTAFA
KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri,"
a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the
defendant, and others known and unknown, at least one of whom was
first brought to and arrested in the Southern District of New
York, unlawfully and knowingly combined, conspired, confederated
and agreed together and with each other to violate Section 1203
of Title 18, United States Code.

2.    It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did, inside and outside the United States, unlawfully and knowingly seize and detain and threaten to kill, to injure, and to continue to detain other persons, including two U.S. nationals, in order to compel a third person and a governmental organization, to wit, the government of Yemen, to do and abstain from doing any act as an explicit and implicit condition for the release of the persons detained.

<u>Overt Acts</u>

3.    In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed:

a.    In or about late 1998, MUSTAFA KAMEL MUSTAFA, the defendant, provided a co-conspirator not named as a defendant herein ("Co-Conspirator 1"), the leader of the Abyan faction of the Islamic Army of Aden, and a group of co-conspirators not named as defendants herein (hereafter, the "hostage-takers") with a satellite phone.

b.    On or about December 27, 1998, MUSTAFA KAMEL MUSTAFA, the defendant, received three telephone calls at his home from the satellite phone he had previously provided to the hostage-takers.

c.   On or about December 28, 1998, the hostage-takers stormed a caravan of sport utility vehicles carrying sixteen Western tourists and took the tourists hostage by use of force.

d.   On or about December 28, 1998, MUSTAFA KAMEL MUSTAFA, the defendant, spoke to Co-Conspirator 1 on the satellite phone after the hostage-taking was already underway. During that telephone call, MUSTAFA KAMEL MUSTAFA, the defendant, agreed to act as an intermediary for Co-Conspirator 1 and the hostage-takers, and gave Co-Conspirator 1 certain advice related to the hostage-taking.

e.   On or about December 29, 1998, after the hostage-taking was underway, MUSTAFA KAMEL MUSTAFA, the defendant, ordered five hundred British pounds worth of additional airtime for the satellite phone being used by the hostage-takers.

f.   On or about December 29, 1998, the Yemeni military attempted to rescue the hostages.  During the rescue attempt, the hostage-takers used the hostages as human shields and attempted to fight off the Yemeni military.  Although the military ultimately overpowered the hostage-takers, during the rescue attempt four of the hostages were killed and several others wounded.

(Title 18, United States Code, Section 1203.)

## COUNT TWO

### HOSTAGE-TAKING
### (THE ATTACK IN YEMEN)

The Grand Jury further charges:

4.     From on or about December 23, 1998, up to and including on or about December 29, 1998, in an offense begun out of the jurisdiction of any particular State or district, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly, inside and outside the United States, did seize and detain and threaten to kill, to injure, and to continue to detain other persons, including two U.S. nationals, in order to compel a third person and a governmental organization, to wit, the government of Yemen, to do and abstain from doing any act as an explicit and implicit condition for the release of the persons detained.

(Title 18, United States Code, Sections 1203 and 2.)

4

## COUNT THREE

CONSPIRACY TO PROVIDE AND CONCEAL
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

5.     From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339A of Title 18, United States Code.

6.     It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA and HAROON RASHID ASWAT, the defendants, and others known and unknown, would and did, within the United States, provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission

5

of such violation.

Overt Acts

7.    In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    On several occasions in or about October 1999, MUSTAFA KAMEL MUSTAFA, the defendant, discussed with a co-conspirator not named as a defendant herein ("Co-Conspirator 2"), a U.S. citizen, the creation of a jihad training camp in Bly, Oregon.  During these discussions, Co-Conspirator 2 asked MUSTAFA KAMEL MUSTAFA, the defendant, to send two of MUSTAFA KAMEL MUSTAFA's followers to the United States in order to assist Co-Conspirator 2 in raising money and establishing the Bly, Oregon jihad training camp.

