UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA       :       04 Cr 356 (KBF)

      - against -       :       (Electronically Filed)

MOSTAFA KAMEL MOSTAFA ,       :

      Defendant.       :
-------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
MOSTAFA KAMEL MOSTAFA'S PRE-TRIAL MOTIONS**


> JOSHUA L. DRATEL
> DRATEL & MYSLIWIEC
> 2 Wall Street
> 3rd floor
> New York, New York 10005
> (212) 732-0707
>
> JEREMY SCHNEIDER
> ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
> 100 Lafayette Street
> Suite 501
> New York, New York 10013
> 212-571-5500
>
>
> *Attorneys for Defendant Mostafa Kamel Mostafa*


 – Of Counsel –

Joshua L. Dratel
Jeremy Schneider
Lindsay A. Lewis

# TABLE OF CONTENTS

**Table of Contents**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

**Table of Authorities**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

**INTRODUCTION**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**STATEMENT OF FACTS**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

**ARGUMENT**

**POINT I**

**COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE
THEY FAIL TO ESTABLISH SUFFICIENT NEXUS BETWEEN
MR. MOSTAFA AND THE UNITED STATES TO WARRANT
EXTRATERRITORIAL APPLICATION OF 18 U.S.C. §1203, AND
BECAUSE THE CHARGES THUS DENY MR. MOSTAFA HIS
FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS**. . . . . . . . . . . . 4

A.      *The Government Has Not Established a Sufficient Nexus Between Mr. Mostafa
        and the United States in Either Count One or Count Two of the Indictment*. . . . . . . . 6

**B.**      *Counts One and Two of the Indictment Are Insufficient to Satisfy Due Process*. . . . . 7

**POINT II**

**COUNTS SEVEN THROUGH TEN MUST BE DISMISSED BECAUSE
THEY FAIL TO ESTABLISH SUFFICIENT NEXUS BETWEEN
MR. MOSTAFA AND THE UNITED STATES TO WARRANT
EXTRATERRITORIAL APPLICATION OF 18 U.S.C. §2339A
AND §18 U.S.C. §2339B, AND BECAUSE THEY THUS DENY
MR. MOSTAFA HIS FIFTH AMENDMENT CONSTITUTIONAL
RIGHT TO DUE PROCESS**.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

A.      *The Indictment Fails to Establish a Sufficient Nexus Between Mr.
        Mostafa and the United States in Counts Seven and Eight to Charge
        Him With Conspiracy to Provide and to Conceal Material Support to
        Terrorists and Providing and Concealing Material Support, Respectively*. . . . . . . . . . 9

B.      *The Indictment Fails to Establish a Sufficient Nexus Between Mr.
        Mostafa and the United States in Counts Nine and Ten to Charge
        Him With Conspiracy to Provide Material Support and Resources to*

*Terrorists and Providing and Material Support and Resources, Respectively* . . . . . . . 11

**C.**   *Counts Seven Through Ten of the Indictment Are*
       *Insufficient to Satisfy Due Process* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**POINT III**

**COUNT ELEVEN MUST BE DISMISSED BECAUSE IT FAILS
TO ESTABLISH SUFFICIENT NEXUS BETWEEN MR. MOSTAFA
AND THE UNITED STATES TO WARRANT EXTRATERRITORIAL
APPLICATION OF IEEPA TO MR. MOSTAFA, AND BECAUSE
THE COUNT THUS DENIES MR. MOSTAFA HIS FIFTH
AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS.** . . . . . . . . . . . . . . . . . 13

**A.**   *The Government Has Not Established a Sufficient Nexus Between Mr.*
       *Mostafa and the United States in Count Eleven to Charge Him With*
       *Conspiring to Supply Goods and Services to the Taliban in Violation of IEEPA* . . . . 13

**B.**   *Count Eleven of the Indictment Is Insufficient to Satisfy Due Process* . . . . . . . . . . . 15

**POINT IV**

**THE INDICTMENT SHOULD BE DISMISSED BECAUSE IT
FAILS TO STATE AN OFFENSE.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**A.**   *The Relevant Case Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**B.**   *None of the Eleven Counts Includes Facts Sufficient to State an Offense.* . . . . . . . . . 17

       **1.**   *Count One:  Conspiracy to Take Hostages (Yemen)* . . . . . . . . . . . . . . . . . . . . . . 17

       **2.**   *Count Two:  Hostage-Taking In Yemen.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

       **3.**   *Count Three:  Conspiracy to Provide and Conceal Material*
            *Support and Resources to Terrorists (Bly, Oregon Training Camp)* . . . . . . . . 19

       **4.**   *Count Four:  Providing and Concealing Material Support and*
            *Resources to Terrorists (Bly, Oregon Jihad Training Camp).* . . . . . . . . . . . . . 21

       **5.**   *Count Five:  Conspiracy to Provide Material Support and Resources*
            *to a Foreign Terrorist Organization (Bly, Oregon Jihad Training Camp).* . . . . 21

       **6.**   *Count Six:  Providing Material Support and Resources to a*

*Foreign Terrorist Organization (Bly, Oregon Jihad Training Camp)*........ 22

7.     *Count Seven:  Conspiracy to Provide and Conceal Material Support and Resources to Terrorists (Facilitating Violent Jihad in Afghanistan)*. . . . 22

8.     *Count Eight:  Providing and Concealing Material Support and Resources to Terrorists (Facilitating Violent Jihad in Afghanistan)*........ 23

9.     *Count Nine:  Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization (Facilitating Violent Jihad in Afghanistan).* ........................... 23

10.    *Count Ten:  Providing Material Support and Resources to a Foreign Terrorist Organization (Facilitating Violent Jihad in Afghanistan).* ........ 24

11.    *Count Eleven:  Conspiracy to Supply Goods and Services to the Taliban*..... 24

**POINT V**

**COUNTS THREE, FOUR, SEVEN AND EIGHT SHOULD BE DISMISSED, BECAUSE EACH FAILS TO IDENTIFY THE REQUISITE CONSPIRACY UNDER 18 U.S.C. §956**........................ 29

A.     *The §956 Conspiracies Charged In Counts Three and Four Are Insufficiently Articulated Because the Allegations Do Not Specify Any of the Key Aspects of the Underlying Offense.* ................... 29

B.     *Both Counts Seven and Eight Fail to Articulate the Underlying §956 Conspiracy That Constitutes an Essential Element of Each Offense.* ............. 31

**POINT VI**

**THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE THE REQUESTED BILL OF PARTICULARS**..................... 32

A.     *A Bill of Particulars Is Necessary for the Preparation of Mr. Mostafa's Defense.* . . . 33

1.     *The Government Must Specify Distinctions, If Any, Between Separate Counts.*........................................... 34

2.     *The Government Must Particularize Transactions the Indictment Describes In Undefined or Only General Terms.* .............. 35

3.      *The Government Must Identify the Contents Of,
        and Parties Involved In, the Communications Alleged.* . . . . . . . . . . . . . . . . . . . 37

B.    *A Bill of Particulars Is Necessary to Protect Mr. Mostafa
      Against Double Jeopardy.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

C.    *The Requested Particulars.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

**POINT VII**

**THE COURT SHOULD STRIKE IRRELEVANT AND
PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT.** . . . . . . . . . . . . . . . . . . . . . 55

A.    *The Applicable Law Regarding Surplusage.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

B.    *All References to Bin Laden In Counts Five and Six of the Indictment
      Are Irrelevant to the Charged Offenses and Must Be Struck as Unduly
      Prejudicial Surplusage, and to Protect Mr. Mostafa's Right to Due
      Process and a Fair Trial Guaranteed by the Fifth and Sixth Amendments.* . . . . . . . . 57

        1.      *Al Qaeda's Leadership by Usama Bin Laden Is Irrelevant and
                Prejudicial Surplusage Pursuant to Rule 7(d), Fed.R.Crim.P.;
                in That It Is Not an Element of Either Count Five or Count Six.* . . . . . . . . . . . 58

        2.      *Reference to Usama Bin Laden's Leadership of Al Qaeda Must
                Be Struck Pursuant to Fed.R.Evid. 403 Because it Lacks Any
                Probative Value and Is Unduly Prejudicial to Mr. Mostafa.* . . . . . . . . . . . . . . . 59

        3.      *References to Bin Laden's Leadership of Al Qaeda Must Be
                Struck from the Indictment to Protect Mr. Mostafa's Fifth
                and Sixth Amendment Rights to Due Process and a Fair Trial.* . . . . . . . . . . . . 60

C.    *Broadening Phrases, Such as "Others Known and Unknown,"
      "Among Others," and Elsewhere," Must Be Stricken Because They
      Impermissibly Expand the Charges Against Mr. Mostafa.* . . . . . . . . . . . . . . . . . . . . . 60

**POINT VIII**

**THE MULTIPLICITOUS COUNTS IN THE INDICTMENT
VIOLATE THE FIFTH AMENDMENT PROHIBITION AGAINST
DOUBLE JEOPARDY AND MUST BE DISMISSED.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

A.    *The Applicable Law and Principles Governing the
      Mutiplicity of Charges Arising Under Two Separate Statutes.* . . . . . . . . . . . . . . . . . . 61

iv

**B.**    ***Several Charges in the Indictment are Impermissibly and Unlawfully Multiplicitous.*** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **62**

**CONCLUSION.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **64**

# TABLE OF AUTHORITIES

## CASES

*Ashe v. Swenson*, 397 U.S. 436 (1970). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

*Ball v. United States*, 470 U.S. 856 (1985). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Blockberger v. United States*, 284 U.S. 299 (1932). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*Capital Cities/ABC, Inc. v. Brady*, 740 F.Supp. 1007 (S.D.N.Y. 1990). . . . . . . . . . . . . . . . 27

*Cernuda v. Heavey*, 720 F.Supp. 1544 (S.D. Fla. 1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Gawne v. United States*, 409 F.3d 1399 (9th Cir. 1969). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Milentz v. United States*, 446 F.2d 111 (10th Cir. 1971). . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*Morrison, et. al., v. National Australia Bank Ltd, et. al.,* 130 S.Ct. 2869 (2010). . . . . . . . . . . 45

*Russell v. United States*, 369 U.S. 749 (1962). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17, 18, 19

*United States v. Al-Kassar*, 582 F.Supp.2d 488 (S.D.N.Y. 2008). . . . . . . . . . . . . . . . . . . . . . 7, 12

*United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Alsugair*, 256 F.Supp.2d 306 (D.N.J. April 3, 2003). . . . . . . . . . . . . . . . . . . 17

*United States v. Archer*, 455 F.2d 193 (10th Cir. 1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

*United States v. Awan*, 459 F.Supp.2d 167 (E.D.N.Y. 2006). . . . . . . . . . . . . . . . . . . . . . . . . 18

*United States v. Bartnovsky*, 820 F.2d 572 (2d Cir. 1987). . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

*United States v. Bin Laden (El-Hage)*, 92 F.Supp.2d (S.D.N.Y. 2000). . . . . . . . . . . . . . . . 36, 37

*United States v. Chacko*, 169 F.3d 140 (2d Cir. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 61

*United States v. Davidoff*, 845 F.2d 1151 (2d Cir. 1988). . . . . . . . . . . . . . . . . . . . . . . . . . . 33, 37

*United States v. Davis*, 905 F.2d 245 (9th Cir. 1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 12

*United States v. Dixon*, 509 U.S. 688 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 62

*United States v. Greene*, 497 F.2d 1068 (7th Cir. 1984)............................ 56, 60

*United States v. Hashmi*, not reported in ____ F.Supp.2d ____,

    2009 WL 4042841 (S.D.N.Y. 2009)........................................ 16

*United States v. Josephberg*, 459 F.3d 350 (2d Cir. 2006). ........................... 62

*United States v. Kassir*, not reported in ____ F.Supp.2d ____,

    2009 WL 995139 (S.D.N.Y. 2009)................................. 57, 59, 60

*United States v. Khan*, 35 F.3d 426 (9th Cir. 1994)..................................... 8

*United States v. Klimavicius-Viloria*, 144 F.3d 1249 (9th Cir. 1998). ..................... 8

*United States v. LaSpina*, 299 F.3d 165 (2d Cir. 2002)................................ 18

*United States v. Malochowski*, 604 F.Supp.2d 512 (N.D.N.Y. 2009)..................... 56

*United States v. Mulder*, 273 F.3d 91 (2d Cir. 2001). ........................... 56, 58

*United States v. Nachamie*, 91 F.Supp.2d 565 (S.D.N.Y. 2000)........................ 33

*United States v. Panarella*, 227 F.3d 678 (3d Cir. 2000). ........................ 17, 18

*United States v. Paracha*, not reported in ____ F.Supp.2d ____,

    2006 WL 12768 (S.D.N.Y. 2006)................................... 25, 26

*United States v. Pirro*, 212 F.3d 86 (2d Cir. 2000). ..................... 16, 17, 18, 19

*United States v. Pope*, 189 F.Supp. 12 (S.D.N.Y. 1960). ............................ 61

*United States v. Reumayr*, 530 F.Supp.2d 1210 (4th Cir. 2008)........................ 8

*United States v. Sattar*, 314 F.Supp.2d 279 (S.D.N.Y. 2004). ......................... 29

*United States v. Scarpa*, 913 F.2d 992 (2d Cir. 1990)................................ 56

*United States v. Urso*, 369 F.Supp.2d 254 (E.D.N.Y. 2005)........................... 18

*United States v. Walsh*, 194 F.3d 37 (2d Cir. 1999). ................................ 16

*United States v. Yousef*, 327 F.3d 56 (2d Cir. 2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 7, 12, 13

*Williams v. New York*, 337 U.S. 241 (1949). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

## STATUTES

**U.S. Const. Amend. V**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 9, 13, 16, 57, 58, 64

**U.S. Const. Amend. VI**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 57, 58

**18 U.S.C. § 2**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**18 U.S.C. § 371**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 19, 24

**18 U.S.C. § 956**. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 19, 20, 21, 22, 23, 29, 30, 31, 32, 35, 63, 65

**18 U.S.C. § 956(a)(1)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**18 U.S.C. § 1203**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 5, 17, 19, 34, 64

**18 U.S.C. § 2339A**. . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3, 9, 11, 19, 21, 23, 29, 31, 62, 63, 64

**18 U.S.C. § 2339B**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 21, 22, 23, 60, 62, 63, 64

**18 U.S.C. § 2339B(a)(1)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3

**18 U.S.C. § 3500**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

**31 C.F.R. § 545.201**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**31 C.F.R. § 594.305**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**31 C.F.R. § 595.204**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**31 C.F.R. § 595.206(b)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

