USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: OCT 2 2 2013

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X

UNITED STATES OF AMERICA

-v-

MOSTAFA KAMEL MOSTAFA,
                           Defendant.
------------------------------------------------------------X

04 Cr. 356 (KBF)

OPINION & ORDER

KATHERINE B. FORREST, District Judge:

On August 30, 2013, this Court issued an Opinion & Order denying defendant Mostafa Kamel Mostafa's motion to dismiss all counts in the Indictment against him. (ECF No. 199.) On that same day, the Second Circuit issued its decision in United States v. Vilar, __ F.3d __, 2013 WL 4608948 (2d Cir. Aug. 30, 2013). Defendant has moved for reconsideration of this Court's August 30 Opinion & Order as to Counts Seven – Ten, on the basis that Vilar constitutes an intervening change in controlling law. (ECF No. 212.) The Government has opposed the motion for reconsideration. (ECF No. 214.)

For the reasons set forth below, the Court denies defendant's motion for reconsideration.

I.    THE VILAR DECISION

Vilar concerns the question of whether criminal liability under Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), extends to conduct where the transaction(s) at issue was or were in connection with an extraterritorial

purchase or sale of securities. Vilar, 2013 WL 4608948, at *1. The Second Circuit held that Section 10(b) and its implementing regulation, Rule 10b-5, 17 C.F.R. § 240.10b-5, do not apply to extraterritorial conduct, whether liability is sought civilly or criminally. Id. The Court found that the Supreme Court's decision in Morrison v. National Australia Bank, Ltd., 130 S. Ct. 2869 (2010), applies to criminal cases brought pursuant to Section 10(b) and Rule 10b-5.[1]

In Vilar, depending on one's perspective, the Second Circuit either confirmed the appropriate reading of certain case law, or altered the landscape with respect to presumptions regarding the extraterritorial application of criminal statutes. Previously, cases had frequently stated that the presumption against the extraterritorial application of civil statutes does not apply in the criminal context. See, e.g., United States v. Siddiqui, 699 F.3d 690, 700 (2d Cir. 2012) ("The ordinary presumption that laws do not apply extraterritorially has no application to criminal statutes."); United States v. Al Kassar, 660 F.3d 108, 118 (2d Cir. 2011) ("The presumption that ordinary acts of Congress do not apply extraterritorially . . . does not apply to criminal statutes."). Such cases routinely cited United States v. Bowman, 260 U.S. 94 (1922). See Siddiqui, 699 F.3d at 701; Al Kassar, 660 F.3d at 118. The Second Circuit stated that Bowman had been overread—and that, in reality, its holding is properly limited to the proposition that the Government has a right to defend itself outside of domestic territory. Id. at *5–6.[2]

---

[1] In Morrison, the Supreme Court held that liability under the statutes requires that violations must be in connection with a domestic transaction. 130 S. Ct. at 2884.
[2] Bowman concerned sailors at sea conspiring to defraud a U.S.-owned company. 260 U.S. at 95.

2

In moving away from this broad language, the Second Circuit stated that such cases—and all other cases—must be understood in context and with particular attention to the underlying statutes. Vilar, 2013 WL 4608948, at *6. Accordingly, Bowman requires that the relevant statutes either "contain a clear indication of Congress's intent to provide for extraterritorial application or relate to crimes against the United States government." Id.

The Second Circuit further stated that "[t]he presumption against extraterritoriality is a method of interpreting a statute, which has the same meaning in every case. . . . A statute either applies extraterritorially or it does not, and once it is determined that a statute does not apply extraterritorially, the only question we must answer in the individual case is whether the relevant conduct occurred in the territory of a foreign sovereign." Id. at *7. That is, in the absence of statutory intent providing for extraterritorial application, the only question left is whether the conduct at issue was domestic or not.

Defendant argues that Vilar undermines this Court's rationale for finding that a sufficient nexus exists between Mostafa and the United States to warrant extraterritorial application of the statutes underlying Counts Seven – Ten, 18 U.S.C. §§ 2339A, 2339B.

Defendant misreads the Court's August 30 Opinion and also incorrectly reads the statutes at issue.

## II. COUNTS SEVEN AND EIGHT

Counts Seven and Eight are both based on 18 U.S.C. §§ 956 and 2339A. (ECF No. 1.) Count Seven alleges a Conspiracy to Provide and Conceal Material Support and Resources to Terrorists, and Count Eight alleges the provision (or aiding and abetting the provision) of such support and resources. (Id.)

