UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

UNITED STATES OF AMERICA      :         04 Cr 356 (KBF)

        - against -        :        (Electronically Filed)

MOSTAFA KAMEL MOSTAFA ,      :

               Defendant.   :
-------------------------------------------------------X

## MEMORANDUM OF LAW IN OPPOSITION TO THE GOVERNMENT'S MOTION FOR AN ANONYMOUS JURY AND OTHER RELATED PROTECTIVE MEASURES

JOSHUA L. DRATEL
JOSHUA L. DRATEL, P.C.
29 Broadway, Suite 1412
New York, New York 10006
(212) 732-0707

JEREMY SCHNEIDER
ROTHMAN, SCHNEIDER, SOLOWAY & STERN, LLP
100 Lafayette Street, Suite 501
New York, New York 10013
(212) 571-5500

*Attorneys for Defendant Mostafa Kamel Mostafa*

*– Of Counsel –*

Joshua L. Dratel
Jeremy Schneider
Lindsay A. Lewis
Lucas Anderson

TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENT

THE GOVERNMENT HAS FAILED ENTIRELY
TO SATISFY THE STRINGENT STANDARDS
FOR EMPANELING AN ANONYMOUS JURY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

A.      *The Standard for Determining Whether an Anonymous Jury Is Necessary* . . . . . . . . . . 5

B.      *The Government Has Not Met the Daunting Standard for an Anonymous Jury* . . . . . . . . 8

        1.      *The Government Has Not Presented a Single Allegation*
                *Regarding Juror Security With Respect to Mr. Mostafa or This Case* . . . . . . . . . 9

        2.      *The Mere Invocation of* al Qaeda *Is Not Sufficient*
                *to Justify an Anonymous Jury In This Case* . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

        3.      *The Offenses Alleged In This Case Are*
                *Insufficient to Justify An Anonymous Jury* . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

        4.      *Publicity Related to This Case Is Insufficient to Justify An Anonymous Jury* . . . 16

        5.      *Transparently False Instructions to Jury Will Not Alleviate*
                *the Prejudice to Mr. Mostafa, But Will Simply Aggravate It* . . . . . . . . . . . . . . . . 16

        6.      *Far Less Extreme Measures Can Be Adopted to Protect the*
                *Privacy of Juror Information Without Prejudicing Mr. Mostafa's*
                *Right to a Fair Trial* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

TABLE OF AUTHORITIES

CASES

*Coffin v. United States*, 156 U.S. 432 (1895) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Commonwealth v. Angiulo*, 615 N.E.2d 155 (Mass. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Estelle v. Williams*, 425 U.S. 501, 504 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Abu Ali*, 05 Cr. 53 (E.D. Va.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Aldawsari*, 11 Cr. 15 (SRC) (N.D.Texas) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Al-Hussayen*, 03 Cr. 48 (EJL) (D. Idaho) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*United States v. Aref*, 2004 Cr. 402 (TJM) (N.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Aulicino*, 44 F.3d 1102 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*United States v. Bellomo*, 954 F. Supp. 630  (S.D.N.Y. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*United States v. Coonan*, 664 F.Supp. 861 (S.D.N.Y. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Cromitie*, 09 Cr. 558 (CM) (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Holy Land Foundation*, 04 Cr. 240 (N.D. Tex.) . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mehanna*, 09 Cr. 17 (GAO) (D. Mass.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Melendez*, 743 F.Supp. 134 (E.D.N.Y. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Millan-Colon*, 834 F.Supp. 78 (S.D.N.Y. 1993) . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Moalin*, 10 Cr. 4246 (JTM) (S.D. Cal.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Mohamud*, 10 Cr. 475 (GMK) (D.Ore.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Rahman*, 93 Cr. 181 (MBM) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Ressam*, 99 Cr. 666 (JCC) (W.D. Wash.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 14

*United States v. Siddiqui*, 08 Cr. 826 (RMB) (S.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Siraj*, 05 Cr. 104 (NG) (E.D.N.Y.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

 *United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*United States v. Thai*, 29 F.3d 785 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 5

*United States v. Thomas*, 757 F.2d 1359 (2d Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,6,7

