```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: APR 2 2 2014
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
:
UNITED STATES OF AMERICA          :
:
-v-                               :          04 Cr. 356 (KBF)
:
MOSTAFA KAMEL MOSTAFA             :          MEMORANDUM
a/k/a "Abu Hamza al-Masri,"       :          DECISION & ORDER
:
Defendant.            :
:
------------------------------------------------------------- X

KATHERINE B. FORREST, District Judge:

On April 15, 2014, the Court resolved numerous objections to proposed exhibits that the Government intended to offer at trial. (ECF No. 307.) Before the Court are four additional objections to government exhibits 132, 133, 219, and 228 on the basis that the evidence is irrelevant under Rule 401, prejudicial under Rule 403, or improper character evidence under Rule 404.

The Court assumes familiarity with the prior proceedings and factual background of this matter as set forth in the Indictment and prior opinions of the Court. (ECF Nos. 1, 199, 216, 305.) The Court also incorporates by reference its discussion of the applicable legal principles in its prior opinion. (ECF No. 307 at 2–16.)

GX 132: In this undated video, defendant states that, while it is "haram" (forbidden) to kill a person whose blood is preserved, "Killing a kaffir [non-Muslim], who's fighting you is okay. Killing a kaffir for any reason, you can say it's okay even if there's no reason for it." Like the statements that the Court previously admitted

regarding defendant's attitude toward kaffirs as deserving targets, this statement is relevant to defendant's motive and intent regarding violent jihad as well as conspiring to provide support and providing support to terrorists and terrorist organizations. It is therefore direct evidence or relevant "other act" evidence of the charged crimes. See United States v. Farhane, 634 F.3d 127, 144 (2d Cir. 2011); United States v. Rahman, 189 F.3d 88, 117–18 (2d Cir. 1999). Furthermore, Rule 403 does not suggest preclusion.

While the statement is no doubt prejudicial, it is no more prejudicial than the conduct with which defendant is charged. See United States v. Curley, 639 F.3d 50, 59 (2d Cir. 2011); United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990). This statement is admissible for substantially the same reasons as GXs 104 (regarding selling a Kafir in the market or killing a Kafir), 107 (discussing "these dirty Jews, Christians"), 126 (describing three stages of jihad and defeating Kafirs), and 130 (justifying taking money from Kaffirs, capturing or enslaving them, and selling them in the market).

GX 133: In this undated video, defendant states, "The only answer for it, when the people make peace treaty, is to go into these Serbs' land with your weapon in full. . . . If the Bosnians tell you, the war is finished go out, then may Allah reward you [sic] good deed; this is not your land." Defendant lists four "reasons for fighting," including "humiliat[ing] the kaffirs" (infidels). Defendant further describes people who "fight, so they kill, they fight in the cause of Allah the Glorified and Almighty, so you must, you must know the cause of Allah, and you

must help that cause in fighting." Defendant then states that "what is needed now, is people to, to, to, to grow up in the mountains." Finally, defendant states, "Become a nation of the Koran and the sword."

Like the other statements regarding kaffirs and fighting, this statement is direct evidence or relevant "other act" evidence of the charged crimes of providing support to terrorists and terrorist organizations through creating a jihad training camp in Bly, Oregon and facilitating violent jihad in Afghanistan. See Farhane, 634 F.3d at 144; Rahman, 189 F.3d at 117–18. This statement is admissible for substantially the same reasons as GXs 102 (stating that Allah requires fighting, that fighting is obligatory, and that jihad training is an obligation to prepare for fighting), 104, 105 (stating that military and jihad training are for Muslims to defend themselves and their principles), 106 (discussing jihad training), 107 (same), 109 (preaching jihad as an obligation), 110, 111 (urging listeners to "train your children" and to fight), 112 (discussing war and fighting), 122 (discussing fighting and training), and 126 (describing three stages of jihad).

GX 219: This is an audio recording of an October 22, 2000 meeting at the Finsbury Park Mosque between Mary Quin, an alleged victim of the hostage-taking conspiracy charged in counts one and two of the Indictment, and defendant. In the recording, Quin and defendant discuss the hostage-taking occurrence at length. Quin asks defendant, "Do you think, given the situation, Abu Hassan was in, um, do you think that the decision to kidnap some foreigners was a good thing to do, um, under those circumstances that he was facing?" Defendant responds, "Islamically it

3

is a good thing. What basically because we been giving warnings 'Don't come, don't come.'" Defendant also states, "We're going to war with these people," referring to tourists who are "not welcome" in Yemen. Later during the recording, the following exchange occurs:

| | |
|---|---|
| Quin: | Now how does Abu Hassan come to have that satellite telephone, because presumably the government would restrict their access to that technology? |
| Mustafa: | It came from outside. |
| Quin: | From you? |
| Mustafa: | Yeah, perhaps. |

Later in the recording, defendant states that the bombing of the U.S.S. Cole in Yemen was "a good message. I think it's a good thing. I think it's something for Muslims to, to, to rejoice. Not only um, because of the operation, but also that the desire to fight any force is there." Defendant also praises the Yemenis as fighters of Americans.

GX 219 is directly relevant to defendant's knowledge, motive, intent, lack of mistake, and state of mind with regard to the first two counts of the Indictment, which charge a conspiracy to take hostages in Yemen and participation in the hostage taking itself. Because it discusses fighting and terrorist attacks more generally, the recording is also probative of defendant's knowledge, motive, intent, lack of mistake, and state of mind related to violent jihad as well as conspiring to provide support and providing support to terrorists and terrorist organizations. See Farhane, 634 F.3d at 144; Rahman, 189 F.3d at 117–18. The statement is no more prejudicial than the conduct with which defendant is charged. See Curley, 639 F.3d at 59; Abu-Jihaad, 630 F.3d at 133; Roldan-Zapata, 916 F.2d at 804.

GX 228: In this undated video interview of defendant, defendant states that he received a phone call from the head of the team responsible for the kidnapping in Yemen, Sheikh Abu Hassan al Midhar, "explaining and expressing his worries about the end of the mission. And, uh, it basically say [sic] if anything happened to us which he was expecting, that please let people know." Defendant discusses his role as head of an organization called Supporters of Sharia. The interviewer and defendant discuss the kidnapping as well as a group of arrested British passport holders suspected of having bomb-making material; defendant acknowledges that two of the passport holders under arrest in Yemen were his sons. He also states that he does not object to his sons blowing up British installations "if they believe in it. If they know that they do it for the sake of [G]od for anything and they believe that this will stop state terrorism of Britain and America, then it's a try."

Like the prior recording, GX 228 is directly relevant to defendant's knowledge, motive, intent, lack of mistake, and state of mind with regard to the first two counts of the Indictment. Given the broader discussion of violence, the recording is also probative of defendant's knowledge, motive, and intent related to violent jihad as well as conspiring to provide support and providing support to terrorists and terrorist organizations. See Farhane, 634 F.3d at 144; Rahman, 189 F.3d at 117–18. The statement is no more prejudicial than the conduct with which defendant is charged. See Curley, 639 F.3d at 59; Abu-Jihaad, 630 F.3d at 133; Roldan-Zapata, 916 F.2d at 804.

5

For these reasons, GXs 132, 133, 219, and 228 are all admissible over defendant's objections.

SO ORDERED.

Dated:    New York, New York
April 22, 2014

_____
KATHERINE B. FORREST
United States District Judge