| USDC SDNY |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #: _____ |
| DATE FILED: APR 2 3 2014 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X

UNITED STATES OF AMERICA

-v-

MOSTAFA KAMEL MOSTAFA
   a/k/a "Abu Hamza al-Masri,"

            Defendant.

------------------------------------------------------------------ X

04 Cr. 356 (KBF)

MEMORANDUM
DECISION & ORDER

KATHERINE B. FORREST, District Judge:

Before the Court is defendant's motion to limit the testimony of proposed prosecution expert Evan Kohlmann. (ECF No. 295.)[1] Defendant argues that Kohlmann's projected testimony, to the extent that it mirrors his expert report, would inject irrelevant and substantially prejudicial testimony into this trial. Defendant also argues that Kohlmann's testimony is partially based on hearsay, namely custodial interrogation or other similar testimonial statements. For the reasons set forth below, defendant's motion is DENIED.

I.    APPLICABLE LEGAL PRINCIPLES

"[E]xpert testimony may help a jury understand unfamiliar terms and concepts." United States v. Bilzerian, 926 F.2d 1285, 1294 (2d Cir. 1991). However, a trial court is obligated to act as a gatekeeper with respect to expert testimony. Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993); see also Major

---

[1] Defendant also moved to preclude the testimony of two other Government experts, Daniel M. Hickey and Madeleine A. Montgomery. The Government no longer intends to call Hickey or Montgomery. (Opp. to Def.'s Mot. to Limit Expert Testimony 2 n.2, ECF No. 314.) Defendant's motion is therefore moot with respect to those proposed experts.

League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 311 (2d Cir. 2008). "The primary locus of [that] obligation is [Federal Rule of Evidence] 702, which clearly contemplates some degree of regulation of the subjects and theories about which an expert may testify." Daubert, 509 U.S. at 589. Rule 702 provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

All experts must meet the basic requirements of Rule 702 of the Federal Rules of Evidence. This Court considers (1) whether the proposed expert is qualified; (2) whether the expert bases his opinion upon reliable data and methodology; and (3) whether the proposed testimony will assist the trier of fact. See, e.g., Nimely v. City of New York, 414 F.3d 381, 396–97 (2d Cir. 2005).

A. Qualifications

Inquiry into a proposed expert's qualifications is a threshold question regarding whether the proposed expert is, in fact, an expert at all in the area in which he or she intends to testify. See Daubert, 509 U.S. at 592 n.10. Whether a proposed expert is qualified depends on his or her knowledge, education, experience, or skill related to the subject matter of the proffered testimony. See United States v. Tin Yat Chin, 371 F.3d 31, 40 (2d Cir. 2004).

In the Second Circuit, courts have construed the inquiry into an expert's qualifications with an eye toward the "liberal thrust" of the Federal Rules and their general relaxation of traditional barriers to opinion testimony. See Daubert, 509 U.S. at 588–89; In re Rezulin Prods. Liab. Litig., 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) ("The Second Circuit has taken a liberal view of the qualification requirements of Rule 702, at least to the extent that a lack of formal training does not necessarily disqualify an expert from testifying if he or she has the equivalent relevant practical experience.").

B. Reliability

The reliability of a proposed expert's testimony "entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue." Daubert, 509 U.S. at 592–93. Among the relevant questions are whether the expert's theory is testable, whether it has been subjected to peer review, whether it has a potential rate of error, and whether it is "generally accepted." Id. at 593–94.

C. Helpfulness to the Trier of Fact

Expert testimony must help, but not usurp the province of, the trier of fact. Bilzerian, 926 F.2d at 1294; see also United States v. DiDomenico, 985 F.2d 1159, 1163 (2d Cir. 1993) ("A district court may admit the testimony of a qualified expert if his knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.") (internal quotation marks omitted). "In determining

3

whether such evidence will assist the jury, the district court must make a common sense inquiry into whether the untrained layman would be qualified to determine intelligently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." United States v. Locascio, 6 F.3d 924, 936 (2d Cir. 1993) (internal quotation marks omitted).

