USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/12/2019

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

04 Cr. 356-1 (AT)

MUSTAFA KAMEL MUSTAFA,
    a/k/a "Abu Hamza al-Masri,"

**ORDER**

Defendant.

ANALISA TORRES, District Judge:

On May 19, 2014, after a month-long trial, a jury found Defendant, Mustafa Kamel Mustafa, guilty of eleven counts of crimes relating to terrorism. ECF No. 366. Specifically, Defendant was convicted of hostage taking, 18 U.S.C. § 1203 (Counts One and Two); providing material support for terrorism, *id.* §§ 371, 2339A (Counts Three, Four, Seven, and Eight); providing material support to a designated foreign terrorist organization, *i.e.*, al Qaeda, *id.* § 2339B(a)(1) (Counts Five, Six, Nine, and Ten); and supplying goods and services to the Taliban, *id.* § 371; 50 U.S.C. § 1705(b); 31 C.F.R. §§ 545.204, 545.206(b) (Count Eleven). ECF No. 463. Defendant now moves for a new trial pursuant to Federal Rule of Criminal Procedure 33. Def. Mot., ECF No. 549. For the reasons stated below, Defendant's motion is DENIED.

## BACKGROUND

Eleven counts were filed against Defendant in an indictment dated April 19, 2004 (the "Indictment"). ECF No. 1. These charges related to Defendant's direction of three terrorist plots. First, in late December 1998, Defendant participated in a hostage-taking in Yemen in an attempt to coerce the Yemeni government into freeing some of his followers from prison, including his stepson, which resulted in the murder of four tourists (Counts One and Two). *Id.* ¶¶ 1–4. Second, in late 1999, Defendant tasked two of his followers with the mission of

establishing a camp in Bly, Oregon (the "Bly Training Camp") to train men to fight with al Qaeda and engage in acts of murder in Afghanistan (Counts Three through Six).  *Id.* ¶¶ 5–12.  Third, from 2000 to 2001, Defendant provided support to al Qaeda and the Taliban in Afghanistan in a variety of ways, including by dispatching a follower to train and fight with al Qaeda and by sending money and other support to the Taliban (Counts Seven through Eleven).  *Id.* ¶¶ 13–25.  Trial began on April 14, 2014 and ended on May 19, 2014, when the jury returned guilty verdicts on all counts.  *See* 4/14/14 & 5/19/14 ECF Entries.

On January 9, 2015, the Honorable Katherine B. Forrest sentenced Defendant to life imprisonment on Counts One and Two; five years' imprisonment on Counts Three, Seven, and Eleven; ten years' imprisonment on Counts Four, Five, and Six; and fifteen years' imprisonment on Counts Seven, Eight, Nine, and Ten.  ECF Nos. 463, 474.  All sentences were to run concurrently.  *Id.*

Defendant then appealed to the United States Court of Appeals for the Second Circuit.  ECF No. 466.  While the matter was pending on appeal before the Second Circuit, on April 13, 2017, Judge Forrest granted Defendant's request to extend his deadline for filing a Rule 33 motion until November 19, 2018.  ECF No. 532.  On October 18, 2018, the case was reassigned to this Court, ECF No. 534, and on October 18, 2018, the Court extended that deadline again, until April 18, 2019, ECF No. 535.

On October 23, 2018, the Second Circuit affirmed Defendant's judgment of conviction on all counts except Counts Seven and Eight, which it reversed on jurisdictional grounds.  *See United States v. Mustafa*, 753 F. App'x 22 (2d Cir. Oct. 23, 2018).  The Second Circuit did not order resentencing.  *Id.*  On April 16, 2019, Defendant filed a motion for a new trial under Rule

33.  ECF Nos. 548–549.

## DISCUSSION

I.  <u>Legal Standard</u>

Federal Rule of Criminal Procedure 33(a) provides that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).  In evaluating a Rule 33 motion, the trial court must be satisfied that "competent, satisfactory and sufficient evidence in the record supports the jury verdict."  *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001) (internal quotation marks and citation omitted).  "The district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation."  *Id.*