b.    On or about October 25, 1999, Co-Conspirator 2 communicated to MUSTAFA KAMEL MUSTAFA, the defendant, that he and other co-conspirators not named as defendants herein were stock-piling weapons and ammunition in the United States.  Co-Conspirator 2 also communicated to MUSTAFA KAMEL MUSTAFA, the defendant, that Co-Conspirator 2 was "expecting the two brothers that we discussed to come in November."

c.    In or about late October 1999 or early November 1999, MUSTAFA KAMEL MUSTAFA, the defendant, asked HAROON RASHID ASWAT, the defendant, and another co-conspirator not named

6

as a defendant herein ("Co-Conspirator 3") to travel from London to the United States in order to assist with the Bly, Oregon jihad training camp.

      d.    On November 26, 1999, HAROON RASHID ASWAT, the defendant, and Co-Conspirator 3 arrived in the United States at John F. Kennedy International Airport in New York. From New York, HAROON RASHID ASWAT, the defendant, and Co-Conspirator 3 traveled by bus to Seattle, Washington, and then by car to Bly, Oregon, in order to assist with the Bly, Oregon jihad training camp, as requested by MUSTAFA KAMEL MUSTAFA, the defendant.

      (Title 18, United States Code, Section 371.)

## COUNT FOUR

PROVIDING AND CONCEALING
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

      8.    From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the United States, provided material support and resources and concealed and disguised the nature,

7

location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

(Title 18, United States Code, Sections 2339A and 2.)

## COUNT FIVE

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

9.    From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339B of Title 18, United States Code.

8

10.  It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA and HAROON RASHID ASWAT, the defendants, and others known and unknown, would and did, within the United States and subject to the jurisdiction of the United States, knowingly provide material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

Overt Acts

11.  In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt act, and the overt acts set out in Count Three of this Indictment which are incorporated herein by this reference, were committed in the Southern District of New York and elsewhere:

a.  On or about October 25, 1999, MUSTAFA KAMEL MUSTAFA, the defendant, received a facsimile proposal in London, England, regarding the creation of a jihad training camp in Bly, Oregon.

(Title 18, United States Code, Section 2339B(a)(1).)

## COUNT SIX

### PROVIDING MATERIAL SUPPORT
### AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
### (THE BLY, OREGON JIHAD TRAINING CAMP)

The Grand Jury further charges:

12.     From in or about October 1999, up to and including in or about early 2000, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," and HAROON RASHID ASWAT, a/k/a "Haroon," a/k/a "Haroon Aswat," the defendants, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the United States and subject to the jurisdiction of the United States, unlawfully and knowingly did provide, and attempt to provide, material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B(a)(1) and 2.)

## COUNT SEVEN

CONSPIRACY TO PROVIDE AND CONCEAL
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

13. From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339A of Title 18, United States Code.

14. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did provide material support and resources and conceal and disguise the nature, location, source, and ownership of material support and resources, knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

15.   In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.   In or about June 2000, Co-Conspirator 2 traveled from London, England, to New York, in part, to raise money for the Finsbury Park Mosque's hijrah fund from worshipers at local mosques.  During this trip, Co-Conspirator 2 traveled through Manhattan, New York, on his way to attempt to collect money at a mosque in Long Island, New York.  The money collected by Co-Conspirator 2 during this trip was added to the Finsbury Park Mosque's hijrah fund when Co-Conspirator 2 returned to London.

b.   In or about November 2000, MUSTAFA KAMEL MUSTAFA, the defendant, asked Co-Conspirator 2, a U.S. citizen, to escort another co-conspirator not named as a defendant herein ("Co-Conspirator 4"), who was one of the defendant's followers, from London, England, to a jihad training camp in Afghanistan operated by a "front-line commander."

c.   In or about November 2000, Co-Conspirator 2 took money out of the Finsbury Park Mosque's hijrah fund, which was to be used for certain travel expenses relating to the trip to Afghanistan with Co-Conspirator 4.

d.    In or about November 2000, MUSTAFA KAMEL
MUSTAFA, the defendant, introduced Co-Conspirator 2 to another
co-conspirator not named as a defendant herein ("Co-Conspirator
5") for purposes of arranging safehouses and lodging in Pakistan
and safe passage and transportation into Afghanistan.

e.    In or about November 2000, Co-Conspirator 2
and Co-Conspirator 4 traveled together from London, England, to
Pakistan.  Both men separately entered Afghanistan shortly
thereafter.