**50 U.S.C. § 5(b)(4)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**50 U.S.C. § 1702(b)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

**50 U.S.C. § 1702(b)(4)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

**50 U.S.C. § 1702(b)(3)**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

50 U.S.C. § 1705(b), International Emergency Economic

    Powers Act ("IEEPA") . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 3, 13, 24, 28, 35, 64

§525, Foreign Relations Authorization Act, P.L. 103-236,

    Free Trade in Ideas Amendment ("FTIA"). . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 28

 Rule 7(d), Fed.R.Crim.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 55, 56, 57, 58, 60, 65

Rule 12(b), Fed.R.Crim.P.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Rule 401, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Rule 403, Fed.R.Evid.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58, 59

Local Criminal Rule 16.1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38

OTHER

H.R. Conf.Rep. No. 482, 103rd Cong., 2nd Sess., 1994 U.S.C.C.A.N. 398. . . . . . . . . . . . . . . . 27

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Mostafa Kamel Mostafa, in support of his pre-trial motions addressed to the face of the Indictment, and which seek the following relief:

I.      dismissal of Counts One and Two because they do not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of 18 U.S.C. §1203, and because the charges thus deny Mr. Mostafa his Fifth Amendment constitutional right to Due Process;

II.     dismissal of Counts Seven through Ten because they do not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of 18 U.S.C. §2339A, and because charges thus deny Mr. Mostafa his Fifth Amendment constitutional right to Due Process;

III.    dismissal of Count Eleven because it does not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of IEEPA, and because the charge thus denies Mr. Mostafa his Fifth Amendment constitutional right to Due Process;

IV.     dismissal of the Indictment for failure to state an offense;

V.      dismissal of Counts Three, Four, Seven, and Eight, because each fails to identify the requisite conspiracy under 18 U.S.C. §956;

VI.     a Bill of Particulars;

VII.    the striking of irrelevant and prejudicial surplusage from the Indictment, pursuant to Rule 7(d), Fed.R.Crim.P., including references to Usama Bin Laden's

1

leadership of al Qaeda, and impermissible broadening phrases such as "others

known and unknown," "among others," and elsewhere;" and

VIII.    compelling the government to elect among various paired counts in the Indictment

because they are multiplicitous.

The Indictment's principal and consistent fatal flaws, repeated throughout and targeted in

each of the points raised herein, are that it constitutes a "bare bones" instrument that does not

include sufficient jurisdictional nexus between Mr. Mostafa, his alleged conduct, and the U.S.

that would confer U.S. criminal jurisdiction over him, does not include sufficient factual

particularity to withstand pretrial challenge, and fails to describe adequately essential elements of

the offenses charged. Accordingly, for the reasons set forth below, it is respectfully submitted

that the Indictment should be dismissed.

## Statement of the Facts

Defendant Mostafa Kamel Mostafa is charged in an eleven-count indictment that alleges:

conspiracy to take hostages in Yemen, in violation of 18 U.S.C. §1203 (Count One);  hostage-

taking in Yemen, in violation of 18 U.S.C. §1203 and §2 (Count Two);  conspiracy, charged

under 18 U.S.C. §371, to provide and to conceal material support and resources to terrorists in

relation to the Bly, Oregon jihad training camp in violation of 18 U.S.C. §2339A (Count Three);

providing and concealing material support and resources to terrorists, in relation to the Bly,

Oregon jihad training camp, in violation of 18 U.S.C. §2339A and §2 (Count Four); conspiracy

to provide material support and resources to a foreign terrorist organization (hereinafter "FTO"),

to wit, al Qaeda, in violation of 18 U.S.C. §2239B(a)(1) (Count Five);  providing material

support or resources to an FTO, to wit, al Qaeda, in violation of 18 U.S.C. §2339B(a)(1) and §2

2

(Count Six); conspiracy to provide and conceal material support and resources to terrorists, in relation to facilitating violent jihad in Afghanistan, in violation of 18 U.S.C. §2339A (Count Seven);  providing and concealing material support and resources to terrorists, in relation to facilitating violent jihad in Afghanistan, in violation of 18 U.S.C. §2339A and §2 (Count Eight); conspiracy to provide material support and resources to an FTO, to wit, al Qaeda, in violation of 18 U.S.C. §2339B(a)(1) (Count Nine);  providing material support or resources to an FTO, to wit, al Qaeda, in violation of 18 U.S.C. §2339B(a)(1) and §2 (Count Ten); and conspiracy to supply funds, goods, and/or services to the Taliban, in violation of 18 U.S.C. §371 and the International Emergency Economic Powers Act (hereinafter "IEEPA") (50 U.S.C. §1705(b), 31 C.F.R. §595.204 & 595.206(b)) (Count Eleven).

Prior to this motion, Mr. Mostafa's request for a Bill of Particulars was communicated to the government in writing by letter dated April 3, 2013, [*see* April 3, 2013, Letter From Joshua L. Dratel, Esq., to Assistant United States Attorneys John P. Cronan and Edward Kim, a copy of which is attached as Exhibit 1 to the accompanying April 5, 2013, Declaration of Joshua L Dratel, Esq. (hereinafter "Dratel Decl.")].   Subsequently, AUSA Edward Kim informed counsel for Mr. Mostafa that the government declines to provide any of the requested particulars.  *See* Dratel Decl., at ¶ 2.  Consequently, this motion is necessary in part to provide Mr. Mostafa with the requested particulars.

## ARGUMENT

### POINT I

**COUNTS ONE AND TWO MUST BE DISMISSED BECAUSE THEY FAIL TO ESTABLISH SUFFICIENT NEXUS BETWEEN MR. MOSTAFA AND THE UNITED STATES TO WARRANT EXTRATERRITORIAL APPLICATION OF 18 U.S.C. §1203, AND BECAUSE THE CHARGES THUS DENY MR. MOSTAFA HIS <u>FIFTH AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS</u>**

The seriousness of the charges in this case does not strip Mr. Mostafa of the constitutional protections essential to the fair administration of justice in this country.  The Due Process Clause of the Fifth Amendment applies equally to all who are subjected to the enormous power of the federal criminal justice system, without regard to the nature of the allegations, and that protection requires that there be a nexus between a defendant and the United States sufficient to ensure that extraterritorial application of a criminal statute is not arbitrary or fundamentally unfair. *United States v. Yousef*, 327 F.3d 56, 111 (2d Cir. 2003).

In *Morrison, et. al., v. National Australia Bank Ltd, et. al.*, ___ U.S. ___, 130 S.Ct. 2869 (2010) the Supreme Court reiterated the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *Id.*, at 2877 (internal quotations omitted).  Addressing a claim brought pursuant to the Securities Exchange Act of 1934, the Court in *Morrison* dismissed the charges because the complaint involved purchases of foreign stock and all aspects of the claims "occurred outside of the United States." *Id.,* at 2887.

In addition, the Court in *Morrison* rejected the claim by the plaintiffs that "they seek no more than domestic application anyway, since Florida is where [the respondent company] and its

4

senior executives engaged in the deceptive conduct of manipulating [respondent company]'s financial models . . ." and that individual defendants made "misleading public statements" in Florida.  *Id*., at 2884.

As the Court noted in finding that conduct insufficient to confer jurisdiction upon U.S. courts, "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States[,]" adding that "the presumption against extraterritorial application would be a craven watchdog indeed if it retreated to its kennel whenever *some* domestic activity is involved in the case."  *Id*. (emphasis in original). [1]

The Court pointed out that the essential tortious acts at issue were the *securities transactions*, all of which occurred outside the U.S.  *Id*., at 2885.  *See also id*., at 2887 ("[n]ot deception alone, but deception with respect to certain purchases or sales [of securities] is necessary for a violation of the statute").[2]

In this case, with regard to Counts One and Two, it cannot even be said that the acts that occurred in the U.S. were as tangential as those in *Morrison* that occurred in the U.S. but were deemed insufficient to enable jurisdiction, because unlike in *Morrison,* there were *no acts whatsoever* that occurred in the U.S. with regard to Counts One and Two.  Thus, Counts One and Two of Indictment entirely fail to establish the requisite link between Mr. Mostafa and the

---

[1] The Court in *Morrison* also expressed concern that expanding extraterritorial jurisdiction would generate potential conflicts with the laws of other countries in which the essential acts occurred, and for which the statute did not account.  *Id*., at 2885-2886.  That presents a problem here as well, as some of the counts allege conduct Mr. Mostafa allegedly committed in the United Kingdom, but which was *not* illegal there.

[2] In so ruling, the Court also rejected the Solicitor General's proposed standard, *e.g.*, that "a transnational securities fraud violates [§10(b)] when the fraud involves significant conduct in the United States that is material to the fraud's success."  *Id*., at 2886.

United States.  Accordingly, since a sufficient nexus does not exist between Mr. Mostafa and the United States, Counts One and Two do not comport with due process and must be dismissed.

**A.**    ***The Government Has Not Established a Sufficient Nexus Between Mr. Mostafa and the United States in Either Count One or Count Two of the Indictment***

As set forth **ante**, the government has failed to establish for either Counts One or Two that there is a nexus between Mr. Mostafa and the United States sufficient to warrant the extraterritorial application of 18 U.S.C. §1203.

While the government clearly seeks to assert that Mr. Mostafa can be charged with conspiracy to take hostages (in Count One) and hostage-taking (in Count Two) in relation to an alleged hostage-taking incident in Yemen on the basis that two U.S. nationals were among those seized by the hostage-takers, there is nothing in the Indictment whatsoever that actually connects Mr. Mostafa to the United States, or evidences any intent to involve the United States in the alleged crimes.

Indeed, as set forth in Count One of the Indictment, the alleged "attack" did not occur on U.S. soil, but in Yemen.  Those implicated in the attack were not Americans but "the leader of the Abyan faction of the Islamic Army of Eden," and a group of "hostage-takers" located outside the United States.

Likewise, as set forth in the overt acts listed in Count One, Mr. Mostafa was alleged to have committed acts related to the Count One conspiracy, *i.e.,* receiving three telephone calls on the satellite phone he provided to the hostage-takers, from his home, which was located at that time in the United Kindgom, *not* the United States.

Nor was he even alleged to have used United States currency.  According to Count One,

Mr. Mostafa "ordered five hundred British pounds worth of additional airtime for the satellite phone being used by the hostage-takers[.]" Thus, Mr. Mostafa was neither in the U.S., or using the U.S. in any way in the course of the events encompassed by Counts One and Two. Indictment at ¶ 3(e).

Moreover, while Count One and Two state that the offenses occurred "inside and outside the United States," there is no overt act, nor any other statement set forth in the Indictment that indicates *any* act or criminal conduct occurred within the United States.[3]  Rather, it is clear from Count One that the locales involved in the attack, and the alleged offenses, were likely limited to Yemen and the United Kindgom.

Accordingly, the government has made no effort to document any link between Mr. Mostafa and the United States, and the mere coincidence that two United States nationals were taken during the attack is not sufficient to provide the requisite nexus.

**B**.    ***Counts One and Two of the Indictment Are Insufficient to Satisfy Due Process***

This case presents a situation dramatically different from that of each and every case in which a court found a nexus between the defendant and the United States sufficient to satisfy due process, and accordingly Counts One and Two must be dismissed.

In *Yousef*, the defendants conspired to attack United States-flag aircraft and in fact placed and (through a timing device) detonated an explosive aboard a foreign-flag aircraft in flight as a test run in furtherance of the conspiracy. 327 F.3d at 112.  In *United States v. Al-Kassar*, 582 F. Supp.2d 488, 494 (S.D.N.Y. 2008), the defendants allegedly  conspired to sell weapons to a

---

[3]  This is also the subject of one of the requested particulars, as set forth in Point VI, which asks the Court to compel the government to provide a Bill of Particulars.

Colombian narco-terrorist organization with the express expectation that such weapons would be used to kill United States nationals.  In *United States v. Davis*, 905 F.2d 245, 249 (9th Cir. 1990), the defendants intended to transport drugs into United States territory. *See also United States v. Klimavicius-Viloria*, 144 F.3d 1249, 1257-59 (9th Cir. 1998) (same); *United States v. Khan*, 35 F.3d 426, 429-30 (9th Cir. 1994) (same).  In *United States v. Reumayr*, 530 F.Supp.2d 1210, 1223 (4th Cir. 2008), the defendant allegedly conspired to blow up the Trans-Alaska pipeline, and reached out into the United States several times via email during the planning stages of the attack.

In contrast, Mr. Mostafa is alleged to have provided satellite phones to non-U.S. nationals located outside the U.S. from a location outside the U.S., and to have added additional airtime to one of these phones using foreign currency, in order to carry out an attack in Yemen, which is also outside the U.S., and with no expectation whatsoever that the attack in Yemen would affect United States interests.   In fact, as stated in Counts One and Two, the express purpose of alleged hostage-taking in Yemen was to "compel . . . the *government of Yemen*, to do and to abstain from doing an act as an explicit and implicit condition for the reasons of the persons detained." Indictment at ¶ 2, 4.

Thus, this case is entirely unlike those in which a court found a nexus between the defendant and the United States sufficient to satisfy due process, and accordingly Counts One and Two must be dismissed.

**POINT II**

**COUNTS SEVEN THROUGH TEN MUST BE DISMISSED
BECAUSE THEY FAIL TO ESTABLISH SUFFICIENT NEXUS
BETWEEN MR. MOSTAFA AND THE UNITED STATES TO
WARRANT EXTRATERRITORIAL APPLICATION OF
18 U.S.C. §2339A AND §18 U.S.C. §2339B, AND BECAUSE
THEY THUS DENY MR. MOSTAFA HIS FIFTH
AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS**

Likewise, Counts Seven through Ten charge Mr. Mostafa with violations of United States

statutes, including 18 U.S.C. §2339A and §18 U.S.C. §2339B, for facilitating or conspiring to

facilitate violent jihad in Afghanistan, but given the insufficient nexus between Mr. Mostafa and

the United States with respect to each of these charges, Counts Seven Through Ten must be

dismissed because they violate Mr. Mostafa's constitutional rights under the Due Process Clause

of the Fifth Amendment, as articulated **ante**, at 4.

**A.**   *The Indictment Fails to Establish a Sufficient Nexus Between Mr.
Mostafa and the United States in Counts Seven and Eight to Charge
Him With Conspiracy to Provide and to Conceal Material Support to
Terrorists and Providing and Concealing Material Support, Respectively*

Neither Counts Seven or Eight, which charge Mr. Mostafa with conspiracy to provide and

to conceal material support to terrorists and providing and concealing material support,

respectively, establish a nexus between Mr. Mostafa and the United States that is sufficient to

warrant the extraterritorial application of 18 U.S.C. §2339A.