As an initial matter, there is a sufficient domestic nexus between the allegations in Counts Seven and Eight to avoid the question of extraterritorial application altogether. Overt acts occurred in the United States. As this Court previously found, the counts allege that a co-conspirator raised funds in the United States and used them to pay travel expenses for personnel to travel to a jihad training camp in Afghanistan. (ECF No. 199 at 10–11.)

In addition, in October 2001—during the period of the charged conspiracy—Congress removed a specific limitation of 18 U.S.C. § 2339A to U.S. conduct. See 18 U.S.C. § 2339A (amended 2001). This specific and careful removal of a required occurrence within the United States indicates a congressional intent for extraterritorial application. See American Land Title Ass'n v. Clarke, 968 F.2d 150, 152 (2d Cir. 1992) (explaining that an amendment to a statute that omits certain provisions "almost always reflects Congress's intent").[3]

---

[3] The Court leaves for another day whether there needs to be conduct proven at trial relating to the post-October 26, 2001 timeframe, and whether the absence of such evidence would have relevance to a motion for a directed verdict as to this claim. The Second Circuit has held that the ex post facto clause is not violated by application of a statute to a conspiracy that began prior to but continued after the statute's effective date. United States v. Torres, 901 F.2d 205, 226 (2d Cir. 1990); see also United States v. Ferrara, 458 F.2d 868, 874 (2d Cir. 1972).

4

Even in the absence of this demonstrated intent that § 2339A applies extraterritorially, and even in the face of no textual direction as exists here, the Court could nonetheless infer congressional intent for extraterritorial application from the nature of the offense. Al Kassar, 660 F.3d at 118. Here, due to the combination of U.S. contacts by virtue of the fundraising occurring in the U.S. together with the allegations of connection to al Qaeda—an entity whom this country had deemed a security threat to the United States, its interests, and people—the statute and its application to the facts alleged in the Indictment here clearly meet the standards for extraterritorial application set forth in Vilar.[4]

Finally, § 2339A requires an underlying violation of 18 U.S.C. § 956. Section 956 explicitly prohibits a conspiracy with another person or persons, "regardless of where such other person or persons are located, to commit at an place outside the United States an act that would constitute an offense of murder, kidnapping, or maiming if committed in...the United States." 18 U.S.C. § 956. Section 956 thus provides for extraterritoriality—and § 2339A relies upon § 956.

Accordingly, Vilar does not alter this Court's rationale or decision.

III. COUNTS NINE AND TEN

Counts Nine and Ten are both based on statutes that have an explicit provision for extraterritorial application: 18 U.S.C. § 2239B. Count Nine alleges a

---

[4] The Government argues that "[i]t is now beyond question that a government maintains the 'power and jurisdiction' to appropriately 'punish' perpetrators of crimes of terrorism aimed against its interests and people anywhere in the world." (Gov't Mem. in Opp. 8 n.10, ECF No. 214.) This is an extremely broad proposition, which implicates many issues not before the Court. The Court notes its disagreement with several, possibly overbroad readings of this statement, but finds that resolution of this disagreement is unnecessary to resolution of the instant motion.

5

Conspiracy to Provide Material Support and Resources to a Terrorist Organization (rather than a person, as in Counts Six and Seven), as well as providing such material support and resources. (ECF No. 1.) Subsection (d) of § 2339B states: "There is extraterritorial Federal jurisdiction over an offense under this section." 18 U.S.C. § 2339B(d).

Defendant argues that, as with the removal of the U.S. limitation in § 2339A, subsection (d) was not added to the statute until October 26, 2001. This is incorrect. Subsection (d) was included in the statute in 1996. See Antiterrorism & Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title III, § 303(a), 110 Stat. 1214 (1996) (subsection (d) included in the statute at that time). In addition, the offense charged pursuant to this statute, under which the defendant is alleged to have been in a conspiracy to provide or to have provided material support to al Qaeda, is certainly conduct in which protection of the U.S. government, interests and persons is implicated.

CONCLUSION

For the reasons set forth above, the motion for reconsideration is DENIED. The Clerk of the Court is directed to terminate the motion at ECF No. 199.

SO ORDERED.

Dated:  New York, New York
October 22, 2013

_____
KATHERINE B. FORREST
United States District Judge