*United States v. Tomero*, 486 F. Supp. 320 (S.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Tutino*, 883 F.2d 1125 (2d Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*United States v. Vario*, 943 F.2d 236 (2d Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . 1,5,9,10-11

*United States v. Wong*, 40 F.3d 1347 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7

## OTHER AUTHORITIES

English, T.J., *The Westies:  Inside New York's Irish Mob* (St. Martin's Paperbacks:  1991) . . . 14

**Introduction**

This Memorandum of Law is submitted on behalf of defendant Mostafa Kamel Mostafa in opposition to the government's Motion for an Anonymous Jury and Other Related Protective Measures.  For the reasons set forth below, it is respectfully submitted that the government's motion should be denied in its entirety.

As the Second Circuit has cautioned repeatedly, the empaneling of an anonymous jury is an unusual and drastic measure that is justified only when the government establishes that it is "genuinely called for."  *United States v. Vario*, 943 F.2d 236, 239 (2d Cir. 1991);  *United States v. Thai*, 29 F.3d 785, 801 (2d Cir. 1994).  Applying that admonition, the Second Circuit has repeatedly and consistently held that this deviation from standard methods of jury selection is permissible only under circumstances in which the government has made a convincing showing of a "strong reason to believe the jury needs protection."  *United States v. Thomas*, 757 F.2d 1359, 1365 (2d Cir. 1985).

Yet nowhere in the government's motion papers is mention of this important limitation on employing an anonymous jury.  Rather, the government cavalierly seeks an anonymous jury in a case in which:

- the defendant has *already been tried in his home country before a jury that was not anonymous*, and was chosen via the ordinary methods of jury selection, without incident;

- the defendant has *already been convicted before a jury that was* not *anonymous*, without incident, before, during, or after those proceedings;

- the defendant has *already been incarcerated for nearly than a decade* – eight

1

years in his home country, and an additional 18 months here in the U.S., without a

single security incident;

- the co-defendant *in this very case* was tried without an anonymous jury, without
  incident, even though that defendant had been in the U.S. in possession of
  firearms and attempting to provide military and weapons training to others;

- the government has not made a single fact-specific, defendant-specific allegation
  of any security danger that Mr. Mostafa represents with respect to the jury in this
  case.

As a result, the government abjectly fails to meet the formidable standard for empaneling

an anonymous jury, a step both drastic and dramatic, which the Second Circuit and other courts

have recognized "undoubtedly has serious implications for a defendant's interest in effectively

conducting *voir dire* and in maintaining the presumption of innocence." *United States v. Wong*,

40 F.3d 1347, 1376 (2d Cir. 1994). Yet the government's motion papers are devoid of any

recognition of that essential principle of the criminal justice system, or of its overriding

importance to a fair trial.

In fact, as detailed below, anonymous juries even in terrorism cases are not the norm,

even in this district. Yet there has not been a single issue of juror security reported in any of

those cases – again, before, during, or after trial. In addition, homicide cases involving local

gangs regularly occur in this district without anonymous juries. The government's motion here

represents simply an attempt to capitalize on the public's fear of terrorism, and to amplify the

already prejudicial impact of the charges to eliminate the possibility that Mr. Mostafa can

receive a fair trial.

2

Nor are jurors naive, or uninformed, or ultimately fooled by the government's proposed instructions.  Jurors are well aware that high-profile cases proliferate in the Southern District of New York, and that high-profile status is *not* the benchmark for juror anonymity.  Indeed, the spate of insider trading prosecutions, including two within the past four months involving employees of SAC Capital – in what the United States Attorney described as the most extensive insider trading network yet prosecuted – involved daily saturation coverage by print, broadcast, cable, and electronic media without a single request for an anonymous jury.

Consequently, jurors get the message conveyed by preserving their anonymity:  the defendant is dangerous, and you are a potential victim of his.[1]  Thus, the trial would end before it began, and the evidentiary portion would be a mere procedural formality.

Moreover, there are other, sensible, non-prejudicial means of protecting juror information.  As the Court has proposed informally during the most recent pretrial conference, the juror questionnaires could be completed without identifying the juror other than a code that would be identifiable only through a key system that would ensure that the candid and private information communicated in the questionnaire in response to questions about juror backgrounds and attitudes remain confidential and secure.