Expert testimony may not usurp the province of the judge to instruct the jury on the law or the role of the jury to make factual determinations. See Bilzerian, 926 F.2d at 1294. It is also inappropriate for experts to become a vehicle for factual narrative. See Rezulin, 309 F. Supp. 2d at 541.

D. Rule 403

Expert testimony, like all testimony, is subject to the requirements of Rule 403. Rule 403 provides for the exclusion of otherwise relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Additionally, "Rule 703 provides that expert opinions based on otherwise inadmissible hearsay are to be admitted only if the facts or data are of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Daubert, 509 U.S. at 595 (internal quotation marks omitted).

4

II. ANALYSIS

Defendant argues that Kohlmann's testimony should be limited for three reasons: evidence regarding al Qaeda's structure, operatives, and training camps and terrorist attacks committed under its authority is irrelevant to the charges in this case; such evidence is unduly prejudicial to defendant and will confuse the issues and mislead the jury; and Kohlmann's testimony is based on hearsay in the form of testimonial statements that would violate defendant's Sixth Amendment rights. (Mem. of L. in Supp. of Def.'s Mot. to Preclude ("Def.'s Mot.") 1, 10–19, ECF No. 295.)

The Indictment charges defendant with, inter alia, conspiracy to take hostages, hostage taking, conspiracy to provide and conceal material support and resources to terrorists (referring to the Bly, Oregon jihad training camp as an overt act); providing and concealing material support to terrorists (the Bly, Oregon jihad training camp); conspiracy to provide material support and resources to a foreign terrorist organization (the Bly, Oregon jihad training camp); providing material support and resources to a foreign terrorist organization (the Bly, Oregon jihad training camp); conspiracy to provide and conceal material support and resources to terrorists (referring to facilitating violent jihad in Afghanistan as an overt act); providing and concealing material support to terrorists (facilitating violent jihad in Afghanistan); conspiracy to provide material support and resources to a foreign terrorist organization (facilitating violent jihad in Afghanistan); providing material support and resources to a foreign terrorist organization (facilitating violent jihad in

5

Afghanistan); and conspiracy to provide goods and services to the Taliban in violation of the International Emergency Economic Powers Act. (ECF No. 1.)

To satisfy its burden of proof with respect to the conspiracy charges in counts three, five, seven, nine, and eleven of the Indictment, the Government must prove (1) the existence of an unlawful agreement, (2) that defendant knowingly and willfully joined the conspiracy, and (3) that someone within the conspiracy took an overt act to advance the goals of the conspiracy. With respect to the material support charges in counts four and eight, the Government must prove that (1) a statutorily prohibited activity existed or was prepared for, (2) defendant provided material support or resources to the conspiracy, and (3) defendant knew or intended that his material support or resources were to be used in preparation for or in carrying out the conspiracy. With respect to the material support charges in counts six and ten, the Government must prove that (1) defendant provided material support or resources, (2) he provided support or resources to an officially designated foreign terrorist organization, (3) he acted knowingly, and (4) a jurisdictional element is satisfied.

The Government intends to call Kohlmann to provide expert testimony about four areas: (1) al Qaeda's history and structure during the period leading up to and covered by the Indictment, including key leaders, members, and supporters; (2) al Qaeda's methods for training its new recruits through the use of jihad training camps; (3) specific terrorist attacks and plots perpetrated by al Qaeda; and (4) al Qaeda's use of recordings and speeches to recruit willing participants or to

6

otherwise engage in jihad by carrying out attacks against the United States. (Opp. to Def.'s Mot. to Limit Expert Testimony ("Gov't's Opp.") 1–2, ECF No. 314.) Kohlmann's expert report includes discussion of the Aden-Abyan Islamic Army that is partially based on statements that Abu al-Hassan al-Mihdar made during his 1999 criminal trial in Yemen. (Dratel Decl. Ex. 1 (Kohlmann Expert Rep.) 18–19, ECF No. 294-1.)

A. Relevance

Defendant argues that evidence about al Qaeda is irrelevant to this case and to the charges against him. (Def.'s Mot. 10–11.) The Court disagrees.