Under Rule 33, trial courts have "broad discretion . . . to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice."  *United States v. Polouizzi*, 564 F.3d 142, 159 (2d Cir. 2009) (internal quotation marks and citation omitted).  However, "[t]he defendant bears the burden of proving that he is entitled to a new trial under Rule 33."  *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009).  Before ordering a new trial pursuant to Rule 33, "a district court must find that there is a real concern that an innocent person may have been convicted."  *Id.* (internal quotation marks and citation omitted).  "The test is whether 'it would be a manifest injustice to let the guilty verdict stand.'"  *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992) (citation omitted).

Given the stringency of the Rule 33 standard, "motions for a new trial are disfavored in this Circuit," *United States v. Gambino*, 59 F.3d 353, 364 (2d Cir. 1995), and Rule 33 motions are granted only "sparingly and in the most extraordinary circumstances," *Ferguson*, 246 F.3d at

3

134 (internal quotation marks and citation omitted).

   II.   Analysis

At the outset, the Government argues that Defendant's Rule 33 motion should be denied as time-barred. Gov. Opp. 4–6, ECF No. 554. New trial motions grounded on newly discovered evidence "must be filed within 3 years after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(1). A motion for a new trial based on any other grounds "must be filed within 14 days after the verdict or finding of guilty." *Id.* at (b)(2).

Defendant's trial concluded on May 19, 2014, when he was found guilty on all counts. He did not file a Rule 33 motion within 14 days after the verdict. Instead, on March 23, 2017, Defendant filed a "pro se motion requesting 18 months extension of time to file his Rule 33 motion," ECF No. 532 at 2, and on April 13, 2017, the Court extended his deadline for filing such a motion until November 19, 2018, *id.* at 1. The deadline was then extended again until April 18, 2019. ECF No. 535. However, because Defendant only requested an extension of time to file his Rule 33 motion long after the verdict was entered on May 19, 2014, he is now limited to claims based on "newly discovered" evidence.

Where a motion for a new trial is based on a claim of newly discovered evidence, the burden is on the defendant to satisfy five elements: "(1) that the evidence is newly discovered after trial; (2) that facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) that the evidence is material; (4) that the evidence is not merely cumulative or impeaching; and (5) that the evidence would likely result in an acquittal." *United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (internal quotation marks and citation omitted).

At the outset, the Court finds that Defendant cannot satisfy the first element—that the evidence is "newly discovered after trial." Specifically, Defendant's first argument relates to the Second Circuit's reversal of Counts Seven and Eight, which is not newly discovered evidence. *See* Def. Mot. 5–10. Defendant's second point relates to his conditions of confinement "during Trial 2014." *Id.* at 10–21. However, Defendant was clearly aware of these purported conditions in 2014. For his third claim, Defendant seemingly relies on the trial transcripts as "new post-trial finding[s]," *id.* at 30, but these transcripts are not "new" evidence because the trial took place in 2014 and Defendant was present for it. His fourth claim appears to be based on extradition documents, about which he claims the Government "misled the [Court] about [their] relevance or necessity to the case," *id.* at 37, and classified documents that the Court excluded Defendant from cross-examining a witness about, *id.* at 39. These documents are, however, not newly discovered as they were discussed at trial.[1] For his remaining claims, Defendant does not even attempt to identify any newly discovered evidence. *See* Def. Mot. 52–61.

Moreover, even if Defendant did identify newly discovered evidence, he cannot satisfy the other four elements necessary to grant a Rule 33 motion: due diligence on his part to obtain the evidence, that the evidence is material, that the evidence is not merely cumulative or impeaching, and that the evidence would likely result in acquittal. *James*, 712 F.3d at 107. The majority of Defendant's motion simply repeats the arguments made before—and rejected by— the Second Circuit. *Compare Mustafa*, 753 F. App'x 22, *with* Def. Mot.