(Title 18, United States Code, Section 2339A.)


### COUNT EIGHT

PROVIDING AND CONCEALING
MATERIAL SUPPORT AND RESOURCES TO TERRORISTS
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

16.    From in or about June 2000, up to and including on
or about December 19, 2001, in the Southern District of New York
and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a
"Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel
Mostafa," the defendant, and others known and unknown, at least
one of whom was first brought to and arrested in the Southern
District of New York, provided material support and resources and
concealed and disguised the nature, location, source, and
ownership of material support and resources, knowing and

intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country), and in preparation for, and in carrying out, the concealment and an escape from the commission of such violation.

(Title 18, United States Code, Sections 2339A and 2.)

## COUNT NINE

CONSPIRACY TO PROVIDE MATERIAL SUPPORT
AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION
(FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

17.    From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 2339B of Title 18, United States Code.

18.    It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, would and did, within the United States and subject to

14

the jurisdiction of the United States, knowingly provide material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

<u>Overt Acts</u>

19.   In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt act, among others, was committed:

a.   In or about March or April 2001, MUSTAFA KAMEL MUSTAFA, the defendant, sent directions to Co-Conspirator 4, who was in Afghanistan at the time, to seek out the "front-line commander" in Afghanistan who was expecting Co-Conspirator 4.

(Title 18, United States Code, Section 2339B(a)(1).)

## COUNT TEN

### PROVIDING MATERIAL SUPPORT AND RESOURCES TO A FOREIGN TERRORIST ORGANIZATION (FACILITATING VIOLENT JIHAD IN AFGHANISTAN)

The Grand Jury further charges:

20.  From in or about June 2000, up to and including on or about December 19, 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, within the United States and subject to the jurisdiction of the United States, knowingly provided material support and resources to a foreign terrorist organization, to wit, a terrorist organization known as "al Qaeda" and led by Usama Bin Laden, which was designated by the Secretary of State as a foreign terrorist organization on or about October 8, 1999, pursuant to Section 219 of the Immigration and Nationality Act, and was redesignated as such on or about October 5, 2001, and October 2, 2003.

(Title 18, United States Code, Sections 2339B(a)(1) and 2.)

## COUNT ELEVEN

### CONSPIRACY TO SUPPLY GOODS
### AND SERVICES TO THE TALIBAN
### (IEEPA VIOLATIONS)

The Grand Jury further charges:

21.  On July 4, 1999, President of the United States William J. Clinton declared a national emergency in Executive Order 13129 to deal with the threat posed by al Qaeda and the Taliban, Afghanistan's dominant political force at that time. Specifically, the President found that:

> The actions and policies of the Taliban in Afghanistan, in allowing territory under its control in Afghanistan to be used as a safe haven and base of operations for Usama bin Laden and the [al Qaeda] organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals, constitute an unusual and extraordinary threat to the national security and foreign policy of the United States.

22.  In his Executive Order 13129, the President prohibited, among other things, United States persons from making or receiving any contribution of funds, goods, or services to or for the benefit of the Taliban, and from supplying, directly or indirectly, any goods, software, technology, or services to the Taliban or to the territory of Afghanistan controlled by the Taliban.

23.  On June 30, 2000, the national emergency with respect to the Taliban was continued.  One year later, the national emergency was again continued, pursuant to a finding by

President of the United States George W. Bush that "[t]he Taliban continues to allow territory under its control in Afghanistan to be used as a safe haven and base of operations for Usama bin Laden and the [al Qaeda] organization who have committed and threaten to continue to commit acts of violence against the United States and its nationals."