While Count Seven, at ¶15(a), alleges that "Co-Conspirator 2 traveled from London,

England, to New York, in part to raise money for the Finsbury Park Mosque's hijrah fund from

worshippers at local mosques" including "a mosque in Long Island, New York" the allegations

central to this charge, that of facilitating violent jihad in Afghanistan, all took place outside of the

9

United States, and exclusively involved and/or were aimed at London, Pakistan and Afghanistan. *See* Indictment, at ¶15(b) - (e).

Perhaps even more significantly, none of the descriptive allegations with regard to Count Seven evidence any connection whatsoever between the United States and Mr. Mostafa, who was based in London, approximately 3,000 miles away from United States soil for the duration of the conspiracy.

In fact those allegations which do implicate Mr. Mostafa allege  (1) that Mr. Mostafa "asked" Co-Conspirator 2 to escort Co-Conspirator 3 "from *London, England to* a jihad training camp in *Afghanistan*," as set forth in ¶15(b) of the Indictment (emphasis added); and  (2)  that Mr. Mostafa "introduced Co-Conspirator 2 to . . . Co-Conspirator 4 for the purposes of arranging safehouses and lodging *in Pakistan* and safe passage and transporation *to Afghanistan*," as set forth in ¶15(d) of the Indictment (emphasis added).  Thus, the overt acts implicating Mr. Mostafa involve exclusively locales outside the United States, limited to London, Pakistan, and Afghanistan.

The compete lack of nexus between Mr. Mostafa and the United States is also evident from Count Eight, which describes the overarching offense as "facilitating violent jihad *in Afghanistan*." *See* Indictment, at 11 (emphasis added).  Although Count Nine, at ¶ 16, states that the offense took place "in the Southern District and elsewhere," it is clear from the allegations in Count Seven, which allege a conspiracy to commit the very same substantive offense alleged in Count Eight, that Mr. Mostafa *never* aimed any of his alleged actions at the United States and was, in fact,  in London at the time that this crime was allegedly committed.  In addition, absent from the Indictment is any allegation that any of the money solicited in the U.S. for the *hijrah*

10

fund was used to "facilitate" violent *jihad* in Afghanistan.

Accordingly, and taking into account the Supreme Court's decision in *Morrison*, which state in part that "it is a rare case of prohibited extraterritorial application that lacks *all* contact with the territory of the United States[,]" 130 S.Ct. at 2884, the government's allegations are insufficient to provide the required nexus between Mr. Mostafa and the United States to permit the extraterritorial application of 18 U.S.C. §2339A.

**B.      *The Indictment Fails to Establish a Sufficient Nexus Between Mr.
         Mostafa and the United States in Counts Nine and Ten to Charge
         Him With Conspiracy to Provide Material Support and Resources to
         Terrorists and Providing and Material Support and Resources, Respectively***

Likewise, neither Counts Nine or Ten, which charge Mr. Mostafa with conspiracy to provide material support and resources to terrorists and providing material support and resources to terrorists,  respectively, establish a nexus between Mr. Mostafa and the United States that is sufficient to warrant the extraterritorial application of 18 U.S.C. §2339A.

While these charges allege that Mr. Mostafa and others conspired to provide and/or provided material support and resources to al Qaeda "within the United States and subject to the jurisdiction of the United States," it is clear from the descriptive allegations in the Indictment that the United States is in no way involved in these offenses and cannot therefore assert jurisdiction over them.

The *only* overt act specified in Count Nine states, at ¶19(a), that "in or about March or April 2001" Mr. Mostafa "sent directions to Co-Conspirator 3, who was in Afghanistan at the time, to seek out the 'front-line' commander in Afghanistan who was expecting Co-Conspirator 3."  Consistent with the ultimate charge here – facilitating jihad in Afghanistan – these acts are

clearly directed at Afghanistan.  And, when allegedly committed Mr. Mostafa was located in London, not the United States.  The same is true for Count Ten, which is merely the completed offense alleged in Count Nine.

Accordingly, as with Counts Seven and Eight, the governments allegations are insufficient to provide the required nexus between Mr. Mostafa and the United States to permit the extraterritorial application of 18 U.S.C. §2339A.

**C.**     ***Counts Seven Through Ten of the Indictment Are Insufficient to Satisfy Due Process***

As with Counts One and Two, Counts Seven through Ten present situations dramatically different from that of each and every case in which a court found a nexus between the defendant and the United States sufficient to satisfy due process, and accordingly Counts Seven through Ten must be dismissed.

As set forth **ante**, at 7-8, the case law demonstrates that in cases where courts have found a  nexus between the defendant and the United States sufficient to satisfy due process, United States interests, property, and nationals were targeted.  *See, e.g., Yousef*, 327 F.3d at 112 (the defendants conspired to attack United States-flag aircraft and bombed a foreign-flag aircraft as a test run in furtherance of the conspiracy);  *Al-Kassar*, 582 F.Supp.2d at 494 (S.D.N.Y. 2008) (the defendants allegedly conspired to sell weapons to the FARC with the express expectation that such weapons would be used to kill United States nationals);  *Davis*, 905 F.2d at 249 (the defendants intended to transport drugs into United States territory).

In this case, however, the overarching crime was to facilitate violent jihad in *Afghanistan*, not the United States, and there was no harm whatsoever, nor intended harm, to any United States interest, person, or property.

12

Since Mr. Mostafa himself was not present within the United States during the alleged

commission of these crimes, and his alleged actions did not involve the United States, it is clear

that this case is entirely unlike those in which a court found a nexus between the defendant and

the United States sufficient to satisfy due process, and accordingly Counts Seven through Ten

must be dismissed.

**POINT III**

**COUNT ELEVEN MUST BE DISMISSED BECAUSE IT FAILS
TO ESTABLISH SUFFICIENT NEXUS BETWEEN MR. MOSTAFA
AND THE UNITED STATES TO WARRANT EXTRATERRITORIAL
APPLICATION OF IEEPA TO MR. MOSTAFA, AND BECAUSE
THE COUNT THUS DENIES MR. MOSTAFA HIS FIFTH
AMENDMENT CONSTITUTIONAL RIGHT TO DUE PROCESS**

Count Eleven, which charges Mr. Mostafa with conspiring to supply goods and services

to the Taliban in violation of IEEPA must also be dismissed because the charge denies Mr.

Mostafa his Fifth Amendment constitutional right to Due Process due to the lack of a sufficient

nexus between Mr. Mostafa and the United States to warrant the application of IEEPA.  *Yousef*,

327 F.3d at 111.

**A.**     *The Government Has Not Established a Sufficient Nexus Between Mr.
        Mostafa and the United States in Count Eleven to Charge Him With
        Conspiring to Supply Goods and Services to the Taliban in Violation of IEEPA*

Count Eleven does not provide a sufficient nexus between Mr. Mostafa and the United

States to warrant the charge of conspiracy to supply goods and services to the Taliban in

violation of IEEPA.  As set forth in the Indictment, while Mr. Mostafa was alleged to have

conspired with a U.S. citizen, Co-Conspirator 2, among others, to supply funds, goods and

services to the Taliban, there is no indication in the descriptive allegations, *i.e.,* "the overt acts,"

13

that any party performed any act in relation to this conspiracy while within the United States.  In particular, Mr. Mostafa was not alleged to have been in the U.S. at any point during the time frame of the alleged conspiracy.

Moreover, the acts that are alleged in the Indictment, at ¶ 26(a) through (e), clearly demonstrate that any and all alleged efforts were directed at "an area of Afghanistan controlled by the Taliban."  Nor was there even any suggestion that these efforts were ultimately to be used against the United States or its people, interests, property, or government.

Indeed, the Indictment alleges that (1)  Mr. Mostafa "posted messages on the Supporters of Shariah ("SOS") website, with the assistance of Co-Conspirator 2, a U.S citizen, urging the defendant's followers to donate money, goods and services to Taliban-sponsored programs in the area of Afghanistan controlled by the Taliban, at ¶ 26(a);  (2)  at Mr. Mostafa's "request . . .  Co-Conspirator 2 agreed to deliver Co-Conspirator 3, a person desiring to undergo violent jihad training, to an individual located in the territory of Afghanistan controlled by the Taliban," at ¶ 26(b);  (3)  at Mr. Mostafa's "request . . .  Co-Conspirator 2 delivered compact disks containing the defendant's statements to certain individuals located in the territory  of Afghanistan controlled by the Taliban," at ¶ 26(c);  (4)  Mr. Mostafa and Co-Conspirator 2 "discussed plans to establish a computer lab in Afghanistan and Mr. Mostafa "stated that he wanted the computer lab to be located in Kandahar and to service Taliban officials and the Afghani people located in Kandahar, which was then controlled by the Taliban," at ¶ 26(d);  and (5)  that "Co-Conspirator 2 departed London, England for Pakistan, and then Afghanistan" and Mr. Mostafa "gave Co-Conspirator 2 approximately six thousand British pounds which were, in part, to be used to lease a building which would house the computer lab and to pay for some of the start up expenses for

the computer lab," at ¶26(e).

From these allegations it is evident that the locales involved were the United Kingdom, Pakistan and Afghanistan, and never the United States, and that the alleged support was at all times directed to Afghanistan, and was oftentimes from London to Afghanistan.

Thus, given that all of the alleged acts attributed to Mr. Mostafa took place outside of the United States and were directed to entities and locales outside of the United States, the government cannot establish a sufficient nexus between Mr. Mostafa and the United States to charge him with IEEPA, a violation of United States statutory law.

**B.      *Count Eleven of the Indictment Is Insufficient to Satisfy Due Process***

Accordingly, as with Counts One and Two, and Seven through Ten, the governments allegations are insufficient to provide the required nexus between Mr. Mostafa and the United States to permit the extraterritorial application of IEEPA, and given the dissimilarity between this case (where no act was directed at the United States or its people, property or interets) and those, set forth **ante**, at 7-8,  in which a court *did* find a nexus between the defendant and the United States sufficient to satisfy due process (in light of directed efforts to target the United States), Count Eleven must be dismissed.

**POINT IV**

**THE INDICTMENT SHOULD BE DISMISSED**
**<u>BECAUSE IT FAILS TO STATE AN OFFENSE</u>**

While each count of the eleven-count Indictment dutifully tracks statutory language for each of the offenses charged, the Indictment should nevertheless be dismissed because it fails  to state an offense under those statutes.  Constitutional doctrine, as explicated by the Second

15

Circuit, establishes that mere statutory recitation, absent sufficient factual particularity that makes the allegation a stationary, rather than improperly moving, target, fails to satisfy the Fifth and Sixth Amendments.

## A.     *The Relevant Case Law*

For example, as the Second Circuit has declared, "[a]n indictment that fails to allege the essential elements of the crime charged offends both the Fifth and Sixth Amendments." *United States v. Pirro*, 212 F.3d 86, 92 (2d Cir. 2000) (*citing Russell v. United States*, 369 U.S. 749, 760-61 (1962)).  As the Court in *Pirro* explained, "'[t]he Indictment Clause of the Fifth Amendment requires that an indictment contain some amount of factual particularity to ensure that the prosecution will not fill in elements of its case with facts other than those considered by the grand jury.'"  *Id*. (quoting *United States v. Walsh*, 194 F.3d 37, 44 (2d Cir. 1999)).

The Sixth Amendment guarantee of the defendant's right "'to be informed of the nature and cause of the accusation' against him is also offended by an indictment that does not state the essential elements of the crime."  *Pirro*, 212 F.3d at 93, *quoting Russell*, 369 U.S. at 761, *and citing Walsh*, 194 F.3d at 44.  As a result, "the indictment must state some fact specific enough to describe a particular criminal act, rather than a type of crime."  212 F.3d at 93; *see also United States v. Hashmi*, not reported in  ___ F.Supp.2d ___, 2009 WL 404281, *3 (S.D.N.Y. 2009).[4]

Rule 12(b), F.R.Cr.P., provides in relevant part that "[a]ny defense, objection, or request that the court can determine without a trial of the general issue" may be raised before trial by

---

[4] In *Pirro*, an interlocutory appeal by the government, the Second Circuit upheld the district court's order striking a portion of one of the counts of the indictment which failed to allege an essential element of a tax fraud charge, *i.e.*, a material false representation.  212 F.3d at 93.

16

motion.  Courts have routinely held that "[f]or purposes of Rule 12(b)(2), a charging document

fails to state an offense if the specific facts alleged in the charging document fall beyond the

scope of the relevant criminal statute, as a matter of statutory interpretation."  *United States v.*

*Panarella*, 227 F.3d 678, 685 (3d Cir. 2000).  *See also United States v. Aleynikov*, 676 F.3d 71,

75-76 (2d Cir. 2012); *United States v. Alsugair*, 2003 WL 1799003 (D.N.J. April 3, 2003).

Thus, if the facts alleged in the charging document do not establish the crime charged, the

charge must be dismissed.  *Panarella*, 227 F.3d at 685.  The indictment here does not satisfy

these constitutional and statutory standards with respect to *any* of the eleven counts.[5]

**B.**     ***None of the Eleven Counts Includes Facts Sufficient to State an Offense***

As detailed below, none of the eleven counts in the Indictment provides the "factual

particularity" necessary either to inform Mr. Mostafa satisfactorily of the "nature and cause of the

accusation," or to constrain the government to the facts "considered by the grand jury."

**1.**     ***Count One:  Conspiracy to Take Hostages (Yemen)***

Count One charges a conspiracy to take hostages in Yemen in December 1998, in

violation of 18 U.S.C. §1203.  Aside from the boilerplate language in the initial paragraph, Count

One fails to provide any description of the "some fact specific enough to describe a particular

criminal act[]" by Mr. Mostafa.  Rather, the overt acts – which no doubt need not themselves be

criminal in nature – allege merely that Mr. Mostafa (a)  provided "the hostage-takers" a satellite

phone sometime in "late 1998" [Overt Act (a)];  (b)  received three telephone calls from that

phone December 27, 1998 [Overt Act (b)];  (c)  "agreed to act as an intermediary for . .  the

_____

[5]  Of course, "it is a settled rule that a bill of particulars cannot save an invalid
indictment."  *Russell,* 369 U.S. at 770.  *See also Pirro*, 212 F.3d at 95 n. 10 (same).