Accordingly, it is respectfully submitted that the government's motion should be denied in all respects.

_____

[1]  Already Mr. Mostafa has been prejudiced by the government's public filing of its motion, which is available to anyone with access to PACER – media, the public, prospective jurors.  Thus, even if the Court were to deliver the government's proposed instruction, the genuine motivation for the government's motion would already be transparent, and the devastating prejudice unavoidable.

**STATEMENT OF THE FACTS**

Mr. Mostafa was tried on criminal charges of incitement in the United Kingdom, his country of residence, and where the mosque at which he preached, and its congregation, were located. The jury was not anonymous; the jurors' names and addresses were publicly disclosed. The pretrial phase and trial itself proceeded without incident in that regard. Nor was there any harassment of jurors – or any security issue – after it convicted Mr. Mostafa. In addition, there were not any security incidents with respect to any witnesses at Mr. Mostafa's trial.

Mr. Mostafa's co-defendant in this case, Oussama Kassir, was tried in 2009 in the Southern District of New York before Judge Keenan. The jury was *not* anonymous. There were no issues of juror security (or any security issue) attendant to that trial, notwithstanding the jury's conviction of Mr. Kassir and his sentence of life imprisonment.

Mr. Mostafa has been in custody since August, 2004. Initially imprisoned in the U.K. (on both the U.K. criminal charges and the pending extradition request by the United States), Mr. Mostafa has been confined at the Metropolitan Correctional Center (hereinafter "MCC"), pursuant to Special Administrative Measures (hereinafter "S.A.M.'s") that effectively eliminate his contact with the outside world (other than conversations with his family – which are monitored – and his attorneys) since October, 2012. There have not been any security issues at MCC with respect to Mr. Mostafa.

Also, as detailed **post**, at 11, 14, an anonymous jury is far from standard in terrorism prosecutions. There has not been any consistency or standard protocols with respect to the use of anonymous juries in cases involving allegations of terrorism, or in which *al Qaeda* (or any other Foreign Terrorist Organization) has been either the recipient of the alleged material

4

support, or included in the government's evidentiary presentation.

There has not been a reported instance of violence, threats, or intimidation – or attempts to do so – against jurors in any case in the U.S. involving allegations of terrorism.

**ARGUMENT**

**THE GOVERNMENT HAS FAILED ENTIRELY
TO SATISFY THE STRINGENT STANDARDS
FOR EMPANELING AN ANONYMOUS JURY**

As noted **ante**, the Second Circuit has repeatedly cautioned that empaneling an anonymous jury is an unusual and drastic measure that is justified only when the government establishes that it is "genuinely called for." *Vario*, 943 F.2d at 239);  *United States v. Thai*, 29 F.3d at 801.[2]  Departing from the traditional methods of jury selection requires, according to the Second Circuit, that the government establish a "strong reason to believe the jury needs protection." *Thomas*, 757 F.2d at 1365.  Here, as discussed below, the government has not met that considerable burden.

A.      *The Standard for Determining Whether an Anonymous Jury Is Necessary*

The importance of the interests that are burdened by anonymous requires that it be "a measure that should be taken only with care." *United States v. Bellomo*, 954 F. Supp. 630, 654 (S.D.N.Y. 1997) (granting application because government presented "substantial evidence that suggests a threat to the judicial process in this case" [*id*., at 655]).[3]

---

[2]  In *Thai*, at least two of the defendants had threatened and ultimately killed a civilian witness in an effort to thwart prosecution of a robbery case against other members of the defendants' violent urban street gang.  29 F.3d at 801.

[3]  In *Bellomo*, the "substantial evidence" of the defendants' obstruction of justice included violent intimidation of witnesses and suspected cooperating witnesses.  954 F. Supp. at 654-56.

5

In *Thomas*, the Second Circuit considered the impact of an anonymous jury on the presumption of innocence to which the defendant is entitled throughout the trial:

> [t]he elementary principle that a shield of innocence surrounds a defendant on trial reached back in history at least to early Roman law.  *See Coffin v. United States*, 156 U.S. 432, 453-54 [] (1895).  Recognition of this principle and its enforcement are part of the foundation of our system of criminal justice.  A particular practice – here the impaneling of an anonymous jury – and its impact on the presumption of innocence must therefore receive close judicial scrutiny and be evaluated in the light of reason, principle and common sense.