The history, structure, and leadership of al Qaeda are highly relevant to the crimes charged, and Kohlmann's testimony in this regard will be helpful to the jury. Defendant is charged with providing support to terrorists and a terrorist organization, al Qaeda. Testimony regarding the structure and leadership of that organization is probative and helpful in determining whether defendant in fact supported the organization. See United States v. Kassir, No. S2 04 Cr. 356 (JFK), 2009 WL 910767, at *7 (S.D.N.Y. Apr. 2, 2009) ("Kohlmann's testimony about the origins, history, structure, leadership, and operational methods of al Qaeda is relevant to the jury's determination of whether Kassir provided material assistance to that terrorist organization."), aff'd, United States v. Mustafa, 406 F. App'x 526 (2d Cir. 2011); see also United States v. Abu Ghayth, No. S14 98 Crim. 1023 (LAK), 2014 WL 978629, at *1 (S.D.N.Y. Feb. 28, 2014) ("Kohlmann's proposed testimony would be relevant to understanding the nature of the conspiracy that the defendant

allegedly joined, the identity of the conspiracy's other participants, and the extent, if any, to which the defendant's words and actions constituted provision of material support or resources to terrorists.").

Testimony regarding the political or other agenda of al Qaeda, as well as the methods and means that it has used in training and recruitment, would similarly be helpful to the jury. To the extent that defendant's expressed opinions are consistent with al Qaeda's views and methods, testimony regarding those views and methods constitute circumstantial evidence probative of whether defendant would be likely to support that organization. Testimony regarding attacks and plots perpetrated by al Qaeda, including the U.S.S. Cole and September 11, 2001 attacks, is also relevant to show support for the political agenda of an organization to which he is charged with providing support—and therefore probative of the likelihood of his support for that organization. See Farhane, 634 F.3d at 159; Kassir, 2009 WL 910767, at *5 ("Although al Qaeda has become a household name, . . . many of al Qaeda's operational methods relevant to the charges in this case may not be known to the layperson. For example, Kohlmann will testify about the use and importance of jihad training camps to al Qaeda. This testimony would help the jury appreciate how a camp set up in Bly, Oregon could materially assist al Qaeda.").

The Court further notes that Kohlmann's testimony need not relate directly to all of the events charged in the Indictment to be relevant and helpful to the jury. It will be helpful for the jury to hear about the structure of al Qaeda as context for his overall testimony. Defendant is charged, inter alia, with the crimes of providing

material support or resources to terrorists, namely Osama bin Laden, and a terrorist organization, namely al Qaeda, and conspiracy to provide such support or resources. See 18 U.S.C. §§ 371, 2339A, 2339B. The Indictment charges defendant with two overt acts related to the Bly, Oregon jihad training camp. (Indict. ¶¶ 7(a), 11(a).) However, Kohlmann's testimony need not relate directly to the Bly, Oregon camp—one alleged overt act in furtherance of a more broadly defined conspiracy—to be relevant to the activity with which defendant is charged, namely providing support or resources.

B. Basis for Testimony

While defendant does not appear to challenge the reliability of Kohlmann's method, the Court notes that the Second Circuit has previously affirmed the use of his expert testimony in analogous cases. See United States v. Farhane, 634 F.3d 127, 158 (2d Cir. 2011) (affirming the district court's ruling that "Kohlmann's work had undergone various forms of peer review, that his opinions were generally accepted within the relevant community, and that his methodology was similar to that employed by experts that have been permitted to testify in other federal cases involving terrorist organizations"); see also Kassir, 2009 WL 910767, at *6–7 (finding Kohlmann's methodology to be reliable). Additionally, Kohlmann has testified as an expert in 26 U.S. criminal cases. (Gov't's Opp. Ex. A, at 2–3, ECF No. 314.)

Although defendant does not challenge the reliability of Kohlmann's method, he does argue that Kohlmann relies not on expertise but on statements that would

constitute inadmissible hearsay if introduced at trial, such as testimonial statements by informants and al Qaeda members and recruits. (Def.'s Mot. 1, 16–19.) He argues that admitting such testimony would violate defendant's Sixth Amendment rights because he would not have the opportunity to confront or cross-examine the declarants on those statements. (Id. at 16.) This argument is without merit.