First, Defendant claims that because the Second Circuit reversed his convictions on Counts Seven and Eight, he is entitled to a new trial on all counts. Def. Mot. 5–9. The Second

---

[1] Additionally, the Government represents that "documents related to [Defendant's] extradition were produced to him during pre-trial discovery, in advance of his trial in 2014." Gov. Opp. 7.

Circuit, of course, did not order a new trial, even though Defendant urged the court to do so on appeal. *See generally* Brief for Defendant-Appellant, *United States v. Mustafa*, No. 15-211 (2d Cir. Oct. 12, 2017), ECF No. 72.  Further, there was no potential prejudicial spillover to Defendant from the evidence adduced at trial related to Defendant's conduct on Counts Seven and Eight (on which his convictions were reversed), because that same evidence was admissible to prove his guilt on Counts Nine, Ten, and Eleven, which also covered his support for terrorism by sending a follower to an al Qaeda training camp in Afghanistan. *See Mustafa*, 753 F. App'x at 28–32.  Nor did the Second Circuit's reversal of Defendant's convictions on Counts Seven and Eight on jurisdictional grounds impact the Government's jurisdiction over the other counts in the Indictment.  Counts Seven and Eight had particular jurisdictional requirements not applicable to the other counts. *Id.* at 30–31.  As the Second Circuit found, Counts Nine and Ten had a sufficient jurisdictional nexus to the United States. *Id.* at 28 ("The [jurisdictional] challenge fails as to Mustafa's Counts Nine and Ten convictions for providing material support to al Qaeda in violation of 18 U.S.C. § 2339B because, since 1996, Congress has expressly provided for that statute's extraterritorial application.").  There was also a sufficient jurisdictional nexus over Counts One and Two because two of the hostages in Yemen were American. *See United States v. Mostafa*, 965 F. Supp. 2d 451, 459 (S.D.N.Y. 2013) (denying Defendant's pretrial motion to dismiss Counts One and Two on jurisdictional grounds, noting that "as stated [in 18 U.S.C. § 1203] . . . , where the conduct alleged occurred outside of the United States, there is no violation unless the person seized or detained is a U.S. national[, and h]ere it is alleged that two of the hostages were American citizens").  Jurisdiction and venue were also proper as to Counts Three through Six because the Bly Training Camp was located in the United States and

6

Defendant's coconspirators, Haroon Aswat and Oussama Kassir, traveled into the Southern District of New York in order to take a bus to Seattle to scout the Bly location for the terrorist training camp.  ECF No. 5 ¶ 7(d).  This was an act in furtherance of the commission of the crimes charged.  *See* 18 U.S.C. § 3237(a) ("[A]ny offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.").

Second, Defendant appears to argue that the conditions of his pretrial confinement rendered him unable to testify at trial and ran counter to assurances the United States made to the United Kingdom during his extradition.  Def. Mot. 10–21.  Any claim that Defendant's mental abilities were impacted at trial, however, are contradicted by his own trial testimony, where he stated that he previously had some problems with his memory, but those problems had improved "dramatically" in time for trial.  Trial Tr. 2987, ECF No. 400.[2]  Further, both defense counsel and Judge Forrest noted that Defendant had no problem testifying clearly and articulately at trial.  *See* Trial Tr. 3080–81, ECF No. 402; *see also Mustafa*, 753 F. App'x at 37–38, (noting that Defendant was not prejudiced from being precluded from testifying about his years in solitary confinement as being "evident from his and his counsel's statements to the district court that anticipated memory and articulation problems were not, in fact, impeding his trial testimony, a fact confirmed by the court's own observations").  Defendant's claim that in extradition proceedings, the United States made assurances to the United Kingdom that he would not be designated to ADX Florence, the maximum-security prison in Florence, Colorado, is also flatly

---

[2] Specifically, Defendant testified that although he "had a problem with the memory before," "since the trial started [he] improved quite dramatically interacting, seeing people, walking, watching, different activities around [him]." Trial Tr. 2987:8–13.

7

contradicted by the record and was already rejected by the Second Circuit. *Mustafa*, 753 F. App'x at 42 (rejecting Defendant's claim that the United States made a commitment to the United Kingdom that he would not be designated to ADX Florence and noting that a declaration submitted in extradition proceedings "alerted the surrendering courts that there was some possibility that Mustafa could be designated to ADX Florence").