24. From in or about the Spring of 2000, up to and including in or about late 2001, in the Southern District of New York and elsewhere, MUSTAFA KAMEL MUSTAFA, a/k/a "Abu Hamza," a/k/a "Abu Hamza al-Masri," a/k/a "Mustafa Kamel," a/k/a "Mostafa Kamel Mostafa," the defendant, and others known and unknown, at least one of whom was first brought to and arrested in the Southern District of New York, unlawfully and knowingly combined, conspired, confederated and agreed together and with each other to violate Section 1705(b) of Title 50, United States Code, and Sections 545.204 and 545.206(b) of Title 31, Code of Federal Regulations.

25. It was a part and an object of the conspiracy that MUSTAFA KAMEL MUSTAFA, the defendant, and others known and unknown, did unlawfully and knowingly violate a regulation issued under Chapter 35 of Title 50, United States Code, in that at least one United States person, along with others known and unknown, did conspire to unlawfully supply funds, goods, and services to the Taliban, to the territory of Afghanistan controlled by the Taliban, and to persons whose property and

18

interests in property were blocked pursuant to Title 31, Code of Federal Regulations, Section 545.201.

Overt Acts

26.    In furtherance of said conspiracy, and to effect the illegal object thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

a.    From in or about the Spring of 2000, up to and including at least September 6, 2001, MUSTAFA KAMEL MUSTAFA, the defendant, posted messages on the Supporters of Shariah ("SOS") website, with the assistance of Co-Conspirator 2, a U.S. citizen, urging the defendant's followers to donate money, goods, and services to Taliban-sponsored programs in the area of Afghanistan controlled by the Taliban.

b.    In or about late 2000, at the request of MUSTAFA KAMEL MUSTAFA, the defendant, Co-Conspirator 2 agreed to deliver Co-Conspirator 4, a person desiring to undergo violent jihad training, to an individual located in the territory of Afghanistan controlled by the Taliban.

c.    In or about late 2000, at the request of MUSTAFA KAMEL MUSTAFA, the defendant, Co-Conspirator 2 delivered compact discs containing MUSTAFA KAMEL MUSTAFA's statements to certain individuals located in the territory of Afghanistan controlled by the Taliban.

19

d.    From in or about March 2001, up to and including at least September 6, 2001, MUSTAFA KAMEL MUSTAFA, the defendant, and Co-Conspirator 2 discussed plans to establish a computer lab in Afghanistan.  During these discussions, MUSTAFA KAMEL MUSTAFA, the defendant, stated that he wanted the computer lab to be located in Kandahar and to service Taliban officials and the Afghani people located in Kandahar, which was then controlled by the Taliban.

e.    On or about September 6, 2001, Co-Conspirator 2 departed London, England for Pakistan, and then Afghanistan. Prior to his departure, MUSTAFA KAMEL MUSTAFA, the defendant, gave Co-Conspirator 2 approximately six thousand British pounds which were, in part, to be used to lease a building which would house the computer lab and to pay for some of the start up expenses for the computer lab.

(Title 18, United States Code, Section 371;
Title 50, United States Code, Section 1705(b); and
Title 31 Code of Federal Regulations,
Sections 545.204 and 545.206(b).)


FOREPERSON

MICHAEL J. GARCIA
United States Attorney

20

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**MUSTAFA KAMEL MUSTAFA,**
     a/k/a "Abu Hamza,"
     a/k/a "Abu Hamza al-Masri,"
     a/k/a "Mustafa Kamel,"
     a/k/a "Mostafa Kamel Mostafa,"

     **and**

**HAROON RASHID ASWAT,**
     a/k/a "Haroon,"
     a/k/a "Haroon Aswat,"

          **Defendants.**

## INDICTMENT

S1 04 Cr. 356 (JFK)

(Title 18, United States Code,
Sections 2, 371, 1203, 2339A,
and 2339B, and Title 50,
United States Code, Section 1705(b))

               MICHAEL J. GARCIA
             United States Attorney.

**A TRUE BILL**

_Betsy Bradley_
                 Foreperson.