17

hostage-takers . . . after the hostage-taking was already underway" [Overt Act (c)];  and (d)

"ordered five hundred British pounds worth of additional airtime for the satellite phone being

used by the hostage-takes" [Overt Act (d)].

That conduct does not allege "a particular act" by Mr. Mostafa.  Providing a phone

sometime in advance of a specific act, or even acting as an intermediary, or facilitating

communication between hosage-takers (by ordering additional minutes for the phone) simply

"fall beyond the scope of the relevant criminal statute[.]"  *Panarella*, 227 F.3d at 685.

In addition, the requirements enunciated in *Pirro* and *Russell* are all the more important

in the context of complex inchoate crimes (as opposed to simple, single-event offenses) that

require knowledge and specific intent, as well as additional unusual or peculiar elements (such as

the intent to "compel a third person and a governmental organization [the government of Yemen]

to do and abstain from doing any act" as a condition for release of the hostages, and/or the

knowing detention of U.S. nationals).  *See e.g. United States v. LaSpina*, 299 F.3d 165, 177-78

(2d Cir. 2002).

"Factual particularity" with respect to the *offense* conduct charged (as opposed to facially

neutral or preparatory conduct) is also essential for notice purposes given the geographically

disparate and remote nature of the offense charged – allegedly occurring on two continents,

neither of which is North America – and the lapse in time since it was allegedly committed (now

more than 14 years). *See United States v. Awan*, 459 F.Supp.2d 167, 174 (E.D.N.Y. 2006);  *see*

*also United States v. Urso*, 369 F.Supp.2d 254, 265 (E.D.N.Y. 2005).[6]

---

[6]  The disadvantage resulting from the passage of time is not symmetrical.  The
government has been able to investigate and prepare this case since its inception, while Mr.
Mostafa was assigned counsel only last year following his extradition.

Accordingly, Count One fails to allege facts sufficient to establish a violation of §1203 by Mr. Mostafa under either the Fifth and/or Sixth Amendments.

### 2.    *Count Two:  Hostage-Taking In Yemen*

Count Two merely restates Count One's allegations – without the attendant Overt Acts – as a substantive charge pursuant to 18 U.S.C. §1203.  Thus, it suffers from the same defect(s) as Count One.  Therefore, it, too, fails to state an offense and must be dismissed.

### 3.    *Count Three:  Conspiracy to Provide and Conceal Material Support and Resources to Terrorists (Bly, Oregon Training Camp)*

Count Three alleges a conspiracy, charged under 18 U.S.C. §371, to provide and conceal material support to terrorists in violation of 18 U.S.C. §2339A.  As with Count One, Count Three fails to provide any "factual particularity" beyond the bare statutory language.  Indeed, Count Three fails at all to identify the "material support" provided, the nature of the conspiracy (under 18 U.S.C. §956) to which such "material support" was to be provided, and the nexus between those two essential elements.[7]

Also, again like in Count One, the Overt Acts do not describe *criminal* conduct by Mr. Mostafa.  For instance, Overt Act (a) alleges merely that he "discussed with a co-conspirator . . . the creation of a jihad training camp in Bly, Oregon[]" in October 1999.  *See* Indictment, at ¶ 7(a).  Of course, U.S. law does not proscribe "creation of a jihad training camp," and without more – such as *how* the intent to create such a camp constituted "material support" to a specific

---

[7]  Although demands for that information are included within Mr. Mostafa's motion for a Bill of Particulars filed herewith, *see* **post**, at POINT VI, "it is a settled rule that a bill of particulars cannot save an invalid indictment."  *Russell,* 369 U.S. at 770.  *See also Pirro*, 212 F.3d at 95 n. 10 (same).

§956 conspiracy – Count Three fails to state a violation of §2339A.[8]

Similarly, Overt Act (b), *see* Indictment, at ¶ 7(b), states simply that Mr. Mostafa and "other co-conspirators . . . were stockpiling weapons and ammunition in the United States." That conduct, too, even if true fails to describe an offense. Thus, Count Three abjectly fails to provide sufficient notice to Mr. Mostafa regarding the nature of the offense conduct, or confine the government to "the facts . . . considered by the grand jury."

Count Three is afflicted by another categorical infirmity, as it fails to allege any "factual particularity" with respect to the alleged §956 conspiracy's activity *outside* the U.S. A violation of §956(a)(1) occurs when

> [w]hoever, within the jurisdiction of the United States, conspires with one or more other persons, regardless of where such other person or persons are located, *to commit at any place outside the United States* an act that would constitute the offense of murder, kidnapping, or maiming if committed in the special maritime and territorial jurisdiction of the United States shall, if any of the conspirators commits an act within the jurisdiction of the United States to effect any object of the conspiracy, be punished as provided in subsection (a)(2).

18 U.S.C. §956(a)(1) (emphasis added).

In Count Three, however, the alleged *jihad* training camp was situated in Bly, Oregon. There is nothing in Count Three that would establish that the object of the training at that facility was designed or intended to engage in murder, kidnaping, or other conduct proscribed by §956,

---

[8] Not all *jihad* training constitutes "material support" to a §956 conspiracy. Such training could be for self-defense, for activity in conflict zones and which conforms with the laws of armed conflict, or simply as a means – the training *itself* – of fulfilling a religious obligation. It could also be for the purpose of providing assistance to armed organizations *supported* by the U.S., *i.e.*, in the current context, to opposition groups in Syria or Iran (or previously in Libya or other locations, such as Bosnia and Kosovo).

*outside the U.S.*  As a result, Count Three fails to state an offense and must be dismissed.

> **4.     *Count Four:  Providing and Concealing Material Support and Resources to Terrorists (Bly, Oregon Jihad Training Camp)***

Count Four's allegation of a violation of §2339A is simply a substantive version of the conspiracy charged in Count Three, and fails to add any "factual particularity" (and does not even include any overt acts) that could rescue it from the same fate, for all the same reasons, as Count Three.  Accordingly, Count Four must be dismissed as well.

> **5.     *Count Five:  Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization (Bly, Oregon Jihad Training Camp)***

Count Five, which alleges a conspiracy to provide material support and resources to a Foreign Terrorist Organization (hereinafter "FTO"), namely *al Qaeda*, in violation of 18 U.S.C. §2339B, is merely a separate statutory charge defining the recipient of the material support in different terms:  as an FTO, *al Qaeda*, rather than as §956 conspiracy.  Indeed, nothing distinguishes Count Five from Count Three in that respect, or in any factual respect (or, for the other set of paired counts related to the alleged Bly, Oregon *jihad* training camp, Counts Four and Six, *see* **post**, at 22).[9]

Also, the only overt act alleged for Count Five – that Mr. Mostafa "received a facsimile proposal regarding creation of a jihad training camp in Bly, Oregon[,]" *see* Indictment, at ¶ 11(a) – fails to provide the requisite notice or "factual particularity" that is absent from Count Four, and fails to cure any of the deficiencies in that Count listed **ante**.  Thus, Count Five, too, must be dismissed.

---

[9]  In that context, as set forth **post**, in POINT VIII, the counts that are charged under alternative statutory provisions are multiplicitous.

6.  ***Count Six:  Providing Material Support and Resources to a
    Foreign Terrorist Organization (Bly, Oregon Jihad Training Camp)***

Count Six represents a substantive version of the conspiracy to violate §2339B charged in

Count Five, and consequently suffers from the same fatal flaws.  Accordingly, it must be

dismissed.

7.  ***Count Seven:  Conspiracy to Provide and Conceal Material Support
    and Resources to Terrorists (Facilitating Violent Jihad in Afghanistan)***

Count Seven, which charges another "material support" conspiracy pursuant to §2339A –

in this count, to provide unspecified "material support" to an unidentified §956 conspiracy – is

similarly devoid of the requisite "factual particularity," and mirrors the problems enumerated

**ante**, at 19, with respect to Count Three:  it identifies neither the §956 conspiracy nor the

"material support" Mr. Mostafa allegedly provided to it, and omits the required nexus between

them.

The Overt Acts allege simply that (a)  in June 2000 a co-conspirator traveled from

London to New York to raise money from mosque worshipers for the Finsbury Park Mosque's

*hijrah* fund, which funds were added to the *hijrah* fund when the co-conspirator returned to

London.  *See* Indictment, at ¶ 15(a);  (b)  in November 2000, Mr. Mostafa asked a co-conspirator

to escort another co-conspirator to a jihad training camp in Afghanistan operated by a "front-line

commander."  *See Id*., at ¶ 15(b);  (c)  in November 2000, a co-conspirator took money from the

Finsbury Park Mosque's *hijrah* fund to use for travel expenses for the trip to Afghanistan

referred to in Overt Act (b).  *See* Indictment, at ¶ 15(c);  (d)  in November 2000, Mr. Mostafa

introduced a co-conspirator to another co-conspirator "for purposes of arranging safehouses and

lodging in Pakistan and safe passage and transportation into Afghanistan."  Indictment, at ¶

22

15(d);  and (e)  the two co-conspirators traveled from London to Pakistan and subsequently

separately entered Afghanistan.  *Id*., at ¶ 15(e).

Yet none of that conduct involves any identifiable §956 conspiracy to kill or maim

overseas – much less Mr. Mostafa's connection thereto – and fails to identify the material

support Mr. Mostafa allegedly conspired to provide.  As a result, Count Seven must be

dismissed.

### 8.       *Count Eight:  Providing and Concealing Material Support and Resources to Terrorists (Facilitating Violent Jihad in Afghanistan)*

Count Eight re-asserts Count Seven's offense, albeit as a substantive violation of

§2339A.  As a result, it suffers from the same deficiencies as Count Seven, and must be

dismissed as well.

### 9.       *Count Nine:  Conspiracy to Provide Material Support and Resources to a Foreign Terrorist Organization (Facilitating Violent Jihad in Afghanistan)*

Count Nine charges the same conspiracy as charged in Counts Seven and Eight, except

via §2339B, allegedly to *al Qaeda* (as the FTO).  The single over act alleged corresponds roughly

to Overt Act (b) in Count Seven (that Mr. Mostafa allegedly "sent directions" to a co-conspirator

in Afghanistan to "seek out the 'front line commander' in Afghanistan was expecting" the co-

conspirator.  *See* Indictment, at ¶ 19(a).

As a result, like its companion allegation in Count Seven, Count Nine, too, must be

dismissed.

10. **Count Ten:  Providing Material Support and Resources to a Foreign Terrorist Organization (Facilitating Violent Jihad in Afghanistan)**

Count Ten charges the same conduct as Count Nine (and Counts Seven and Eight) as a substantive offense.  Afflicted with the same defects as exist in those counts, Count Ten must also be dismissed.

11. **Count Eleven:  Conspiracy to Supply Goods and Services to the Taliban**

Count Eleven charges Mr. Mostafa under 18 U.S.C. §371 with conspiring to violate 50 U.S.C. §1705(b), the International Emergency Economic Powers Act (hereinafter "IEEPA"), which proscribes transactions, including the provision of funds, goods, and services, with entities (or persons) – in this instance, the Taliban – whose property and interest(s) in property has been blocked pursuant to the regulations embodied in 31 C.F.R. §545.201.

Overt Act (a) in Count Eleven alleges that between the Spring of 2000 through September 6, 2001, Mr. Mostafa, "with the assistance of [a co-conspirator], a U.S. citizen," urged his followers "to donate money, goods, and services to Taliban-sponsored programs in the area of Afghanistan controlled by the Taliban."  *See* Indictment, at ¶ 26(a).

Overt Act (b) alleges that in late 2000, at Mr. Mostafa's request, that same co-conspirator agreed to "deliver Co-Conspirator 3, a person desiring to undergo violent jihad training, to an individual located in the territory of Afghanistan controlled by the Taliban."  *Id*., at ¶26(b). Overt Act (c) alleges that also in late 2000, at Mr. Mostafa's request, the co-conspirator who was a U.S. citizen "delivered compact discs containing [Mr. Mostafa's] statements to certain individuals located in the territory of Afghanistan controlled by the Taliban."  *Id*., at ¶ 26(c).

Overt Act (d) alleges that between March 2001 and September 6, 2001, Mr. Mostafa and

the co-conspirator who is a U.S. citizen "discussed plans to establish a computer lab in Afghanistan[,]" and that Mr. Mostafa "stated that he wanted the computer lab to be located in Kandahar and to service Taliban officials and the Afghani people located in Kandahar, which was then controlled by the Taliban. *Id*., at ¶ 26(d).

Similarly, Overt Act (e) alleges that September 6, 2001, that alleged co-conspirator departed London, England "for Pakistan and then Afghanistan[,]" and that Mr. Mostafa had, prior to that alleged co-conspirator's departure, given him approximately 6,000 British pounds to be used, in part, "to lease a building which would house the computer lab and pay for some of the start up expenses for the computer lab." *Id*., at ¶ 26(e).

However, regarding Overt Acts (a) through (c), providing even "money, goods, and services to Taliban-sponsored programs" or to persons or entities in areas "controlled by the Taliban" does not state an offense under IEEPA. The transactions must be with the designated (blocked) entity or person, not merely someone or some entity located within its territory. That limitation is particularly important in this case because the Taliban's "control" of "territory" in Afghanistan was neither formal nor complete nor consistent during the period in question.

The distinction between providing support to persons or entities that have *not* been formally designated – which is not forbidden – and providing that same support to a designated entity or person, which the statute *does* proscribe, was recognized in the context of §2339B, the "material support" statute, by the Court in *United States v. Paracha*, not reported in ___ F.Supp.2d ___, 2006 WL 12768 (S.D.N.Y. 2006), which ruled (and instructed the jury) that

> the government must prove that in providing material support or resources, Paracha did so knowing *that the material support or resources could or would be utilized to further the activities of the*

25

> *al Qaeda entity and not just the personal interests of al Qaeda's individual members.*

*Id.*, at *25.  *See also id.*, at 13, 24.

IEEPA requires that the support or transaction at issue be provided to or with to the designated person or entity, *not* merely to individuals or entities in areas "controlled" by the entity.  The statute prohibits material support to *a designated entity or person*, not simply persons within a geographic area.  Count Eleven fails to make that necessary allegation, and therefore does not state an offense.  As a result, it must be dismissed.

In addition, with respect to Overt Acts (b) and (c), provisions of IEEPA expressly preclude prosecution for travel and/or for the importation of certain media.  For example, 50 U.S.C. §1702(b)(4) of IEEPA limits the President's authority by exempting from its reach and regulation:

> the importation from any country, or the exportation to any country, whether commercial or otherwise, regardless of format or medium of transmission, of any information or informational materials, including but not limited to, publications, films, posters, phonograph records, photographs, microfilms, microfiche, tapes, compact disks, CD ROMs, artworks, and news wire feeds.