757 F.2d at 1363, *citing Estelle v. Williams*, 425 U.S. 501, 504 (1976).[4]

In *United States v. Ross*, 33 F.3d 1507 (11th Cir. 1994), the Court summarized the risks of an anonymous jury as follows:

> [u]nquestionably, the empanelment of an anonymous jury is a drastic measure, one which should be undertaken only in limited and carefully delineated circumstances.  An anonymous jury raises the specter that the defendant is a dangerous person from whom the jurors must be protected, thereby implicating the defendant's constitutional right to a presumption of innocence.

*Ross*, 33 F.3d at 1519; *see also*, *Commonwealth v. Angiulo*, 615 N.E.2d 155, 172 (Mass. 1993) ("empanelment of an anonymous jury triggers due process scrutiny because the practice is likely to taint the jurors' opinion of the defendant, thereby burdening the presumption of innocence").

Underlying the need for a strong showing of the necessity for an anonymous jury before surmounting the extraordinary judicial hesitancy to proceed in that fashion is the burden that

---

[4]  In *Thomas*, 757 F.2d at 1362-64, an organized crime case, the defendant was charged with a conspiracy to murder a government witness, and the Indictment "accused defendants of attempts to interfere with the judicial process by murdering government witnesses."  *Id.*  In fact, affidavits asserted that counsel for the defendants' drug ring had agreed to pay $1M for the murder of government witness, Nicky Barnes, and that the defendant had bribed a juror at a prior trial resulting in a hung jury.  *Id.*

practice imposes on two important interests:  the presumption of innocence and the defendant's

interest in conducting a meaningful *voir dire*.

>    As the Second Circuit explained in *United States v. Amuso*, 21 F.3d 1251 (2d Cir. 1994),

in considering a motion for an anonymous jury, a court

> must balance the defendant's interest in conducting a meaningful
> *voir dire* and in maintaining the presumption of innocence against
> the jury's interest in remaining free from real or threatened
> violence and the public interest in having the jury render a fair and
> impartial verdict.

*Id.*, at 1264.[5]

>    Courts do not even reach the balancing test, however, without a credible and convincing

predicate demonstration that there exists, in fact, "strong reason to believe the jury needs

protection . . . ." defined as a finding that there is "a serious threat to jury safety . . . ."  *Thomas,

supra*, 757 F.2d at 1364-65, *quoted with approval* in *Amuso*, 21 F.3d at 1264;  *see also Wong*, 40

F.3d at 1376 ("[e]mpaneling an anonymous jury undoubtedly has serious implications for a

defendant's interest in effectively conducting *voir dire* and in maintaining the presumption of

innocence").[6]

>    In determining whether the government has met its burden, the courts have identified

------

>    [5]  In *Amuso*, "[t]he crimes charged . . . showed that Amuso was willing to interfere with
the judicial process by murdering government witnesses and, as head of the Luchese crime
family, it was certainly reasonable to expect that Amuso had the means to interfere with jurors if
he so desired."  21 F.3d at 1264-65.

>    [6]  In *Wong*, 40 F.3d at 1376-77, the Second Circuit held that "[t]he record in this case
amply supports the district court's conclusion that the jury needed protection," stating that "the
government's pretrial proffer on this issue, borne out by evidence at trial, indicated that the
[defendant's gang] had an extensive history of interfering with the judicial process," including
the murder of prior witnesses and attempts to kill future witnesses.

three factors to consider:

    (1)    the nature and seriousness of the charges, and the particular defendant;

    (2)    any attempts or allegations against the defendant pertaining to a corruption of the judicial process;  and

    (3)    the potential impact of publicity relating to the trial.

*See United States v. Tomero*, 486 F. Supp. 320, 322 (S.D.N.Y. 2007).

Here, all three factors overwhelmingly favor a conventional jury, and not an anonymous jury.