The law is clear that experts may rely on hearsay in formulating their opinions "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject." Fed. R. Evid. 703; see also United States v. Daly, 842 F.3d 1380, 1387 (2d Cir. 1988). Here, the Government does not seek to introduce into evidence the statements upon which Kohlmann has relied in his expert report, but rather his expert opinion based on those statements as well as other sources. See United States v. Escobar, 462 F. App'x 58, 62 (2d Cir. 2012) (affirming the admission of expert testimony because "there is no evidence that [the expert] communicated any out-of-court testimonial statements to the jury"). Defendant is, of course, entitled to cross-examine Kohlmann as to the sources of his opinions. Defendant's argument that Kohlmann's expert opinion would nonetheless violate his confrontation rights (Dratel Ltr. 3, Apr. 20, 2014, ECF No. 322) is contrary to law.

Defendant also argues that information from Yemeni detainee al-Hasan, upon which Kohlmann relies heavily in his expert report, is inherently unreliable because of Yemen's history and reputation regarding the torture and maltreatment

of prisoners designed to obtain confessions. (Id. 2–3.) Defendant is incorrect. Kohlmann is not proposing (as far as the Court is aware) and would not be allowed to testify, "X told me the following: \_\_\_\_." That would amount to Kohlmann simply acting as a vehicle to deliver otherwise inadmissible hearsay. That contrasts with Kohlmann taking various sources of information into account, placing such information against a backdrop of a large number of sources, and forming and delivering an opinion. It may well be that interviews of people are part of that array of information; that is acceptable under the rules and case law. A general history of torture and maltreatment of prisoners in Yemen does not call into question the reliability of Kohlmann's testimony, which is itself based on valid reasoning and methodology. See Farhane, 634 F.3d at 158 (affirming the district court's ruling that "Kohlmann's work had undergone various forms of peer review, that his opinions were generally accepted within the relevant community, and that his methodology was similar to that employed by experts that have been permitted to testify in other federal cases involving terrorist organizations") (internal quotation marks omitted). Kohlmann may testify at trial.

C. Rule 403

Defendant argues that Kohlmann's testimony regarding al Qaeda must be excluded because it is unduly prejudicial under Rule 403 and will confuse the issues and mislead the jury. (Def.'s Mot. 14.) Testimony regarding terrorist attacks by al Qaeda and bin Laden is no doubt prejudicial and inflammatory to some degree. However, defendant is charged with providing and conspiring to provide material

11

support to al Qaeda; expert testimony about that very organization is highly relevant. The testimony would be no more disturbing than the crimes charged and not be unduly prejudicial, and the relevance of Kohlmann's testimony would outweigh any prejudice. See Kassir, 2009 WL 910767, at *7 (explaining that "Kohlmann's testimony about the origins, history, structure, leadership, and operational methods of al Qaeda is relevant to the jury's determination of whether Kassir provided material assistance to that terrorist organization," and that such testimony is "highly probative and will not be unfairly prejudicial"); cf. United States v. Curley, 639 F.3d 50, 59 (2d Cir. 2011); United States v. Abu-Jihaad, 630 F.3d 102, 133 (2d Cir. 2010) (finding that conversations referring to support of jihad were no more inflammatory than the charges in the indictment); United States v. Mercado, 573 F.3d 138, 142 (2d Cir. 2009) (upholding a Rule 403 determination where the challenged evidence was "not especially worse or shocking than the transactions charged"); United States v. Roldan-Zapata, 916 F.2d 795, 804 (2d Cir. 1990) (finding that prior act evidence was not unfairly prejudicial under Rule because it "did not involve conduct any more sensational or disturbing than the crimes with which [the defendant] was charged").

III. CONCLUSION

For the reasons set forth above, defendant's motion to preclude Kohlmann's expert testimony is DENIED. The Clerk of Court shall terminate the motions at ECF Nos. 293 and 322.

SO ORDERED.

Dated: New York, New York
April 23, 2014

_____
KATHERINE B. FORREST
United States District Judge