Third, Defendant claims that trial testimony of prosecution witness Evan Kohlmann was improper because he testified as both an expert and a fact witness. Def. Mot. 22–35. The Second Circuit rejected this claim as well, because Judge Forrest gave a clear instruction to the jury after Kohlmann finished his expert testimony that the remainder of his testimony related to observed facts. *Mustafa*, 753 F. App'x at 34 ("[T]he district court's instructions, together with the inherently distinct nature and subject matter of Kohlmann's expert and fact testimony, satisfactorily safeguarded against juror confusion and, thus, no relief from judgment is warranted.").

Fourth, Defendant claims that the Government hid evidence from him. Def. Mot. 36–51. The Court presumes that Defendant is referring to Judge Forrest's precluding cross-examination of Kohlmann about certain classified information, *id.* at 39–40, and additional information about the Government's acquisition of two faxes sent by cooperating witness James Ujaama to Defendant in October and November 1999. The Second Circuit rejected both claims. As to the Kohlmann information, the Second Circuit found preclusion of cross-examination about certain matters appropriate, because "even if the classified information would also have shown motive and bias, the district court reasonably concluded that further examination on the matter would have been only marginally relevant and essentially repetitive." *Mustafa*, 753 F. App'x at 34

8

(internal quotation marks and citation omitted). With respect to the faxes, the Second Circuit held that Defendant may not have any suppression remedy under precedent holding that a foreign national cannot raise a Fourth Amendment challenge to searches conducted abroad, and that, in any event, his motion for additional discovery on this matter was untimely. *Id.* at 43–44. Thus, to the extent that Defendant did not learn of certain information, this information was not material to his defense and had no impact on the outcome of the trial.

Fifth, Defendant claims that it would be in the "public interest" to order a new trial because his conviction was harmful to the international image of the United States and national security interests. Def. Mot. 52–58. This is not a cognizable legal argument. In any event, the Court agrees with the Government that "Defendant's conviction and life sentence after a lengthy and fair trial of participating in a kidnapping that killed two Americans, setting up a terrorist training camp in the United States, and supporting al Qaeda, whose mission it is to destroy the United States, sent a strong deterrence message to like-minded individuals who might be similarly inclined to inspire others to support violent jihad and harm the United States." Gov. Opp. 9–10.

Finally, Defendant argues that cooperating witness James Ujaama lied on the witness stand. Def. Mot. 59–61. Ujaama testified for almost four days and was subject to a vigorous cross-examination about his offense conduct, prior bad acts, and any potential biases. *See* Trial Tr. 1935–2704, ECF Nos. 392, 394, 396, 398. Because courts generally must defer to the jury's resolution of conflicting evidence and assessment of witness credibility, "[i]t is only where exceptional circumstances can be demonstrated that the trial judge may intrude upon the jury function of credibility assessment." *Sanchez*, 969 F.2d at 1414. An example of exceptional

circumstances is where testimony is "patently incredible or defies physical realities," and even a court's identification of problematic testimony does not automatically meet this standard. *Id.* Here, the jury credited Ujaama's testimony and Defendant offers no basis to disturb that assessment. *See United States v. Vasquez*, 267 F.3d 79, 90–91 (2d Cir. 2001) (deferring to jury's assessment of credibility notwithstanding appellant's claim of "inconsistencies and lies" within testimony of Government's witnesses).

The Court finds no "real concern that an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (internal quotation marks and citation omitted). Accordingly, because there is no "manifest injustice" in "letting [the] guilty verdict stand," *id.*, Defendant's Rule 33 motion for a new trial is DENIED.

## CONCLUSION

For the reasons stated above, Defendant's motion is DENIED. The Clerk of Court is directed to terminate the motions at ECF Nos. 548, 549, and 555.

SO ORDERED.

Dated: July 12, 2019
       New York, New York

_____
ANALISA TORRES
United States District Judge