50 U.S.C. §1702(b)(3).

That provision, known as the "Berman Amendment" [so named after its sponsor, Rep. Howard Berman (D-Calif.)], also codified at 31 C.F.R. § 594.305, was enacted by Congress in 1988.  It amended not only IEEPA, but the Trading With the Enemy Act (hereinafter "TWEA") at 50 U.S.C. §5(b)(4).

In addition, following regulations promulgated by the Office of Foreign Asset Control (hereinafter "OFAC") that prescribed a narrow construction of the ambit of the Berman

Amendment, and after court decisions upholding OFAC's interpretation, *see, e.g., Capital Cities/ABC, Inc. v. Brady*, 740 F. Supp. 1007 (S.D.N.Y. 1990), Congress passed the Free Trade in Ideas Amendment (hereinafter "FTIA") (as §525 of the Foreign Relations Authorization Act, P.L. 103-236) for the purpose of overriding those regulations, and reiterating (and clarifying) the extent of the Berman Amendment.

The Conference Report accompanying the FTIA reaffirmed that the Berman Amendment "established that no embargo may prohibit or restrict directly or indirectly the import or export of information that is protected under the First Amendment to the U.S. Constitution," and that "the language [of the Berman Amendment] was explicitly intended, by including the words 'directly or indirectly,' to have a broad scope." H.R. Conf. Rep. No. 482, 103rd Cong., 2nd Sess., 1994 U.S.C.C.A.N. 398, 483.

Moreover, the Conference Report emphasized that Congress intended both provisions – the Berman Amendment and FTIA –

> to facilitate transactions and activities incident to the flow of information and informational material without regard to the type of information, its format, or means of transmission, and electronically transmitted information, transactions for which must normally be entered into in advance of the information's creation.

*Id*.

Consequently, it is beyond question that the terms of the Berman Amendment and FTIA are completely co-extensive with the First Amendment, and cover the activity alleged against Mr. Mostafa in this case. The provisions exempt "any information or informational materials, including but not limited to, . . . *compact disks* . . . ." (Emphasis added). They apply to "electronically transmitted information," and as well to "information and informational material

without regard to the type of information, its format, or means of transmission. . . ." They also prohibit interference "directly or indirectly."[10]

Regarding Overt Act (b), other exemptions in §1702(b) apply to travel activity implicated by the charges:

> does not include the authority to regulate or prohibit, directly or indirectly *inter alia*, any transactions ordinarily incident to travel to or from any country, including importation of accompanied baggage for personal use, maintenance within any country including payment of living expenses and acquisition of goods or services for personal use, and arrangement or facilitation of such travel including nonscheduled air, sea, or land voyages.

Regarding Overt Acts (d) and (e), neither describes an agreement, much less one to violate IEEPA. Mere "discussions" or "plans" do not constitute a conspiracy without an agreement to violate the law. Also, IEEPA has not been stretched to the point at which a foreign national's conversations overseas with a U.S. citizen about a third location (not in the U.S.) satisfies the jurisdictional requirement for IEEPA, as the statute reaches conduct by *U.S. persons only*. The conduct described in Count Eleven is devoid of *any* connection to the U.S., and lacks *any* evidence, inferential or otherwise, that it was contemplated to violate U.S. law.

Accordingly, Count Eleven, as well as all the other counts in the Indictment, must be dismissed for failure to state an offense.

---

[10] Prior to passage of FTIA, the District Court in *Cernuda v. Heavey*, 720 F. Supp. 1544 (S.D. Fla. 1989), afforded the Berman Amendment an appropriately expansive interpretation that foreshadowed Congress's passage of FTIA.

**POINT V**

**COUNTS THREE, FOUR, SEVEN AND EIGHT SHOULD
BE DISMISSED, BECAUSE EACH FAILS TO IDENTIFY
<u>THE REQUISITE CONSPIRACY UNDER 18 U.S.C. §956</u>**

Counts Three, Four, Seven and Eight, which all charge violations of 18 U.S.C. §2339A,

should be dismissed because each count fails to articulate the underlying §956 conspiracy that

constitutes an essential element of the offense charged.

In *United States v. Sattar*, 314 F.Supp.2d 279, 304-05 (S.D.N.Y. 2004) (hereinafter

"*Sattar II*"), the District Court held that the Indictment need not define the §956 conspiracy with

the precision demanded by the defendants.  However, in *Sattar II*, the §956 conspiracy was

charged and elucidated in a *separate count* (charged against Mr. Sattar only), and as such was at

least identifiable:  an agreement among members of the Islamic Group to engage in violent

terrorist activities in Egypt and elsewhere in furtherance of the organization's objectives.  *Id*.

Here, in contrast, the government has not provided these conspiracies in separate counts.

Nor does the extremely limited level of detail supplied in the Indictment fully articulate *any* of

the underlying §956 conspiracies, as charged in Counts Three, Four, Seven and Eight

respectively.

**A.**   ***The §956 Conspiracies Charged In Counts Three and Four
Are Insufficiently Articulated Because the Allegations Do
Not Specify Any of the Key Aspects of the Underlying Offense***

While Counts Three and Four allege a conspiracy to provide and conceal, and the

provision and concealment, respectively, of material support to terrorists, pursuant to 18 U.S.C.

§2339A, in relation to the creation of a jihad training camp in Bly, Oregon, and refer to an

underlying §956 conspiracy, neither Count set forth *any* of the parameters or details of the §956

29

conspiracy.

Count Three contains descriptive allegations, at ¶ 7(a) and (b), which one might hope would elucidate the parameters of the §956 conspiracy alleged, but in fact these allegations provide no articulation whatsoever of the §956 charge that Mr. Mostafa and others provided and concealed material support and resources "knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country)." *See* Indictment, at ¶6. Rather than specify the nature of the §956 conspiracy, or the persons or foreign country to be targeted these sections of Count Three merely allege overt acts in relation to the material support to be provided and concealed.

Indeed, at ¶ 7(a), Count Three of the Indictment alleges that Mr. Mostafa "discussed with a co-conspirator . . . the creation of a jihad training camp," and at ¶ 7(b), the Indictment alleges that "Co-Conspirator communicated [to Mr. Mostafa] . . . that he and other co-conspirators . . . were stockpiling weapons and ammunition in the United States." It is evident that all these descriptive allegations refer only to alleged acts *within* the United States and not to any conspiracy to kill, kidnap, maim or injury persons and to destroy property in a foreign country.

Count Four contains no descriptive allegations whatsoever, and merely rests on the statement that Mr. Mostafa and others provided and concealed material support and resources "knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country).[.] *See* Indictment, at ¶ 8.

30

The charge therefore does not specify even the most basic details, such as the foreign country to be targeted, the persons to be killed, kidnaped, maimed or injured, or the means by which this was to occur.  Nor does the fact that the charge alleges support in relation to the Bly, Oregon jihad training camp, within the United States, shed light on any §956 conspiracy to take place in another country.

**B.**      ***Both Counts Seven and Eight Fail to Articulate the Underlying §956 Conspiracy That Constitutes an Essential Element of Each Offense***

Counts Seven and Eight allege a conspiracy to provide and conceal, and the provision and concealment, respectively, of material support to terrorists, pursuant to 18 U.S.C. §2339A, in relation to facilitating violent jihad in Afghanistan, and each refers to an underlying §956 conspiracy, but both counts fail to articulate the underlying §956 conspiracy that constitutes an essential element of Counts Seven and Eight alike.

In Count Seven the government provides several descriptive allegations, including that (1)  money was collected for the Finsbury mosque's hijrah fund (at ¶ 15(a)); (2) Mr. Mostafa asked Co-Conspirator 2 to escort Co-Conspirator 3 "from London, England, to a jihad training camp in Afghanistan operated by a 'front-line commander'" (at ¶ 15(b)); (3) Co-Conspirator 3 took money out of Finsbury Park Mosque's hijrah fund to use it "for certain travel expenses relating to the trip to Afghanistan with Co-Conspirator 3 (at ¶ 15(c));   (4) that Mr. Mostafa introduced Co-Conspirator 2 to Co-Conspirator 4 "for purposes of arranging safehouses and lodging in Pakistan and safe passage and transportation into Afghanistan" (at ¶ 15(d)); and  (5) "Co-Conspirator 2 and Co-Conspirator 3 traveled together from London, England, to Pakistan" and "separately entered Afghanistan shortly thereafter."

While these overt acts suggest travel to Afghanistan for the alleged purpose of reaching a jihad training camp in Afghanistan, they stop there, without stating a §956 conspiracy.   They fail to state whether the foreign country in which the §956 conspiracy would take place was Afghanistan, or elsewhere.   They also fail to allege the persons to be killed, kidnaped, maimed and injured, and the property to be damaged or destroyed.

Likewise, Count Eight provides only that Mr. Mostafa and others provided and concealed material support and resources "knowing and intending that they were to be used in preparation for, and in carrying out, a violation of Section 956 of Title 18, United States Code (conspiring to kill, kidnap, maim, and injure persons and to damage and destroy property in a foreign country)." *See* Indictment, at ¶16.   That does not articulate a §956 conspiracy, given that not one detail whatsoever as to the underlying §956 conspiracy is provided.

Accordingly, Counts Three, Four, Seven and Eight must all be dismissed for failure to articulate the underlying §956 conspiracies that constitute an essential element of each of these offenses.

### POINT VI

### THE COURT SHOULD COMPEL THE GOVERNMENT TO PRODUCE THE <u>REQUESTED BILL OF PARTICULARS</u>

As the Second Circuit has explained, a Bill of Particulars achieves two discrete objectives:

> [a] bill is appropriate to permit a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense."

32

*United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), *quoting United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  *See also United States v. Nachamie*, 91 F. Supp.2d 565, 570 (S.D.N.Y. 2000) (*quoting Bortnovsky*, 820 F.2d at 574) (ordering a Bill of Particulars).

These two salutary purposes are implicated quite clearly with respect to Mr. Mostafa. Without further elucidation of the generic descriptions of the charges against him in the Indictment, not only will Mr. Mostafa be unable to prepare his defense, but the other purpose of a Bill of Particulars – that of specifying offenses charged in order to define any possible future claims of Double Jeopardy – cannot be achieved, either.  *See United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988), (*citing and quoting United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987)).  Thus, Mr. Mostafa's request for a Bill of Particulars should be granted.

## A.    *A Bill of Particulars Is Necessary for the Preparation of Mr. Mostafa's Defense*

Absent a Bill of Particulars, Mr. Mostafa will proceed to trial without sufficient notice of precisely what charges he faces, and without ample time to identify and locate witnesses and/or conduct a meaningful investigation of the offenses alleged.  The Indictment alleges, and discovery produced thus far demonstrates, that events and conversations occurred, and witnesses may be located, in a number of countries, including Yemen, the United Kingdom, Afghanistan, and "elsewhere," and distant locales that are not only difficult to reach, but in which ordinary and efficient investigation is impeded by factors (*i.e.*, language, culture, and governmental authority) beyond counsel's control.  Consequently, learning important particulars immediately before, or even during trial, will effectively preclude *any* defense investigation, or ability to prepare adequately, with respect to those issues.

33

As a result, a Bill of Particulars is necessary to inform Mr. Mostafa of the specific elements of the charged conspiracies and substantive offenses, including: (1) any distinction between counts that appear to be multiplicitous, as set forth **post** at POINT VIII, and described in this section; (2) particularization of specific transactions the Indictment describes in undefined or only general terms; and (3) the manner of, contents of, and parties involved in, the communications and acts alleged. If Mr. Mostafa is not provided with a Bill of Particulars, his ability to prepare his defense will be irremediably impaired.

### 1. *The Government Must Specify Distinctions, If Any, Between Separate Counts*

Mr. Mostafa's request for a Bill of Particulars seeks information that will provide meaningful distinctions, if any exist: (1) between Counts One and Two which both allege a violation of 18 U.S.C. §1203 (the only distinction is that Count One charges a conspiracy, while Count Two charges a substantive violation); (2) between Counts Three and Five which both allege conspiracies to provide "material support" to the Bly, Oregon jihad training camp (the only distinction is that Count Three also alleges the concealment of "material support"); (3) between Counts Four and Six which both allege the provision of "material support" to the Bly, Oregon jihad training camp (the only distinction is that Count Four also alleges the concealment of "material support"); (4) between Counts Seven and Nine, which both allege conspiracies to provide "material support" to facilitating violent jihad in Afghanistan (the only distinction is that Count Seven also alleges the concealment of "material support"); (5) between Counts Eight and Ten which both allege the provision of "material support" to facilitating violent jihad in Afghanistan (the only distinction is that Count Eight also alleges the concealment of "material support"); (6) between Counts Three and Four which both allege "material support" to the Bly,

34

Oregon jihad training camp to carry out a violation of 18 U.S.C. §956 (the only distinction is that

Count Three charges a conspiracy, while Count Four charges a substantive violation); (7)

between Counts Five and Six which both allege "material support" to the Bly, Oregon jihad

training camp (the only distinction is that Count Five charges a conspiracy, while Count Six

charges a substantive violation); (8) between Counts Seven and Eight which both allege "material

support" to facilitating violent jihad in Afghanistan to carry out a violation of 18 U.S.C. §956 (the

only distinction is that Count Seven charges a conspiracy, while Count Eight charges a substantive

violation); (9) between Counts Nine and Ten which both allege "material support" to facilitating

violent jihad in Afghanistan (the only distinction is that Count Nine charges a conspiracy, while

Count Ten charges a substantive violation); and (10) between Counts 7-10, which allege

"material support" to facilitating violent jihad in Afghanistan, and Count 11, which alleges a

conspiracy to supply good and services to the Taliban in violation of IEEPA.

Identification of such distinctions – or knowledge that the counts are, in fact, indistinct – is

necessary to enable Mr. Mostafa to discern the precise nature of the separate charges he faces and

prepare for trial, *i.e.*, whether each count or group of counts charges something different or the

same (but pursuant to a different statute or theory of liability), and to possess adequate protection

against Double Jeopardy (including collateral estoppel).

**2.**     ***The Government Must Particularize Transactions the
Indictment Describes In Undefined or Only General Terms***

Moreover, many of the transactions in the Indictment are cast in extremely general terms

or are entirely undefined. For instance, descriptions in the Indictment omit necessary details such

as (1) locations, dates, and times that transactions occurred; (2) the parties involved in

transactions;  and  (3)  the definitions of terms or words, involved in, or characterizing transactions.