**B.**    ***The Government Has Not Met the Daunting Standard for an Anonymous Jury***

The government has failed to clear the considerable hurdles it must leap to justify an anonymous jury.  Empaneling an anonymous jury in this case would unfairly burden the presumption of innocence and should be rejected in favor of less extreme measures to protect juror privacy.  An anonymous jury would poison the atmosphere of the case and serve to bolster the government's case by creating the impression that the defendant is dangerous and guilty, and that the jurors themselves are likely targets.

Particularly in a case such as this, in which the Government has charged offenses involving violence, juror anonymity sends the distinct message to each juror that he or she needs to be protected from the defendant.  It is inevitable that members of the jury could rationally infer from that procedure that the defendant is both dangerous and guilty.  As a result, empaneling an anonymous jury would deny Mr. Mostafa the fair trial guaranteed by the United States Constitution.

1.      ***The Government Has Not Presented a Single Allegation
Regarding Juror Security With Respect to Mr. Mostafa or This Case***

In assessing whether a jury truly "needs protection," and that, therefore, an anonymous

jury is "genuinely called for," the Second Circuit has emphasized that, "[a]n obstruction of

justice charge, particularly one involving jury-tampering, has always been a crucial factor in our

decisions regarding anonymous juries." *Vario*, 943 F.2d at 240; *see also United States v.

Tutino*, 883 F.2d 1125, 1132-33 (2d Cir. 1989).[7]

Of course, no such allegation is present in this case, either in the charges themselves, the

evidence, the pretrial proceedings, or the substantial history of litigation in which Mr. Mostafa

was involved in the U.K., with respect to both his criminal prosecution there and the protracted

extradition proceedings.[8]

Indeed, the government has not proffered a single case-specific, defendant-specific

allegation with respect to juror security.  It has not pointed to any prior conduct by Mr. Mostafa,

or anyone on his behalf.  It has not pointed to any statements by *anyone anywhere*, via any

medium, with respect to this case that would implicate juror security.  Rather, it relies on

generalized allegations about *al Qaeda* (which arguments are addressed **post**, at 11).

---

[7]  In *Vario*, an organized crime case in the Eastern District of New York, a co-conspirator had engaged in jury tampering as a method of further the racketeering conspiracy.  943 F.2d at 239.  Similarly, in *Tutino*, an organized crime case, the defendant had attempted to tamper with a jury in a prior trial.  883 F.2d at 1132-33.

[8]  In addition, the principal cooperating witness in this case, James Ujaama, who testified at Mr. Kassir's trial in 2009, has since his subsequent release from prison been living openly under his own name without any threat or harassment.  The same is true for Saajid Badat, another cooperating witness in the U.K., who has also testified previously.  Thus, Mr. Mostafa has not interfered with any aspect of the judicial process, or attempted to do so.

*See* Government's Memo of Law, at 7-8.[9]

Nor, as manifested by the record of the past decade, including Mr. Mostafa's prior trial and conviction, as well as his decade in confinement, could the government present any such allegation in this case about Mr. Mostafa.  Indeed, Mr. Mostafa's co-defendant, Mr. Kassir, was tried in this District without an anonymous jury, and without incident – even though Mr. Kassir's offense conduct included weapons and military training *of others in the U.S.*

In remarkable double-speak, the government first attempts to cite Mr. Kassir's conduct as a basis for an anonymous jury at Mr. Mostafa's trial while, in a footnote, advancing an entirely *post hoc* rationale for distinguishing between the two trials.  *Id.*, at 6 & n.3.  Yet that excuse is wholly unavailing,  unconvincing, contrived, and without a single factual allegation in support. As a result, the attempt at drawing a distinction between Mr. Kassir's trial and Mr. Mostafa's is completely without merit.

Thus, this case stands in stark and dispositive factual contrast to those in which courts have empaneled an anonymous jury (listed and discussed variously in this Memo at 5 - 7, 12 - 13 & ns. 2, 3, 4, 5 & 6).

### 2.     *The Mere Invocation of* **al Qaeda** *Is Not Sufficient to Justify an Anonymous Jury In This Case*

As the Second Circuit cautioned in *Vario*, "[t]he invocation of words such as 'organized crime,' 'mob,' and 'the Mafia,' unless there is something more, does not warrant an anonymous jury."  *Vario*, 943 F.2d at 241.  As the Court in *Vario* elaborated,

---

[9]  Nor has the government cited even a single instance of attempted juror interference by *al Qaeda* in a U.S. prosecution.  That is in contrast to the myriad examples in Mafia and street gang cases, perhaps reflecting a manifest difference in *modus operandi* with respect to trials.