In *United States v. Bin Laden (El-Hage)*, 92 F. Supp.2d 225 (S.D.N.Y. 2000), Judge Sand explained that "a bill of particulars [was] necessary . . . to permit the Defendants to prepare a defense and to prevent prejudicial surprise at trial," based, in part, on the Court's conclusion that "several of the allegations contained in the 'Overt Acts' section of the Indictment are cast in terms that are too general, in the context of [that] particular case, *to permit the Defendants to conduct a meaningfully directed investigation of the relevant facts and circumstances and be prepared to respond to the charges*."  *Id*., at 235 (emphasis added).

Here, too, for the same reasons Mr. Mostafa's request for a Bill of Particulars should be granted.  The transactions described in the Indictment lack specificity, and without the details requested by Mr. Mostafa, such as geographical locations, dates, times, participants, and particularization of acts alleged, it would be impossible for Mr. Mostafa "to conduct a meaningfully directed investigation."

Also, due to the essentially global and, in many instances, geographically remote nature of the events and conversations – including, as noted **ante**, in Yemen, the United Kingdom, Afghanistan, and "elsewhere," if Mr. Mostafa is not notified of these particulars sufficiently in advance of trial, he will be unable, at the eleventh hour, to mount a defense based on witnesses, documents, and/or other information that can be procured and produced only through rather challenging, if feasible at all, international investigation and travel.  Under such circumstances, his ability to prepare and present a defense would be irreparably impaired.  *See Bin Laden (El-*

*Hage)*, 92 F. Supp.2d at 234-36.[11]

### 3. *The Government Must Identify the Contents Of, and Parties Involved In, the Communications Alleged*

The identification of the manner in which communications occurred, as well as the specific persons involved in them, and their contents, alleged in the Indictment, are equally critical to preparation of Mr. Mostafa's defense.  As with the transactions alleged in the Indictment, the global nature of charges and the alleged communications (and the remoteness of some of the relevant locales), present unique problems for Mr. Mostafa's defense just as they did in *El-Hage*. 92 F. Supp.2d at 234-35.  Also, whether communications were alleged to have occurred in person, or by some telephonic or electronic means, is equally important to preparation, as that requires investigation, and potentially acquisition of documentary evidence and expert forensic analysis.

In the absence of a Bill of Particulars providing the requested details of these communications, defense counsel will not have ample time to identify and locate necessary witnesses and other evidence that may be obtainable only through international investigation and travel, or subpoena.

It should also be noted that material disclosed pursuant to discovery demands and 18 U.S.C. §3500, does not serve as a substitute for a Bill of Particulars.  *See, e.g.,  Davidoff*, 845 F.2d at 1155.  This is especially true with regard to communications, and the transactions discussed **ante**,  since late notice (such as via production of "3500 material") might require postponement of the trial in order to allow Mr. Mostafa's defense team to pursue the evidence in remote and

---

[11]  The unsatisfactory alternative, of course, is a last-minute delay of the trial, or substantial continuance(s) once it begins, in order to permit Mr. Mostafa to rebut evidence he should be permitted to prepare for *now*.

difficult locations.  *See also* **ante**, at n. 11.

**B.**     *A Bill of Particulars Is Necessary to Protect Mr. Mostafa Against Double Jeopardy*

The other purpose of a Bill of Particulars – protecting a defendant against Double

Jeopardy – is also crucial to Mr. Mostafa in light of the fact that, *e.g*, the conspiracies alleged are

indistinguishable from the respective substantive counts alleging violations of the same statutes.

Therefore, a Bill of Particulars is necessary to circumscribe carefully the parameters of this

Indictment, to ensure that Mr. Mostafa is not placed in jeopardy twice for the same offenses.

Included within the Double Jeopardy protection is the doctrine of collateral estoppel, *see Ashe v.*

*Swenson*, 397 U.S. 436 (1970), which applies, *inter alia*, when legally distinct charges (based on

different offenses, and therefore not subject to challenge under ordinary Double Jeopardy

principles) are nevertheless based on identical facts, and a jury's verdict in favor of the defendant

on one such count is conclusive with respect to the other count as well.

Accordingly, it is respectfully submitted that the government should be required to provide

Mr. Mostafa with a Bill of Particulars.

**C.**     *The Requested Particulars*

The Court should compel the government to provide the following particulars:[12]

1.      With respect to Count One, ¶ 1, please identify:

   a.      the date on which it is alleged that Mr. Mostafa first became a member of
           the conspiracy charged in Count One; and

   b.      by name all of the alleged co-conspirators, including those "brought to and
           arrested in the Southern District of New York."

---

[12]   Counsel requested a Bill of Particulars from the government April 3, 2013 and
attempted to informally resolve this discovery matter as required by Local Criminal Rule 16.1.

2.      With respect to Count One, ¶ 2, please identify:

    a.      the conduct and/or specific acts alleged to have occurred " inside . . .the United States;"

    b.      the conduct and/or specific acts alleged to have occurred "outside the United States;"

    c.      the "persons" that were seized;

    d.      the "two U.S. nationals;" and

    e.      the specific nature of "any act" that the government of Yemen was "to do and abstain from doing" and whether it was "to do" or to "abstain" from doing it.

3.      With respect to Count One, ¶ 3, please identify by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count One.

4.      With respect to Count One, ¶ 3(a), please identify:

    a.      "Co-Conspirator 1" by name;

    b.      "the hostage-takers" by name;

    c.      the specific date, time, and location where Mr. Mostafa allegedly provided the satellite phone to Co-Conspirator 1;

    d.      the specifications of the satellite phone provided to Co-Conspirator 1;

    e.      the specific date, time, and location where Mr. Mostafa allegedly provided the satellite phone to the "hostage-takers" and the name of the person Mr. Mostafa provided the phone to; and

    f.      the specifications of the satellite phone provided to the "hostage- takers."

5.      With respect to Count One, ¶ 3(b), please identify:

    a.      "Co-Conspirator 1" by name;

    b.       the participants in each of the three phone calls Mr. Mostafa allegedly received "from the satellite phone provided to the hostage-takers;"

39

  c.  the time and duration of each call;

  d.  the location of each of the parties to each call; and

  e.  whether there were any recordings or memorialization of each of the conversations.

6.  With respect to Count One, ¶ 3(c), please identify:

  a.  the time and location where the "hostage-takers stormed a caravan of sport utility vehicles;"

  b.  the hostages, by name and nationality; and

  c.  the nature of the "force" used to take the hostages.

7.  With respect to Count One, ¶ 3(d), please identify:

  a.  the time of the call and locations of Co-Conspirator 1 and Mr. Mostafa during the call;

  b.  how Mr. Mostafa "agreed to act as an intermediary for Co-Conspirator 1 and the hostage-takers;"

  c.  the "advice related to the hostage-taking" Mr. Mostafa allegedly gave Co-Conspirator 1;

  d.  whether anyone else was party to the call; and

  e.  whether there was any recording or memorialization of the call.

8.  With respect to Count One, ¶ 3(e), please identify:

  a.  the location, time and method by which Mr. Mostafa allegedly "ordered five hundred British pounds worth of additional airtime for the satellite phone being used by the hostage-takers;" and

  b.  whether there were any other parties involved in this transaction.

9.  With respect to Count One, ¶ 3(f), please identify:

  a.  by name each of the hostages that hostage-takers used "as human shields;"

b.     the time and location where "the hostage-takers used the hostages as human shields;"

c.     by name each of the four hostages that were killed; and

d.     the number and identity of hostages that were wounded.

10.    With respect to Count Two, ¶ 4, please identify:

a.     by name "the others" alleged to have been participants;

b.     the date, time, location and nature of the specific acts performed by Mr. Mostafa;

c.     the conduct and/or specific acts alleged to have occurred " inside . . .the United States;"

d.     the conduct and/or specific acts alleged to have occurred "outside the United States;"

e.     the "persons" that were seized;

f.     the "two U.S. nationals;" and

g.     the specific nature of "any act" that the government of Yemen was "to do and abstain from doing" and whether it was "to do" or to "abstain" from doing it.

11.    With respect to Count Three, ¶ 5, please identify:

a.     all locations encompassed by the term "elsewhere;"

b.     the date on which it is alleged that Mr. Mostafa first became a member of the conspiracy charged in Count Three; and

c.     by name all of the alleged co-conspirators, including those "brought to and arrested in the Southern District of New York."

12.    With respect to Count Three, ¶ 6, please identify:

a.     "the others" by name;

b.     the specific nature of the "material support" that it was the alleged object of

the conspiracy to provide, including by whom, where and when it was provided;

c.   the specific nature of the "resources" that it was the alleged object of the conspiracy to provide, including by whom, where and when it was provided;

d.   the specific nature of the "material support" that it was the alleged object of the conspiracy to "conceal and disguise," and how it was concealed and/or disguised;

e.   the specific nature of the "resources" that it was the alleged object of the conspiracy to "conceal and disguise,"and how it was concealed and/or disguised;

f.   by name the "persons" sought to be killed, kidnapped, maimed and injured;

g.   the "foreign country" and specific location where this was to take place; and

h.   by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count Three.

13.   With respect to Count Three, ¶ 7, please identify:

a.   all locations encompassed by the term "elsewhere;"

b.   the time, date and location of each of the overt acts committed in the Southern District of New York; and

c.   the time, date and location of each of the overt acts committed "elsewhere."

14.   With respect to Count Three, ¶ 7(a), please identify:

a.   "Co-Conspirator 2" by name;

b.   the number of occasions upon which Mr. Mostafa allegedly discussed the creation of a jihadist training camp in Bly, Oregon;

c.   the time, date, location, and means by which each discussion took place;

d.   the contents of the communications;

e.     whether anyone else was party to each discussion; and

f.     whether there were any recordings or memorialization of each of the discussions.

15.    With respect to Count Three, ¶ 7(b), please identify:

a.     the "other co-conspirators not named as defendants herein;"

b.     the specific time and nature of the communication between Mr. Mostafa and Co-Conspirator 2;

c.     the location(s), type(s) of weapons, type(s) of ammunition, and volume of weapons and ammunition that were "stockpiled;"

d.     the contents of the communication;

e.     whether anyone else was party to the communication; and

f.     whether there were any recordings or memorialization of the communication.

16.    With respect to Count Four, ¶ 8, please identify:

a.     all locations encompassed by the term "elsewhere;"

b.     by name all of the alleged participants, including those "brought to and arrested in the Southern District of New York;"

c.     "the others" by name;

d.     the specific nature of the "material support" allegedly provided, including by whom, where and when it was provided;

e.     the specific nature of the "resources" allegedly provided, including by whom, where and when it was provided;

f.     the person(s) who received the alleged "material support" and "resources" in each instance;

g.     the specific nature of the "material support" allegedly "concealed and disguised," including by whom, where, and when it was concealed and/or disguised;

43

      h.     the specific nature of the "resources" allegedly "concealed and disguised," including by whom, where, and when it was concealed and/or disguised;

      i.      by name, the "persons" sought to be killed, kidnaped, maimed and injured;

      j.      the "foreign country" and specific location where this was to take place; and

      k.     by date and location any act performed by Mr. Mostafa.

17.    With respect to Count Five, ¶ 9, please identify:

      a.     all locations encompassed by the term "elsewhere;"

      b.     all of the alleged co-conspirators by name, including those "brought to and arrested in the Southern District of New York."

18.    With respect to Count Five, ¶ 10, please identify:

      a.     the "others" by name;

      b.     the specific nature of the "material support" allegedly provided, including by whom, where, and when it was provided;

      c.     the specific nature of the "resources" allegedly provided, including by whom, where, and when it was provided;

      d.     the person(s) who received the alleged "material support" and "resources" in each instance; and

      e.     by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count Five.

19.    With respect to Count Five, ¶ 11, please identify:

      a.     all locations encompassed by the term "elsewhere;"

      b.     the time, date and location of each of the overt acts committed in the Southern District of New York; and

      c.     the time, date and location of each of the overt acts committed "elsewhere."

20.    With respect to Count Six, ¶ 12, please identify:

    a.    all locations encompassed by the term "elsewhere;"

    b.    all of the alleged participants by name, including those "brought to and arrested in the Southern District of New York;"

    c.    the specific nature of the "material support" allegedly provided, including by whom, where, and when it was provided;

    d.    the specific nature of the "resources" allegedly provided, including by whom, where, and when it was provided;

    e.    the person(s) who received the alleged "material support" and the "resources" in each instance; and

    f.    by date and location any act performed by Mr. Mostafa with regard to Count Six.

21.    With respect to Count Seven, ¶ 13, please identify:

    a.    all locations encompassed by the term "elsewhere;"

    b.    the date on which it is alleged that Mr. Mostafa first became a member of the conspiracy charged in Count Seven; and

    c.    by name all of the alleged co-conspirators, including those "brought to and arrested in the Southern District of New York."

22.    With respect to Seven, ¶ 14, please identify:

    a.    "the others" by name;

    b.    the specific nature of the "material support" that it was the alleged object of the conspiracy to provide;

    c.    the specific nature of the "resources" that it was the alleged object of the conspiracy to provide, including by whom, where, and when it was provided;

    d.    the specific nature of the "material support" that it was the alleged object of the conspiracy to "conceal and disguise," including by whom, where, and when concealed and/or disguised;

    e.    the specific nature of the "resources" that it was the alleged object of the

45

conspiracy to "conceal and disguise," including by whom, where, and when it was concealed and/or disguised;

f.    by name the "persons" sought to be killed, kidnaped, maimed and injured;

g.    the "foreign country" and specific location where this was to take place; and

h.    by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count Seven.

23.    With respect to Count Seven, ¶ 15, please identify:

a.    all locations encompassed by the term "elsewhere;"

b.    the time, date and location of each of the overt acts committed in the Southern District of New York; and

c.    the time, date and location of each of the overt acts committed "elsewhere."

24.    With respect to Count Seven, ¶ 15(a), please identify:

a.    "Co-Conspirator 2" by name;

b.    the location and name of the mosque in "Long Island, New York;"

c.    the amount of money collected and the names of the individuals who provided the money;

d.    the date and time that the money was provided;

e.    how the money was provided;

f.    the date and time that the money was "added to the Finsbury Park Hijrah Fund" and how it was added;

g.    the names of all parties involved in these transactions; and

h.    whether there is any memorialization of these transactions.