> [b]efore a district judge may rely on the organized crime
> connection of a defendant as a factor in the question of anonymous
> juries, he must make a determination that the connection has some
> direct relevance to the question of juror fears or safety in the trial
> at hand beyond the innuendo that this connection conjures up.

*Id*.

That same standard applies here with respect to the government's omnibus invocation of *al Qaeda*. Not only is this case *not* about *al Qaeda*, and not only is Mr. Mostafa *not* a member of *al Qaeda* (or alleged to be), but the only specific violence charged – the kidnapping in Yemen – was not connected to *al Qaeda*. Also, any violence alleged in this case occurred nearly 15 years ago and a half a world away. Thus, the government's resort to a generalized discourse about *al Qaeda* barely rises even to innuendo as concerns Mr. Mostafa.

In addition, there are multiple examples of cases with far closer and more direct connections to *al Qaeda* (or other violent terrorist organizations) in which anonymous juries were *not* employed. For example, in

- *United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.), the defendant, a U.S. citizen recruited *in the U.S.*, swore *bayat* to *al Qaeda*;

- *United States v. Paracha*, 03 Cr. 1197 (SHS) (S.D.N.Y.), the defendant was alleged to have assisted *al Qaeda* operatives – including Khalid Sheikh Mohamed, an architect of the 9/11 plot and senior *al Qaeda* operative – as part of a plot to sneak *al Qaeda* personnel into the U.S. for purposes of a plot to detonate explosives at gas stations; and

- *United States v. Ressam*, 99 Cr. 666 (JCC) (W.D. Wash.), the defendant was alleged to have been the principal protagonist in *al Qaeda*'s plot to detonate explosives at Los Angeles International Airport in conjunction with the

11

millennium.

### 3. *The Offenses Alleged In This Case Are Insufficient to Justify An Anonymous Jury*

Nor are the allegations in this case sufficient to warrant an anonymous jury. Mr. Mostafa has never been previously charged, much less convicted, of any violence, and to find him a threat to jurors would surely put the cart before the horse in this case. Again, even those allegations are quite remote in time and place.

Moreover, charges of violence by themselves cannot suffice; otherwise, an entire category of cases – those charging violence – that are *not* tried before anonymous juries, but which perhaps have more likelihood for juror security measures, would be encompassed within those for which an anonymous jury would be appropriate.

Indeed, this District's docket is replete with violent local gang cases, many involving homicides and other serious violence, that do not resort to anonymous juries – even though the defendants are local, have local contacts, and have operated illegally and violently through organizations that still exist in the communities they terrorized.[10]

Those cases in which an anonymous jury has been utilized are rare and special in terms of their threat to the administration of justice, *see* **ante**, at 5-7, in tandem with their specific and local violent conduct. For example, in *United States v. Aulicino*, 44 F.3d 1102, 1116 (2d Cir. 1995), an organized crime case, the government supported its request for an anonymous jury with "a variety of proffers," including evidence regarding a financial incentive and violent threat geared toward preventing a potential witness from testifying adversely to the defendants, and

---

[10] Counsel for Mr. Mostafa have been and continue to be involved in such cases, the majority of which have not involved even a request for an anonymous jury.

prior attempts to influence a witness.

Similarly, *United States v. Paccione*, 949 F.2d 1183, 1192-93 (2d Cir. 1991), affirmations submitted to the Court set forth concerns that the defendants "might seek to influence the outcome of the prosecution by improper means" based on organized crime ties, threats, and an anonymous call to a government witness instructing the witness that he would be safe as long as he "remembered nothing." *See also United States v. Rahman*, 93 Cr. 181 (MBM) (terrorism case in which defendant was charged not only with conspiracy to wage war on the U.S., bombing and firearms related offenses, but also with charges in connection with an attempted murder of a federal officer and assault on a federal officer); *United States v. Stewart*, 590 F.3d 93, 125 (2d Cir. 2009) (in terrorism case, the "charges against [defendants] were in significant part about their alleged corruption of the judicial process").