25.    With respect to Count Seven, ¶ 15(b), please identify:

a.    "Co-Conspirator 2" by name;

b.   "Co-Conspirator 3" by name;

c.   the precise manner in which Mr. Mostafa "asked" Co-Conspirator 2 to escort Co-Conspirator 3 to a jihad training camp in Afghanistan;

d.   the time, date, and location where Mr. Mostafa "asked;"

e.   whether there were any other parties to the conversation;

f.   whether there is any memorialization of the conversation;

g.   in what manner "Co-Conspirator 3"is one of Mr. Mostafa's "followers;"

h.   the location of the "jihad training camp in Afghanistan;" and

i.   the "front-line commander" by name.

26.   With respect to Count Seven, ¶ 15(c), please identify:

a.   "Co-Conspirator 2" and "Co-Conspirator 3" by name;

b.   the amount of money withdrawn;

c.   the date and time that the money was withdrawn;

d.   the specific manner in which the money was to be used;

e.   the specific nature of the "travel expenses;"

f.   the names of all parties involved in these transactions; and

g.   whether there is any memorialization of these transactions.

27.   With respect to Count Seven, ¶ 15(d), please identify:

a.   "Co-Conspirator 2" by name;

b.   "Co-Conspirator 4" by name;

c.   the time, date and location where Mr. Mostafa introduced Co-Conspirator 2 to Co-Conspirator 4;

d.   the precise manner in which Mr. Mostafa "introduced" them;

e.      whether there were any other parties to the introduction;

f.      whether there is any recording or memorialization of the introduction;

g.      the person(s) who would be "arranging safehouses and lodging in Pakistan;"

h.      the person(s) who would be "arranging" the "safe passage and transportation in Afghanistan;" and

i.      the names of any other persons involved.

28.     With respect to Count Seven, ¶ 15(e), please identify:

a.      "Co-Conspirator 2" and "Co-Conspirator 3" by name;

b.      the time, date and location from which Co-Conspirator 2 and Co-Conspirator 3 traveled to Pakistan;

c.      the time, date, and means by which Co-Conspirator 2 traveled from Pakistan to Afghanistan and when Co-Conspirator 2 arrived in Afghanistan;

d.      the time, date, and means by which Co-Conspirator 3 traveled from Pakistan to Afghanistan and when Co-Conspirator 2 arrived in Afghanistan;

e.      whether Co-Conspirator 2 and Co-Conspirator 3  "traveled" to Pakistan with any others and the names of those people; and

f.      whether each "traveled" to Afghanistan with any others and the names of those people.

29.     With respect to Count Eight, ¶ 16, please identify:

a.      all locations encompassed by the term "elsewhere;"

b.      by name all of the alleged participants, including those "brought to and arrested in the Southern District of New York;"

c.      "the others" by name;

d.      the specific nature of the "material support" allegedly provided, including by whom, where and when it was provided;

e.    the specific nature of the "resources" allegedly provided, including by whom, where and when it was provided;

f.    the person(s) who received the alleged "material support" and "resources" in each instance;

g.    the specific nature of the "material support" allegedly "concealed and disguised," including by whom, where, and when it was concealed and/or disguised;

h.    the specific nature of the "resources" allegedly "concealed and disguised," including by whom, where, and when it was concealed and/or disguised;

i.    by name, the "persons" sought to be killed, kidnaped, maimed and injured;

j.    the "foreign country" and specific location where this was to take place; and

k.    by date and location any act performed by Mr. Mostafa.

30.    With respect to Count Nine, ¶ 17, please identify:

a.    all locations encompassed by the term "elsewhere;" and

b.    all of the alleged co-conspirators by name, including those "brought to and arrested in the Southern District of New York."

31.    With respect to Count Nine, ¶ 18, please identify:

a.    the "others" by name;

b.    the specific nature of the "material support" allegedly provided, including by whom, where, and when it was provided;

c.    the specific nature of the "resources" allegedly provided, including by whom, where, and when it was provided;

d.    the person(s) who received the alleged "material support" and "resources" in each instance; and

e.    by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count Nine.

32.    With respect to Count Nine, ¶ 19, please identify:

49

    a.    all locations encompassed by the term "elsewhere;"

    b.    the time, date and location of each of the overt acts committed in the Southern District of New York; and

    c.    the time, date and location of each of the overt acts committed "elsewhere."

33.    With respect to Count Nine, ¶ 19(a), please identify:

    a.    "Co-Conspirator 3" by name;

    b.    the date, time and location from which Mr. Mostafa "sent directions" to Co-Conspirator 3;

    c.    the location to which Mr. Mostafa "sent" these directions;

    d.    the precise manner in which these directions were "sent;"

    e.    the precise manner in which Mr. Mostafa "directed";

    f.    the contents of the directions ;

    g.    any other parties involved;

    h.    whether there is any recording or memorialization of any communication in relation to the sending of the directions;

    i.    the name and location of the "front-line commander;"

    j.    the location of Co-Conspirator 3; and

    k.    how, when, and where  Co-Conspirator 3 was to "seek out" the "front-line commander."

34.    With respect to Count Ten, ¶ 20, please identify:

    a.    all locations encompassed by the term "elsewhere;"

    b.    all of the alleged participants by name, including those "brought to and arrested in the Southern District of New York;"

    c.    the specific nature of the "material support" allegedly provided, including by whom, where, and when it was provided;

      d.     the specific nature of the "resources" allegedly provided, including by whom, where, and when it was provided;

      e.     the person(s) who received the alleged "material support" and the "resources" in each instance; and

      f.     by date and location any act performed by Mr. Mostafa with regard to Count Ten.

35.    With respect to Count Eleven, ¶ 24, please identify:

      a.     all locations encompassed by the term "elsewhere;" and

      b.     all of the alleged participants by name, including those "brought to and arrested in the Southern District of New York."

36.    With respect to Count Eleven, ¶ 25, please identify:

      a.     the "others" by name;

      b.     the specific nature and type of alleged "funds" supplied;

      c.     the specific nature and type of alleged "goods" supplied;

      d.     the specific nature and type of alleged "services" supplied;

      e.     the number and names of "United States person(s)" involved;

      f.     the precise location of the "territory of Afghanistan controlled by the Taliban;"

      g.     by name the "persons whose property and interests in property were blocked;" and

      h.     by date and location any act performed by Mr. Mostafa in furtherance of the conspiracy charged in Count Eleven.

37.    With respect to Count Eleven, ¶ 26, please identify:

      a.     all locations encompassed by the term "elsewhere;"

      b.     the time, date and location of each of the overt acts committed in the Southern District of New York; and

    c.    the time, date and location of each of the overt acts committed "elsewhere."

38.    With respect to Count Eleven, ¶ 26(a), please identify:

    a.    the times, dates, and means by which Mr. Mostafa allegedly "posted messages" on the Supporters of Shariah website;

    b.    the location(s) from which Mr. Mostafa allegedly "posted messages" on the Supporters of Shariah website;

    c.    "Co-Conspirator 2" by name;

    d.    the website address and contents of the messages posted;

    e.    the nature of the "assistance" provided by Co-Conspirator 2;

    f.    whether there were any other parties involved;

    g.    how Mr. Mostafa allegedly "urged" his followers to donate money, goods and services to Taliban-sponsored programs;

    h.    "the defendant's followers;"

    i.    the specific nature and type of "goods;"

    j.    the specific nature and type of "services;"

    k.    the names and nature of the alleged "Taliban-sponsored programs;" and

    l.    whether these are any memorializations of these "messages."

39.    With respect to Count Eleven, ¶ 26(b), please identify:

    a.    "Co-Conspirator 2" and "Co-Conspirator 3" by name;

    b.    the time, date and location from which Mr. Mostafa allegedly "requested" that Co-Conspirator 2 deliver Co-Conspirator 3 to "an individual located in the territory of Afghanistan controlled by the Taliban;"

    c.    the precise manner and means by which Mr. Mostafa so "requested;"

    d.    whether there were any other parties present when that request was made;

    e.    the contents of the request;

f.      whether there is any recording or memorialization of the request;

g.      the means by which Co-Conspirator 2 was to "deliver" Co-Conspirator 3;

h.      by name the "individual located in the territory of Afghanistan controlled by the Taliban;" and

i.      the precise location of "the individual located in the territory of Afghanistan controlled by the Taliban."

40.     With respect to Count Eleven, ¶ 26(c), please identify:

a.      "Co-Conspirator 2" by name;

b.      the time, date and location from which Mr. Mostafa allegedly "requested" that Co-Conspirator 2 deliver compact discs containing the defendant's statements to certain individuals located in the territory of Afghanistan controlled by the Taliban;

c.      the precise manner and means by which Mr. Mostafa so "requested;"

d.      whether there were any other parties present when that request was made;

e.      the contents of the request;

f.      whether there is any recording or memorialization of the request;

g.      the time, date and location to which the disks were allegedly delivered;

h.      by name the "individuals" to which the disks were allegedly delivered;

i.      the nature of the "statements" on the disks; and

j.      whether there are any copies of the disks.

41.     With respect to Count Eleven, ¶ 26(d), please identify:

a.      "Co-Conspirator 2" by name;

b.      the times and dates upon which Co-Conspirator 2 and Mr. Mostafa allegedly "discussed plans to establish a computer lab in Afghanistan;"

c.      the means by which these plans were allegedly "discussed;"

d. Mr. Mostafa's location at the times of these discussions;

e. the location of Co-Conspirator 2 during these discussions;

f. whether there were any other parties to these discussions and their identities;

g. the contents of these discussions;

h. whether there are any recordings or memorializations of these discussions;

i. on which dates and times Mr. Mostafa allegedly "stated that he wanted the computer lab to be located in Kandahar and to service Taliban officials;"

j. the "Taliban officials" by name; and

k. on which dates and times Mr. Mostafa allegedly "stated that he wanted the computer lab to be located in Kandahar and to service . . . the Afghani people located in Kandahar."

42. With respect to Count Eleven, ¶ 26(e), please identify:

a. "Co-Conspirator 2" by name;

b. the time, date and means by which Co-Conspirator 2 entered Pakistan;

c. the time and date and means by which Co-Conspirator 2 entered Afghanistan;

d. the time, date, location and means by which Mr. Mostafa allegedly gave Co-Conspirator 2 approximately six thousand British pounds;

e. the form of the money allegedly provided;

f. any other parties to the alleged transaction;

g. any memorialization of the alleged transaction;

h. the location of the building to house the computer lab; and

i. the nature of the "start up expenses" for the computer lab that the money was allegedly to be used in part for.

## POINT VII

## THE COURT SHOULD STRIKE IRRELEVANT AND
## PREJUDICIAL SURPLUSAGE FROM THE INDICTMENT

The Indictment in this case contains surplusage that is both irrelevant to the charges and/or unduly prejudicial to the defendant, in that (1)  Counts Five and Six of the Indictment include extraneous and unduly prejudicial references to Usama Bin Laden's leadership of al Qaeda; and (2) the Indictment is peppered throughout with impermissible broadening phrases, such as "others known and unknown," "among others," and elsewhere."

By inserting in ¶¶ 10 and 12 of the Indictment that al Qaeda is "led by  Usama Bin Laden" the government improperly seeks to tie Mr. Mostafa to perhaps the most notorious figure in the American consciousness, and certainly within the realm of terrorism, and thus to improperly influence the jury to convict him by association.  Nor is proof of al Qaeda's leadership an element of Counts Five or Six, or any crime charged in the Indictment.  As established **post**, *any* reference to Usama Bin Laden as the leader of al Qaeda is unnecessary, irrelevant to the offenses charged in Counts Five and Six, and unduly prejudicial.

Broadening phrases, such as "others known and unknown," "among others," and elsewhere" impermissibly expand the charges against Mr. Mostafa.

Thus, this Court must strike language contained in ¶¶ 10 and 12 of the Indictment referring to Bin Laden and his leadership of al-Qaeda pursuant to Rule 7(d), Fed.R.Crim.P., and broadening phrases such as "others known and unknown," "among others," and elsewhere," to protect Mr. Mostafa's right to due process and a fair trial as guaranteed by the Fifth and Sixth Amendments to the U.S. Constitution.

55

**A.**     *The Applicable Law Regarding Surplusage*

Rule 7(d), Fed.R.Crim.P., provides that upon motion of a defendant, the Court may strike extraneous matter, or "surplusage," from an Indictment.  Pursuant to Second Circuit case law "a defendant's motion to strike surplusage from an indictment will be granted so long as the language is not relevant to the offenses and is either prejudicial or inflammatory." *United States v. Malochowski*, 604 F.Supp.2d 512, 518 (N.D.N.Y. 2009) (granting defendant's motion to strike surplusage based on irrelevance and the "danger of unfair prejudice"), *citing United States v. Mulder*, 273 F.3d 91, 99 (2d Cir.2001) ( "[m]otions to strike surplusage from an indictment will be granted only where the challenged allegations are not relevant to the crime charged and are inflammatory and prejudicial");  *United States v. Scarpa*, 913 F.2d 993, 1013 (2d Cir.1990) (reiterating that Rule 7(d) imposes an "exacting standard").

In addition, any surplusage that remains in an Indictment implicates the defendant's right to due process and to a fair trial under the Fifth and Sixth Amendments because, as is well-settled among the circuit courts, the government is under no obligation – to sustain a conviction – to prove statements in the Indictment that constitute surplusage.  *See, e.g., United States v. Greene*, 497 F.2d 1068, 1086 (7th Cir. 1984) ("[t]he language of indictment, insofar as it goes beyond alleging elements of statute, is . . . surplusage . . [and] such surplusage in an Indictment need not be proved");  *United States v. Archer*, 455 F.2d 193, 194 (10th Cir. 1972) ("[i]t is not essential that everything in an Indictment be proved");  *Milentz v. United States*, 446 F.2d 111, 114 (10th Cir. 1971) ("mere surplusage . . . need not be proved"); *Gawne v. United States*, 409 F.3d 1399, 1403 (9th Cir. 1969) ("allegation of the indictment was surplusage [because it was not an element of the offense] and need not have been proved").  Accordingly, to leave such language in an indictment

56

is inherently unfair and a denial of due process.

Indeed, in applying this "exacting standard," this court recently addressed the type of language that constitutes surplusage, and therefore must be deleted from an indictment, with regard to Mr. Mostafa's one-time co-defendant Abdullah Kassir.  *See United States v. Kassir*, not reported in ___ F.Supp.2d ___, 2009 WL 995139, at * 2-3 (S.D.N.Y. 2009) (granting in part defendant's motion to strike surplusage, and denying it in part).