Also as instructive are the cases in which there are reported decisions in which courts have *denied* government requests for an anonymous jury. *See United States v. Millan-Colon*, 834 F.Supp. 78 (S.D.N.Y. 1993) (denying application for anonymous jury); *United States v. Melendez*, 743 F.Supp. 134, 135 (E.D.N.Y. 1990) (denying government the "drastic remedy of an anonymous jury"); *United States v. Coonan*, 664 F.Supp. 861, 862 (S.D.N.Y. 1987) (denying request for anonymous jury in the absence of evidence that the defendants – notwithstanding the fact they were charged with "predicate acts including murder, attempted murder, kidnapping, loansharking, extortion, and narcotics trafficking as part of a racketeering enterprise known as the Westies" – were likely to interfere with the judicial process).

Indeed, *Coonan* is most illustrative.  The Westies terrorized an entire swath of Manhattan's West Side for years, yet the racketeering prosecution of its members in this District

was deemed not to merit an anonymous jury.  *See* English, T.J., *The Westies:  Inside New York's Irish Mob* (St. Martin's Paperbacks:  1991).[11]

Conversely, there are no reported instances of threats, intimidation, or violence of jurors in terrorism trials in the U.S.  There have been many such trials, including the following in the Southern District of New York and other districts (as well as those listed **ante**, at 11-12):

- *United States v. Cromitie*, 09 Cr. 558 (CM) (S.D.N.Y.), alleging a  plot to shoot down airplanes and bomb synagogues in the New York area;

- *United States v. Siddiqui*, 08 Cr. 826 (RMB) (S.D.N.Y.), alleging the attempted murder of United States soldiers in Afghanistan;

- *United States v. Sabir*, 05 Cr. 673 (LAP) (S.D.N.Y.), alleging offering medical

---

[11]  The Publishers Weekly review of *The Westies* posted on amazon.com reads as follows:

> Hell's Kitchen, a section of Manhattan west of Eighth Avenue between 34th and 59th Streets infamous for poverty and gang-related crime which dates back to the 19th century, was taken over in the late 1960s by the "Westies" mob.  The name – used by the press and the police, not by the mobsters themselves – designated a group of ruthless and vicious hoodlums, led by Jimmy Coonan and Francis (Mickey) Featherstone, who cut up the bodies of victims to dispose of them more readily.  Once in power, Coonan caused considerable grumbling in the mostly Irish gang when he allied his men with the Gambino crime family.  Next, Coonan arranged to have rival Featherstone charged with a murder; found guilty, he became a witness against the Westies, joined by other gang turncoats.  In early 1988 Coonan and several of his henchmen were convicted of assorted crimes and imprisoned. English, who covered the trial for the Irish Voice, ably traces the Westies' rise and fall.

Available at
<http://www.amazon.com/gp/product/0312924291?ie=UTF8&tag=httpwwwgoodco-20&linkCode=as2&camp=1789&creative=9325&creativeASIN=0312924291&SubscriptionId=1MGPYB6YW3HWK55XCGG2>.

assistance to injured *al Qaeda* fighters in Iraq;

- *United States v. Siraj*, 05 Cr. 104 (NG) (E.D.N.Y.), alleging an attempted bombing of the Herald Square subway station.

- *United States v. Aref*, 2004 Cr. 402 (TJM) (N.D.N.Y.), alleging a conspiracy to provide  missiles for an attack aimed at a Pakistani diplomat;

- *United States v. Mehanna*, 09 Cr. 17 (GAO) (D. Mass.), alleging material support for terrorism and conspiring to kill in a foreign country (including training at an overseas terrorism camp);

- *United States v. Aldawsari*, 11 Cr. 15 (SRC) (N.D.Texas), alleging gathering materials to construct bombs;  and

- *United States v. Mohamud*, 10 Cr. 475 (GMK) (D.Ore.), alleging a plan to bomb a parade in Portland, Oregon.