In *Kassir*, the defendant argued that references to Bin Laden as the leader of al Qaeda, in each of the counts of the Indictment charging the defendant with providing or conspiring to provide material support to al Qaeda, were both irrelevant to the charges and prejudicial to the defendant.  *Id.*, at *2.  The defendant also argued that broadening phrases, such as "others known and unknown,""among others," and elsewhere" throughout the Indictment, impermissibly expanded the charges against the defendant.  *Id.*, at *3. In that case, the district court concluded that Bin Laden's leadership of Al Qaeda was relevant, not prejudicial, and should not be struck, because proof would be introduced at trial that the defendant intended to support Bin Laden, and in doing so he also intended to support Al Qaeda, but that "broadening phrases" in certain charging paragraphs would be struck because they could have impermissibly expanded the charges against the defendant.  *Id.*, at *2-3.

**B.**   ***All References to Bin Laden In Counts Five and Six of the Indictment
   Are Irrelevant to the Charged Offenses and Must Be Struck as Unduly
   Prejudicial Surplusage, and to Protect Mr. Mostafa's Right to Due
   Process and a Fair Trial Guaranteed by the Fifth and Sixth Amendments***

Reference to the fact that al Qaeda is "led by  Usama Bin Laden" in Counts Five and Six, at ¶¶ 10 and 12, must be struck from the Indictment because (1) al Qaeda's leadership by Bin Laden irrelevant and prejudicial surplusage pursuant to Rule 7(d), Fed.R.Crim.P.; in that it is not

an element of either Count Five or Count Six; (2)  such language does not possess any probative

value under Rule 403, Fed.R.Evid.;   and (3)  the inclusion of such language violates Mr.

Mostafa's Fifth and Sixth Amendment rights to due process and a fair trial.

**1.** ***Al Qaeda's Leadership by Usama Bin Laden Is Irrelevant and Prejudicial Surplusage Pursuant to Rule 7(d), Fed.R.Crim.P.; in That It Is Not an Element of Either Count Five or Count Six***

It is well-settled that surplusage should be struck from an Indictment pursuant to Rule

7(d), Fed.R.Crim.P., when such language is both irrelevant and prejudicial.  *See Mulder*, 273 F.3d

at 99.  Here, references to Bin Laden's leadership of al Qaeda clearly meet both of these prongs.

Rule 401 of the Federal Rules of Evidence defines relevant evidence as evidence "having

any tendency to make the existence of any fact that is of consequence to the determination of the

action more probable or less probable than it would be without the evidence."  Rule 401,

Fed.R.Evid.  Moreover, in criminal trials, all facts presented to the jury must be "strictly relevant

to the particular offense charged."  *Williams v. New York*, 337 U.S. 241, 247 (1949).

In this case, since the crucial question the government bears the burden of proving at trial

with regard to both Counts Five and Six of the Indictment, respectively, is whether Mr. Mostafa

conspired to provide, or provided material support to a foreign terrorist organization (hereinafter

"FTO"), to wit al Qaeda, it is clear that proof of al Qaeda's leadership is not an element of Counts

Five or Six.  Nor is al Qaeda's leadership by Bin Laden relevant in the sense that this mere fact

does not make it more or less probable that Mr. Mostafa provided material support to Al Qaeda as

alleged in Counts Five and Six.

For these reasons, this case can also be distinguished from *Kassir* because in that case the

government asserted that it "plan[ned] to offer evidence that the Defendant committed the charged

conduct with the intent to support Bin Laden" which "[in that case was] . . . relevant for the inference that Defendant also intended to support al Qaeda." F.Supp.2d, 2009 WL 995139, at * 2. On the basis that the government planned  to "offer evidence that, on his way to the United States to establish a jihad training camp, Defendant carried a letter he wrote to Bin Laden stating 'we love you here' and 'I ask God to help you here, and to support you to fulfill his desire'"  the district court concluded that "Defendant's express intent to support al Qaeda's leader would lend a strong inference of support for the organization itself and . . . such evidence is relevant and admissible[.].

Since such evidence creating a concrete link between Mr. Mostafa's support for Bin Laden and his support for al Qaeda is not available in this case, it is clear that Bin Laden's leadership of al Qaeda is irrelevant to the charges, and it's inclusion in the Indictment is highly prejudicial to Mr. Mostafa.

> **2.      *Reference to Usama Bin Laden's Leadership of Al Qaeda Must Be Struck Pursuant to Fed.R.Evid. 403 Because it Lacks Any Probative Value and Is Unduly Prejudicial to Mr. Mostafa***

The language regarding Bin Laden's leadership also must be struck from the Indictment because it is unduly prejudicial under the standard set forth in Fed.R.Evid. 403, which provides for the exclusion of even relevant evidence when its "probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury."  Rule 403, Fed.R.Evid.  The danger of unfair prejudice is overwhelming in this case, because of the toxic impact the mere mention of Usama Bin Laden would likely have on a jury.

Correspondingly, the offending language also presents the jury with an improper basis for conviction of Mr. Mostafa, *i.e.*, solely by his alleged association with Bin Laden.  Thus, the

Indictment misleads the jury to ignore the factual issue of whether Mr. Mostafa conspired to provide or provided material support to al Qaeda..  The irrelevant and highly prejudicial nature of the references to Bin Laden's leadership of al Qaeda requires that such language be struck in its entirety from the Indictment, pursuant to Rule 7(d).

> **3.**   ***References to Bin Laden's Leadership of Al Qaeda Must Be Struck from the Indictment to Protect Mr. Mostafa's Fifth and Sixth Amendment Rights to Due Process and a Fair Trial***

In addition, the inclusion in the Indictment of the fact that Usama Bin Laden is the leader of al Qaeda is not only irrelevant and inflammatory, but violates Mr. Mostafa's constitutional rights to due process and a fair trial.  Since it is undisputed that the government need not prove that Usama Bin Laden is the leader of al Qaeda to convict Mr. Mostafa of violating 18 U.S.C. §2339B, as it is not an element of the crime(s) charged, and because "[t]he language of indictment, insofar as it goes beyond alleging elements of statute, is surplusage [and] . . .need not be proved[,]" the government, through its inclusion of this surplusage, invites the jury to conclude that Mr. Mostafa is guilty of material support to al Qaeda simply by association with Bin Laden. *See, e.g., Greene*, 497 F.2d at 1086.

Accordingly, language in the Indictment stating that al Qaeda is "led by Usama Bin Laden" must be struck to preserve Mr. Mostafa's constitutional protections under the Fifth and Sixth Amendments, in so far as his right to due process and a fair trial.

**C.**   ***Broadening Phrases, Such as "Others Known and Unknown," "Among Others," and Elsewhere," must Be Stricken Because They Impermissibly Expand the Charges Against Mr. Mostafa***

It is well-settled in this district that "[i]n certain instances language must be stricken because it impermissibly expands the charge." *Kassir*, 2009 WL 995139, at *3, *quoting United*

*States v. Pope*, 189 F.Supp. 12, 25-26 (S.D.N.Y. 1960) (holding that "language impermissibly delegated to the prosecution the authority to enlarge the specific charges, which could have resulted in 'depriving [the] defendant of his constitutional right to be accused of a felony offense only on the basis of a grand jury indictment'").  In this case, nearly every paragraph of the Indictment includes broadening language, including phrases such as "others known and unknown," "among others," and elsewhere," which impermissibly expand the charges against Mr. Mostafa beyond the specific charges returned by the jury.  Accordingly, since these phrases insinuate crimes not charged, as well untold numbers of locations and persons involved in each crime that are not otherwise specified in the Indictment, these phrases must be struck in their entirety.

**POINT VIII**

**THE MULTIPLICITOUS COUNTS IN THE
INDICTMENT VIOLATE THE FIFTH
AMENDMENT PROHIBITION AGAINST
<u>DOUBLE JEOPARDY AND MUST BE DISMISSED</u>**

As set forth below, the government must elect between several paired sets of counts – 3 & 5, 4 & 6, 7 & 9, and 8 & 10 – because the counts as they currently stand are functionally equivalent in that they do not articulate different conduct elements, and are therefore multiplicitous in violation of the Fifth Amendment prohibition against double jeopardy.

A.       *The Applicable Law and Principles Governing the
         Mutiplicity of Charges Arising Under Two Separate Statutes*

An indictment is multiplicitous when it charges a single offense as an offense multiple times in separate counts, when in law and fact only one crime is alleged to have been committed, *see United States v. Chacko,* 169 F.3d 140, 145 (2d Cir. 1999), in violation the Double Jeopardy

61

Clause of the Fifth Amendment.  *See United States v. Dixon,* 509 U.S. 688, 696 (1993).

A defendant may be convicted only once for each offense because the rule against multiplicity protects against multiple convictions for the same offense – not just against the imposition of multiple sentences for the same offense.  *Ball v. United States*, 470 U.S. 856 (1985). Thus, a defendant will suffer "jeopardy" not only upon any sentence that may arise, but also by any conviction of an offense.  *Ball*, 470 U.S. at 861.

The test for determining whether offenses charged in separate counts of an indictment are the same, and thus multiplicitous, is whether each statutory provision requires proof of an additional fact that the other count does not.  *See Blockberger v. United States*, 284 U.S. 299 (1932).  In *United States v. Josephberg*, 459 F.3d 350, 356 (2d Cir. 2006) (*per curiam*), the Second Circuit stated that the *Blockberger* inquiry is whether there is an element in each offense that is not contained in the other, not whether the conduct underlying the separate counts is identical.

**B.**    ***Several Charges in the Indictment are Impermissibly and Unlawfully Multiplicitous***

While the Indictment, in Counts Three through Six (the "Bly, Oregon jihad training camp" counts) and Seven through Ten (the "facilitating violent jihad in Afghanistan" counts) permissibly charges both a conspiracy and a substantive offense under the same statute (either 18 U.S.C. §2339A or 18 U.S.C. §2339B), in relation to the jihad training camp in Bly, Oregon, and facilitating violent jihad in Afghanistan, respectively, the Indictment impermissibly charges conspiracies under *both* 18 U.S.C. §2339A and §2339B, and substantive offenses under *both* 18 U.S.C. §2339A and §2339B, in relation to each set of counts, particularly when the government has failed to identify the §956 conspiracy underlying each §2339A charge, as set forth **ante** at

Point V.

Thus, given the vague general language of the Indictment, it is not clear for the Bly,

Oregon jihad training camp counts (Three through Six) and the facilitating jihad in Afghanistan

counts (Seven through Ten), respectively, whether the conspiracy to provide material support

under §2339A in fact, though using different wording, has the same object and involves the exact

same conduct element as the conspiracy to provide material support to al Qaeda under §2339B, in

each group, nor whether the substantive charge of providing material support under §2339A in

each group, has the same object and involves the exact same conduct element as the conspiracy to

provide material support to al Qaeda under §2339B, in each group.[13]

Since it is virtually impossible to know, based on the allegations in the Indictment

whether, for instance, the underlying §956 conspiracy that is the object of the conspiracy to

provide and conceal material support to terrorists, charged under Count Seven, is in fact a

conspiracy to provide material support to al Qaeda, as charged under Count 9, and therefore

whether the conduct element is one and the same for the conspiracy charged under §2339A and

§2339B, these counts are impermissibly multiplicitous, because in this case, under these facts, and

given this pleading, a conspiracy to violate §956 and to provide support to al Qaeda is not a

different element.

Accordingly, to prevent the dismissal of these multiplicitous paired sets of counts, which

---

[13]  For example, if one statute criminalizes support to people who live on Sixth Avenue,
and another criminalizes support to people who live on the Avenue of the Americas, that is
simply two ways to define the same object – and characterizes the situation here with respect to
the paired counts.  That is distinguishable from a set of statutes that defines two *different* objects
that perhaps are encompassed by a single course of conduct, *i.e.*, people who live on Sixth
Avenue, and people who live on Seventh Avenue.

as they stand violate the Fifth Amendment prohibition against double jeopardy, the government must elect between Counts 3 & 5, 4 & 6, 7 & 9, and 8 & 10 – each pair of which contains two conspiracies (one under §2339A and one under §2339B) or two substantive counts (one under §2339A and one under §2339B) , in relation to either the jihad training camp in Bly, Oregon or facilitating jihad in Afghanistan.

Indeed, the assessment of multiplicity with respect to these counts is vitally important because permitting each charge under separate statutes would result in a vast multiple in terms of possible punishment, and could be the difference of decades in the length of Mr. Mostafa's potential statutory exposure if he is convicted on both counts in any of the paired sets described above.

## Conclusion

For all the reasons set forth above, it is respectfully submitted that Mr. Mostafa's motions for:  (1) the dismissal of Counts One and Two because they do not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of 18 U.S.C. §1203, and because the charges thus deny Mr. Mostafa his Fifth Amendment constitutional right to Due Process; (2) the  dismissal of Counts Seven through Ten because they do not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of 18 U.S.C. §2339A, and because charges thus deny Mr. Mostafa his Fifth Amendment constitutional right to Due Process; (3) the dismissal of Count Eleven because it does not establish sufficient nexus between Mr. Mostafa and the United States to warrant extraterritorial application of IEEPA, and because the charge thus denies Mr. Mostafa his Fifth Amendment constitutional right to Due Process; (4) the dismissal of the Indictment for failure to state an offense;  (5) the

dismissal of Counts Three, Four, Seven, and Eight, because each fails to identify the requisite

conspiracy under 18 U.S.C. §956; (6) the Court to compel the government to produce the

requested Bill of Particulars; (7)  the striking of irrelevant and prejudicial surplusage from the

Indictment, pursuant to Rule 7(d), Fed.R.Crim.P., including references to Usama Bin Laden's

leadership of al Qaeda, and impermissible broadening phrases such as "others known and

unknown," "among others," and elsewhere;"  and (8) the Court to compel the government to elect

among various paired counts in the Indictment because they are multiplicitous, be granted in their

entirety.

Dated: 5 April 2013
       New York, New York

                                        Respectfully submitted,


                                          /S/ Joshua L. Dratel
                                        Joshua L. Dratel
                                        Dratel & Mysliwiec
                                        2 Wall Street
                                        3rd floor
                                        New York, New York 10005
                                        (212) 732-0707

                                        Jeremy Schneider
                                        Rothman, Schneider, Soloway & Stern, LLP
                                        100 Lafayette Street
                                        Suite 501
                                        New York, New York 10013
                                        212-571-5500

                                        *Attorneys for Defendant*
                                        *Mostafa Kamel Mostafa*

     – Of Counsel –

Joshua L. Dratel
Jeremy Schneider
Lindsay A. Lewis

65