- *United States v. Holy Land Foundation*, 04 Cr. 240 (N.D. Tex.), alleging material support in the form of millions of dollars in aid to organizations allegedly affiliated with *Hamas*.  That case was tried twice (with the first trial resulting in acquittals and a deadlocked jury);

- *United States v. Al-Hussayen*, 03 Cr. 48 (EJL) (D. Idaho), alleging material support to *Hamas* and terrorists in Chechnya via fundraising and recruitment;

- *United States v. Moalin*, 10 Cr. 4246 (JTM) (S.D. Cal.), alleging material support to *al Shabaab* in the form of money transferred to Somalia;

- *United States v. Abu Ali*, 05 Cr. 53 (E.D. Va.), alleging participation in a Saudi *al Qaeda* affiliate's plots against the U.S., including presidential assassination and

15

attacking nuclear power plants.

Thus, the offenses charged herein do not justify an anonymous jury.

**4.** ***Publicity Related to This Case Is Insufficient to Justify An Anonymous Jury***

High profile, both civil and criminal, abound in the Southern District of New York.  Yet the overwhelming majority do not involve even requests for anonymous juries.  The recent prosecutions of Matthew Martoma and Michael Steinberg, former traders at SAC Capital, for insider trading probably generated more articles, reports, and blog posts *per day* than this case has since Mr. Mostafa was extradited.

No doubt many jurors are aware of the distinction.  They know Martha Stewart did not have an anonymous jury.  Nor did Raj Rajaratnam, or Rajat Gupta.  They know anonymous juries are reserved for those cases – regardless of the media attention they generate – in which the defendant presents a danger to *them* as jurors.

**5.** ***Transparently Unbelievable Instructions to Jury Will Not Alleviate the Prejudice to Mr. Mostafa, But Will Simply Aggravate It***

In that context, transparently unbelievable (and inaccurate) instructions such as those proposed by the government merely reinforce the notion that the defendant is dangerous and his guilt is known (but hidden from the jury through the patently incredible instructions) and that the result should be a foregone conclusion.

Also, here, that train has already left the station, as the government filed its motion publicly.  Any member of the media or public could gain access to it through PACER.  Moreover, the government has the audacity to claim that a searching *voir dire* will not be impaired by juror anonymity, while at the same time proposing a juror questionnaire that, excluding typical hardship questions, includes all of six questions and two pages.

16

In addition, the instructions, and their obvious attempt to shield the jury from the genuine reason for the request for an anonymous jury, place a court's imprimatur on the charade, thereby aggravating the prejudice to Mr. Mostafa.

The effect on Mr. Mostafa's right to an effective *voir dire* process, and a fair trial, is as transparent as any attempted instruction that tries to fool a jury into believing that its anonymity is premised on publicity, and not the government's contention – and a court's at least tacit agreement, instructions notwithstanding – that the defendant in a terrorism case is dangerous.

**6.** ***Far Less Extreme Measures Can Be Adopted to Protect the Privacy of Juror Information Without Prejudicing Mr. Mostafa's Right to a Fair Trial***

As noted **ante**, far less extreme measures can be implemented to protect private juror information.  In addition to a "key" to preserve the confidentiality of answers in the juror questionnaire, *voir dire* can accommodate juror privacy interests through sidebars (or chambers conferences) with individual jurors regarding delicate matters, and through sealing such portions of the record for an indeterminate period.

These procedures can accomplish juror privacy protection without abandoning the traditional jury selection process, and denying Mr. Mostafa the right to an impartial jury and a fair trial.

**Conclusion**

Accordingly, for all the reasons set forth above, it is respectfully submitted that the

government's motion should be denied.

Dated: 21 February 2014
      New York, New York

                                   Respectfully submitted,

                                   /S/ Joshua L. Dratel
                                  Joshua L. Dratel
                                  Joshua L. Dratel, P.C.
                                  29 Broadway
                                  Suite 1412
                                  New York, New York 10006
                                  (212) 732-0707

                                  Jeremy Schneider
                                  Rothman, Schneider, Soloway & Stern, LLP
                                  100 Lafayette Street
                                  Suite 501
                                  New York, New York 10013
                                  212-571-5500

                                  *Attorneys for Defendant*
                                  *Mostafa Kamel Mostafa*

– Of Counsel –

Joshua L. Dratel
Jeremy Schneider
Lindsay A. Lewis
Lucas Anderson