UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

UNITED STATES OF AMERICA,

       - against -                         04 Cr. 356 (AT)

MUSTAFA KAMEL MUSTAFA,
a/k/a Mostafa Kamel Mostafa,

               Defendant.

-----------------------------------------------------X

**DEFENDANT MOSTAFA KAMEL MOSTAFA'S
MOTION FOR COMPASSIONATE RELEASE AND/OR REDUCTION IN SENTENCE**

**APPENDIX**

**(Vol. 3 of 4)**

SAM A. SCHMIDT, ESQ.          MICHAEL K. BACHRACH, ESQ.
29 Broadway, Suite 1412         224 West 30th Street, Suite 302
New York, New York 10006       New York, New York 10001
(212) 346-4666                 (212) 929-0592

*Attorneys for Defendant Mostafa Kamel Mostafa*

## <u>Table of Contents</u>

*Vol. 1 of 4:*

Letter Request to Warden for compassionate Release, dated, January 12, 2023 ................1

<u>United States v. Abu Hamza</u> (City of Westminster (U.K.) Magistrate's Court)
(Workman, S.DJ.) (November 15, 2007) ............................................................................3

Affidavit ADX Warden, dated, October 3, 2007............................................................19

<u>Mustafa Kamel Mustafa (Otherwise Abu Hamza) v. United States,</u> [2008] EWHC
1357
(High Court, Queen's Bench Div.) (June 20, 2008)..........................................................32

Observations of Foreign and commonwealth Office, dated, November 13, 2008 ...........63

Observations of Foreign and commonwealth Office, dated, October 24, 2011................90

<u>Case of Babar Ahmad and Others v. United Kingdom,</u>
Appl. Nos. 24027/07, 11949/08, 66911/09, 67354/09
(European Court of Human Rights) (April 10, 2012).......................................................97

Excerpt, <u>United States v. Julian Assange</u> (City of Westminster (U.K.) Magistrate's
Court) (Baraitser, DJ.) (January 4, 2021)......................................................................179

*Vol. 2 of 4:*

Letter for Sentencing from Dr. Kligler, dated, December 4, 2014 .................................181

Exhibit from Government Sentencing Submission – Letter from B.O.P.,
dated, January 2, 2015 ...................................................................................................185

Excerpts from Sentencing Transcript, dated, January 9, 2015.......................................188

Judgment, dated, January 12, 2015 ...............................................................................191

Special Administrative Measures, dated, January 7, 2021..............................................196

Letter from Lindsay Lewis, Esq. to B.O.P. counsel, dated, March 21, 2013.................214

Email Correspondence from Lindsay Lewis, Esq. to B.O.P., dated April 20, 2016 ........219

Letter from Lindsay Lewis, Esq. to B.O.P. counsel, dated April 20, 2016 .....................221

Email Correspondence from Lindsay Lewis, Esq. to B.O.P., dated May 12, 2016 .........225

Email Correspondence from Lindsay Lewis, Esq. to B.O.P., dated August 19, 2016    226

Letter from Lindsay Lewis, Esq. to B.O.P. counsel, dated April 18, 2016 .....................227

Letter from MCC Counsel to Lindsay Lewis, Esq., dated, May 16, 2013 .....................229

Excerpts from Affidavit of Lindsay Lewis, Esq. re: Assange Extradition Request, Dated, July 17, 2020 ........................................................................................................232

Addendum Report by Lindsay Lewis, Esq. re: Assange Extradition Request, Dated, September 29, 2021 ..............................................................................................234

*Complaints, Remedy Requests and Responses (BOP complaints and responses including some civil case pro se writings)*

    Partial List Prepared by Mr. Mostafa ..................................................................250

    Partial List Prepared by BOP. ...........................................................................266

**Vol. 3 of 4:**

    Various Complaints, Remedy Requests and Responses .....................................291

    Letter to Magistrate Judge Hegarty, dated January 16, 2020..............................342

*Documents from <u>Mostafa v. Garland, et al.,</u> Docket No. 20 Cv. 694 (D. Colo)*

    Excerpts, Fourth Amended Complaint, dated, July 11, 2022 (Doc. No. 199)    347

    Excerpt, Complaint, dated, January 10, 2020 (Doc. No. 1)................................373

    Excerpts, First Amended Complaint, dated May 5, 2020 (Doc. No. 9)..............375

    Excerpts, Pro se Motion, dated September 24, 2020 (Doc. No. 43-1)................376

    Declaration of D. McMullen, dated, May 26, 2021 (Doc. No. 96-7) .................380

    Mr. Mostafa's Diagram and Comments on Cells from Pro Se Answer to Motion to dismiss, dated, July 16, 2021 (Doc. No. 119)...................................................390

    Excerpt, Pro Se submission, dated, December 6, 2021 (Doc. No. 158) ..............394

*Vol. 4 of 4:*

Statement of Dr. Gregory Johnsen Yemen Re: Yemen (2022)..........................................395

Excerpt, Draft Chapter of Book by Mary Quin (Gov't Bates No. 3502-24) ...................402

Report by Bridget Prince, One World Research, *Restrictions to Sentenced Prisoners on Release in the UK* .......................................................................................410

Letters in Support from Mr. Mostafa's Family ................................................................415

Excerpt, Sentencing Transcript, <u>Regina v. Abu Hamza</u>, dated, February 7, 2006...........423

EX. 05

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

_Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner._

Inmate Name: _Mosley_          Reg. No. _67495-054_
Unit: _H_                       Date: _Sept 22 - 2016_

**NOTICE TO INMATE**: You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), **you must attempt to informally resolve your complaint** through your Correctional Counselor. Please follow the steps listed below: _Re: Ignoring list of needed durability & Maintenance Fixtures_

1. State your complaint (single complaint or a reasonable number of closely related issues):
_I was requested to provide a list of needed durability items and maintenance to Germy and may unimportant daily tasks reasonably safely. I was told by a note from by department on December 2015 that I will be notified once a decision has been made. But after 10 months of even one item of it had been granted or decided! I am willing solely injured regularly and going without many needed things and my mental & physical health also. My prosthetics are now got functionally did to led it maintenance items. And when I do remedy the regional & central offices are not giving the truth by ADX!_
(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))

2. State what resolution you expect: _Obtain, provide all the listed items as soon as possible and if any item is not to be provided explain why and what is the alternative to be do as severely disable with no hands in complete solitary. Showing video/Drawings, picture of how I can do your suggestions. Thank you_

Inmate's Signature: _____ Date: _Sept 22 - 2016_

Counselor's Signature: _____ Date: _9-23-16_

Department Involved: _____ Date Assigned: _____ Due Date: _____

Department's Response regarding Complaint: _Medical is in the process of getting your prosthetics fixed. They have been in contact with springfield and will be sending out pics for clarification on how to fix. Handled informally._

Department Head Signature: _____ Date: _____
Unit Manager's Review: _____ Date: _____
Informally Resolved: _____ Date: _____

| | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 9-20-16 | 9-23-16 | 9-30-16 | 9-30-16 | |
| TIME | | | | | |
| COUNSELOR | | | | | |

FCC 1330.18B          Administrative Remedy Program          Attachment 1

U.S. DEPARTMENT OF JUSTICE   REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

Re: Ignoring list of needed disability & Maintenance Items.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostoka, K. Mostoka   REG. NO. 67495-054   UNIT H03   INSTITUTION ADX Florence Colorado.

LAST NAME, FIRST, MIDDLE INITIAL

**Part A– INMATE REQUEST** Again the answer in BP8 is not related to the complaint. I was asked by medical and legal dept. to on Nov last year to provide a list of items needed for my disability and maintenance of my prosthetics and diabetic conditions and I did November 2015. It was for preventing body harm and protecting my prosthetics and my feets from cuts as I am diabetic, partially signed and I severely disabled with no hands. The list of items was also submitted with another list of request of suitable fitting separately.

This appeal is about the items on the list; soap pump, pots, food utensils, hair brush ...etc. But nothing but promises for a year now (similar situation in the 3 yrs before) I was designated to ADX) now 4 yrs all together. The absence of the items requested can never be by passed without causing bodily harm, damage of the prosthetics as I try to use them for whatever they are designed for or simply to go without important things which compromise my health; Softly speaking of doing to do important legal and social work, and a bully, degrade and physically and mentally (vision ...etc) ... DATE 9-29-16

**Part B– RESPONSE**

Mentally Torturous

RECEIVED

SEP 30 2016

ADX AW Office

DATE                                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                CASE NUMBER: 877473-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

DATE _____                A.292   RECIPIENT'S SIGNATURE (STAFF MEMBER)

BP-229(13)

Ex-05 10/14
Disability 4st

**BP-229 RESPONSE**                                    **Case Number: 877973-F1**

Your Request for Administrative Remedy dated September 29, 2016, and received in
this office on September 30, 2016, has been reviewed. You allege you provided a list
of necessary items for your disability, maintenance of your prosthetics and diabetes
(e.g. soap pump, pots, utensils, hair brush) but nothing has been provided. For relief,
you request the items be provided as requested.

A review of the issue(s) raised in your Request for Administrative Remedy has been
conducted. The results of the review reveal on April 26, 2016, a list of your requested
items were reviewed and evaluated with your current living conditions by an
occupational therapist. The occupational therapist recommended some assistive
devices which have since been provided and include a bath mitt with a pouch for soap,
increased time for water, cylindrical foam for better control of utensils and writing
implement and a towel modified with loops. Other items which were not recommended
included a brush, as independence with the institutional comb was demonstrated, paper
clips, due to safety and security issues, and a Spork as independence was appropriate
with use of standard issue utensils and prosthetics. In addition, your prosthetic is being
sent for repair with the orthotics'/prosthetist specialist at the United States Medical
Center for Federal Prisoners Springfield, MO. Based on the above, you have received
multiple items to assist with your activities of daily living. If you have further medical
concerns, you are encouraged to submit a Request to Staff Member to further discuss
your concerns.

Accordingly, your Request for Administrative Remedy is for informational purposes only.
In the event you are not satisfied with the response and wish to appeal, you may do so
within 20 calendar days of the date of this response by submitting a BP-230(10) to the
Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway
Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

Jack Fox, Complex Warden

10/27/16
Date

**A.293**

**U.S. Department of Justice**

**Regional Administrative Remedy Appeal**

Federal Bureau of Prisons ~Knowing list needed for disability item~ 877-973-F1

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: ~Mostafa K. Mostafa~ ~67495-054 HO3 Colorado~

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A - REASON FOR APPEAL**

The answer provided is not accurate nor honest. Occupational therapist only stayed 20 minutes, never dealt with a double upper amputee before (let alone in solitary with other complication like partially sighted – etc). The result is my prosthetics are now broken as 1 one tay in to use them for what is not for them my hygiene is badly compromised; all items he offered are not for no hands person but for elderly people who have weak grip or week fingers. This dishonesty is against all my extradition agreement from England to here! It's also dangerous and illegal as I am not offered...

DATE 11-10-16

SIGNATURE OF REQUESTER ~Mostafa (lawyer)~

**Part B - RESPONSE**

RECEIVED
NOV 18 2016
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

DATE

REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 877973-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

SUBJECT: _____

DATE _____

A-294 SIGNATURE, RECIPIENT OF REGIONAL APPEAL

BP-230(13)

**U.S. Department of Justice**          $Ex. 05$   $\frac{12}{14}$
**Federal Bureau of Prisons**                                    **Regional Administrative Remedy Appeal**
**North Central Regional Office**        Disability list              **Part B - Response**

---

**Administrative Remedy Number**:  877973-R1

---

This is in response to your Regional Administrative Remedy Appeal received on November 18, 2016.
You allege you have not been provided the appropriate adaptive devices for your condition.  For
relief, you request to be provided with a hair brush.

We have reviewed the documentation related to your appeal.  Based on this review, we concur
with the manner in which the Warden addressed your concerns.  You have consistently been
provided appropriate medical care in accordance with Program Statement 6031.04, Patient Care.  A
review of your electronic medical record indicates you were evaluated by an Occupational Therapist
on April 26, 2016.  This evaluation was to determine if adjustments to your cell or adaptive devices
were needed to assist with your activities of daily living (ADL).  You have since been provided with
the adaptive devices as recommended by the Occupational Therapist.  You are encouraged to
report to sick call if you feel your condition requires further evaluation or has changed.  Given this,
we shall defer diagnostic and treatment interventions to the local level.

Based on these findings, your request for Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal
Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in
the Office of General Counsel within 30 days from the date of this response.

12/14/16
Date                                                    Sara M. Revell, Regional Director

Still Ignoring the list or
mentioning it !
No Direction to TORT or Rehabilitation
Act

**A.295**

U.S. Department of Justice

Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

877973-A

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa K. Mostafa        67495-054    H03    Co.    81226
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL**  The answer provided is not true or fair or lawful. It shows that the investigator never saw or ask legal Dept about the items asked me to provide. And the Comment absent such items at the needed pictures and his ability items I required from the hasty O.I.T to Comment about each item. And show my sketch or drawing how Can I do without it. He failed to do any of that to use one not for the very few items he suggested. To use one not for the dangly computer. Scone one for staying with week finger(s) & hope to thing other items he suggested never provide and unheard of in harmful Caring pleading and observation and unheard of in my disability and sentencing my health & safety.

12-31-16    the denial of all/any of the ... by ...

DATE        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JAN 17 2017
Administrative Remedy Section
Federal Bureau of Prisons

_____        GENERAL COUNSEL
DATE

ORIGINAL: RETURN TO INMATE        CASE NUMBER: 877973-A

CASE NUMBER: _____

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
DATE        SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

A:298

UPN LVN        PRINTED ON RECYCLED PAPER        BP-231(13)
JUNE 2002

EX.05 14     Disability List    83

**Administrative Remedy No. 877973-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege you the disability items you have are
not working, or are dangerous. In addition, you contend the
items suggested for use are not for a double amputee. You
request no specific relief.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal. Our succeeding review reveals on April 26, 2016, the
Occupational Therapist wrote a detailed evaluation of your
amputee status. They concluded you have the ability to complete
your Activities of Daily Living using your current prosthetics
and/or modified technique/adaptive equipment. Therefore,
further intervention discussions relating to your adaptive
devices will be deferred to Health Services staff at the local
level. Your primary care team will continue to make
recommendations as needed. As recommendations are made, a
course of treatment will be determined.

The record reflects you have received medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons. You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your condition change.

Considering the foregoing, this response is provided for
informational purposes only.

2/28/17
Date

Ian Connors, Administrator
National Inmate Appeals

→ No list Mentioned
Nor Federal TORT Nor Rehab. ACT.

**A.297**

Ex. 15 Att. 1 Plaintiff's ~esthetics & ~writion 3/3

Figure 1
(amputation)

Missing

stump

Fig. ~ Split Hook
Prosthetic not waterproof

hard Material

holes for reducing Heat

Split Hook

wire cord to open Hook by pulling

shoulder Harnest to pull the cord

Maximum opening when cord is pulled = 12 mm or 1/2"

Fig. 3
Stump inside

1/2"

several wide rubber rings

Side view

~er spoon

(Nonfracturinable items could fly out of its grip)

Danger : Can cut & injure Plaintiff body if used for un suitable tasks (like to wear sock or clean). Can not be opened near the body because the cord will be relaxed at now.

Notice   ① Limited use a for short time as plaintiff has excessive over heating and sweating Hyperhydrosis and skin (stump abrasion & soreness)

② Can not get it wet as it smells & rust.

③ Does not reach rear back body to cleanse after toilet and it does not bend

= Mechanism of Use :

① The Harnest go to shoulder and to be stretched forward if need to split the hook to pick a pen or spoon

② once the object is between the 2 sides of the hook the shoulder relax the cord and the rubber rings contract back to its original size and close the hook on the object (Pen spoon)

A.298

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

*Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: M55tafe    Reg. No. 67495-054
Unit: H02          Date: 10-03-16

**NOTICE TO INMATE:** You are advised that normally prior to filing a Request for Administrative Remedy, BP-229(13), **you must attempt to informally resolve your complaint** through your Correctional Counselor. Please follow the steps listed below: Re: Broken prosthetic and Rubber for O thom.

1. State your complaint (single complaint or a reasonable number of closely related issues):

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits. (Exhibits will not be returned with the response to BP-229(13) responses.))

2. State what resolution you expect:

Inmate's Signature: _____  Date: 10-03-16

Counselor's Signature: _____  Date: 10-5-16

Department Involved: _____ Date Assigned: _____ Due Date: _____

Department's Response regarding Complaint: This has been previously addressed on another remedy. You were told your prosthetic would be sent out for repair. After you were done with a detailed cop at to the shift firing it and explaining what you needed.

Department Head Signature: _____  Date: 10/2/16
Unit Manager's Review: _____  Date: _____
Informally Resolved: _____  Date: _____

|  | BP-8 ISSUED | BP-8 RETURNED | BP-9 ISSUED | BP-9 RETURNED | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 7-23-16 | 8-4-16 | 10-6-16 | 10-13-16 | |
| TIME | | | | | |
| COUNSELOR | | | | | |

FCC 1330.18B     Administrative Remedy Program     Attachment 1

A.299

U.S. DEPARTMENT OF JUSTICE    3/6    **REQUEST FOR ADMINISTRATIVE REMEDY**

Federal Bureau of Prisons   Re: Broken prosthetic & rubber stool for others.   201

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*   ADX Florence

From: Mostafa · K · Mostafa    67495-054    H03    Colorado -
    LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A- INMATE REQUEST the answer provide only a tiny part of the complaint. doesn't advise for any time frame to repair the broken prosthetic or to hide the maintaining items to prevent it from breaking first place! one been asking for the prosthetic's Rubber and rubber tool since Dec 2015 all ways ignored. my request had even reached control office nearly 5 and anxiety answer.

so, to date, I am still asking for the rubber tool & rubber rings to prevent more damage and/or other prosthetic's problems but to no avail. This kind of dismissive responses are causing many worries & anxiety as I am unable in complicate solitary with no help whatsoever. It does delay the paperwork and causes many other problems in health, safety and hygiene and I will appreciate a speedy solution and pro-active measures to prevent this problem from reoccuring.

-12-16    and to be flexible in providing help.    [signature]
DATE        SIGNATURE OF REQUESTER

Part B- RESPONSE

RECEIVED

OCT 14 2016

ADX AW Office

_____    _____
DATE                                WARDEN OR REGIONAL DIRECTOR

*If not satisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE             CASE NUMBER: 879482-F1

_____
                                 CASE NUMBER: _____

Part C- RECEIPT

Return to: _____
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____            _____
DATE                             RECIPIENT'S SIGNATURE (STAFF MEMBER)

LVN    [recycled paper logo]    **A.300**            BP-229(13)
                                                      APRIL 1982

4/8

**BP-229 RESPONSE**                                    **Case Number: 879482-F1**

Your Request for Administrative Remedy dated October 12, 2016, and received in this office on October 14, 2016, has been reviewed. You allege you have been requesting repair of your prosthetic, rubber for the prosthetic and tools, to no avail. For relief, you request a time frame for prosthetic repair and a solution to your prosthetic concerns.

A review of the issue(s) raised in your Request for Administrative Remedy has been conducted. The results of the review revealed your request for multiple items was addressed in Administrative Remedy #877973. Your prosthetics were recently sent to the prosthetic/orthotic specialist at the United States Medical Center Springfield, MO for repair. Pictures of your prosthetics were provided prior to their shipment so the repair process could be shortened. The repairs will be completed as soon as possible and your prosthetics will be returned to you once they are received. If you have any concerns prior to the retrieval of your prosthetics, you are encouraged to submit a Request to Staff Member to address your concerns.

Accordingly, your Request for Administrative Remedy is for informational purposes only. In the event you are not satisfied with the response and wish to appeal, you may do so within 20 calendar days of the date of this response by submitting a BP-230(10) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

_____                    _____
Jack Fox, Complex Warden                                         Date

5/6

U.S. Department of Justice
Federal Bureau of Prisons

**Central Office Administrative Remedy Appeal**

Broken Prosthetics & Rubber rings - tool. 303

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: Mostafa K. Mostafa | 67495-054 | H03 | ADX Florence Colorado
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

Part A - REASON FOR APPEAL Important parts of the provided answers are not true
The left prosthetic has been returned without been fixed and all the rubber rings I sent it with were taken without replacement. I showed Ms Smith, the head of department, how it is not to wheel and without even the old rubber rings completely unuseable and I wrot BP8 about it 10 days ago still un answered or delt with.
As for the right prosthetic it came with 4 new rubber only and 4 loose ones but no rubber tool to fit them; Kindly one staff member hardly fitted 2 rings with his hands but twisted.
The Rubber rings and tool need to be always near by as maintenance and emergency all the time. Therefore the issue still need good attention Not least when I have to do difficult tasks for my daily need which are unrecommended to do by the prosthetics but I am in Solitary with no help or fitting

12-15-16
DATE

SIGNATURE OF REQUESTER

Part B - RESPONSE

RECEIVED
DEC 29 2016
Administrative Remedy Section
Federal Bureau of Prisons

DATE

GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE

CASE NUMBER: 879482-A1

Part C - RECEIPT

CASE NUMBER:

Return to:
LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION

SUBJECT:

DATE

SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

BP-231(13)

**U.S. Department of Justice**

Federal Bureau of Prisons

Central Office Administrative Remedy Appeal

Bro Ken Prosthetic & Rubber rings-tool.

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments, must be submitted with this appeal.

From: _____  6749556H  TB3  Colorado
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A - REASON FOR APPEAL** Important parts of the provided answers to the The left prosthetic has been returned without been fixed and all the rubber rings I sent it with were taken without replacement. I showed M.S. Smilish, the head of department, how it is not to useful and without even the old rubber rings completely unuseable and I wrote EOS about it 10 days ago still un-answered or delt with. As for the right prosthetic it came with 4 new rubber only and 4 loose once but no rubber tool to fit them. Kindly own staff member hardly fitted 2 rings with his hands but twisted. The rubber rings and tool used to be always near by as maintenance and emergency all the time. There is no I have to do difficult task for my daily 12-15-16 and which are unrecommended to do but the _____ of _____ prosthetics but I am in solitary with _____

DATE 12-15-16                                    SIGNATURE OF REQUESTER No Pen or Getting

**Part B - RESPONSE**

RECEIVED

DEC 2 9 2016

Administrative Remedy Section
Federal Bureau of Prisons

_____        _____
DATE                           GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                     CASE NUMBER: 879482-A1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT: _____

_____                _____
DATE                                    SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

A-303                                                          BP-231(13)

**Administrative Remedy No. 879482-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal wherein you allege your prosthetics were returned to you
without the rubber rings, making them unusable. For relief, you
request a review of this matter.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal. As such, our succeeding review reveals no reason to
elaborate further with similar conclusions as to those which
have already been provided in the previous levels of this
appeal.

The record reflects you have received medical care and treatment
in accordance with evidence based standard of care and within
the scope of services of the Federal Bureau of Prisons. You are
encouraged to comply with proposed medical treatment so Health
Services can continue to provide essential care and to contact
medical personnel through routine sick call procedures should
your condition change.

Considering the foregoing, this response is provided for
informational purposes only.

_____                    _____
Date                               Ian Connors, Administrator
                                   National Inmate Appeals

**A.304**

Attached Sent And also again handed TO M. HINER

To: Medical (Disability) Dept. 12-13-2022

From: Mostafa # 67495-054 H-511

Subject ①: Again Prosthetic Retorned Unusable from Repair

Subject ②: No reply/contact from you Since you Sent me
the three unusable items on 11-15-22!

It was given my U.K made Prosthetic by nurse Heddstone
after been in repair for Sumetime.
However, I could not even enter my arm inside;
nor the harness cord provides sufficient length for
any maneavor to get in or any Usage!

The Technician who took it for repair promised
to return it functionable (not like 2016 repair failure).
But instead of placing a thin layer inside it he glowed
a thick one which left no space for the arm stump.
And he should have come to provide the
adjustment for the length of the harness too.
I showed the evening nurse Mr. John, The Problem
and he said to write to you.
CAN YOU please, Help Soon?

Subject ② : Last month 11-15-22 you sent me.
Again un usable almost mockery Three
items : Hand manual clipper, Very long thin &
cylinder comb and similar brush Which
I returned to you with a cop out with Mr.
Keeler (918), he said he sent it & Emailed to
you. He also Said he does not know Why
he was given the items to pass on to me?!

All the items are for people with hands.
You did not pass the illustrations/instructions.
you did not to date come on even replied
to my 11/15/22 message. Please do.
Could you please address the above Two
Issues & Provide information & Solution? Thank Respectful

12-13-22 J/m

209

Medical

Ex·15-A

FEDERAL CORRECTIONAL COMPLEX
FLORENCE, COLORADO
INFORMAL RESOLUTION FORM

*Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: Mostafa K. Mostafa   Reg. No.: 67495-054
Unit: A-5n   Date: 5/23/22

NOTICE TO INMATE: Be advised, normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below:

1. State your complaint (single complaint or a reasonable number of closely related issues): *[handwritten] Snoring repeated causes of painful infections to the nails and stumps. I am repeatedly encountering infections in my left arm stumps due to abrasion and faulty prosthetics. I recently was given anti biotics for that and also for my toe nail infections which I believe by improper toenails trimming, now toenails need to be removed. Both infections are dangerous to me and need to be addressed ASAP*

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits, as exhibits will not be returned with the BP-229(13) response.)

2. State what resolution you expect: *[handwritten] I was advised by P.A. not to work with my stumps or use my prosthetics BUT, I am disabled in solitary! I need help, new type of prosthetics and a podiatrist to cure, remove the toe nails please ASAP*

Inmate's Signature: ___   Date: 5/23/2022
Counselor's Signature: ___   Date: 5/24/22
Department Involved: Medical   Date Assigned 5/24/11   Due Date: 5/31/22

Department's Response regarding Complaint: *These issues were addressed on 5/18/22. A consult was place for you to see the podiatrist. Your stumps were not infected and the provider mentioned you wear them longer than directed.*

Department Head Signature: ___   Date: 5/31/22
Unit Manager's Review: ___   Date: 6/8/11
Informally Resolved: ___   Date:

| | BP-8 ISSUED to Inmate | BP-8 RETURNED to Counselor | BP-9 ISSUED to Inmate | BP-9 RETURNED to Counselor | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 5/23/22 | 5/24/22 | 6/8/22 | 6/27/22 | |
| TIME | | | | | |
| COUNSELOR | | | | | |

FCC 1330.18C   Administrative Remedy Program   Attachment 1

A.306

Ex. 15-B

Pl. BP9 appealing
and Correcting difference between
bone infection & fresh infections
in this case

And that he has no choice in
solitary but to wear & work with
the available prostheses! —

$Ex. 26 - C$

**Administrative Remedy No. 862521-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal, wherein you to be provided with access to an Imam to meet
your religious needs.

We have reviewed the documentation related to your appeal and, based
on the information gathered, concur with the manner in which the
Warden and Regional Director addressed your concerns.  Program
Statement 5360.09, Religious Beliefs and Practices, states the
Bureau of Prisons provides inmates of all faith groups with
reasonable and equitable opportunities to pursue religious beliefs
and practices, consistent with the security and orderly running of
the institution and the Bureau of Prisons.  Our office contacted
Chaplaincy Services staff at your institution and was advised they
are currently working with Chaplaincy Services at another
institution to have their Imam provide services to the Muslim faith
group at your institution.  Due to the location of the facility, it
has been proven to be difficult to recruit Islamic religious
volunteers and/or contractors, including an Imam.  The Chaplaincy
Services Department at FCC Florence has made numerous attempts and
continues to make great efforts to actively recruit the services of
an Imam.

We encourage you to continue working with the institution Chaplaincy
Services Department staff to address any religious needs you may
have.

Accordingly, this response is for informational purposes only.

_____
Date

_____
Ian Connors, Administrator
National Inmate Appeals

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons     EX·15-B

**REQUEST FOR ADMINISTRATIVE REMEDY**
(2)11

*Type or use ball–point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostafa·K. Mostafa     67495-054     H     ADX CO.
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

Part A– INMATE REQUEST Respectfully. This answer is not accurate as:
1 - The bone was not infected but my stumps flesh was and swelling and the white substance was plausible, redness and pain too.
2 - The provided 2 week antibiotics did not work and would not be renewed as P.A said and no treatment or solution to date !
3 - The advice by PA Soniswichly not to wear my prosthetics is not practical as I am in solitary with no help. And that only were them for short time already to avoid infection & over heats! 
4 - I had to wait many weeks till the swell receded and I could wear the prosthetics to reply to this remedy. I need new type prosthetic & properly. And all due to dangerous bad foot care and Walk toes.
06-21-2022  Swiss ADX Stopped. Podiatrist 2015     SIGNATURE OF REQUESTER
DATE

**Part B– RESPONSE**

DATE     WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*
SECOND COPY: RETURN TO INMATE     CASE NUMBER: 1128013

CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION
SUBJECT: _____

A.309

DATE     RECIPIENT'S SIGNATURE (STAFF MEMBER)     BP–229(13)

S. DEPARTMENT OF JUSTICE — **REQUEST FOR ADMINISTRATIVE REMEDY**

deral Bureau of Prisons — Re: Broken tooth and no prevention of similar future injuries.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| om: Mustafa, K. Mostafa | 67495-054 | # | ADX Florence Colorado |
|---|---|---|---|
| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

art A– INMATE REQUEST The answer ignores many facts and produce no solution to the on-
ing problem. Such as the broken tooth had split to 2 halves as I was opening a
[illegible] item using my teeth as I do since I was extradited Oct 2012. I lost 3 teeth since
all my dental work done in England without any replacement or plan to do so
that I am opening similar items nearly every day as I am severely disable with
s end in complete solitary with no help. Because of ~~the SAMs~~!
e is no plan to avoid more broken teeth as BOP refusing to allow me help or rep
[illegible] I was told by the dentist on 9-16-16 there are two more loose back teeth, and and
could be fixed if "you was not in BOP" as BOP Policy doesn't allow dental work
hop; implant, bridges, crowns, capping etc which I would have no problem to do "out:
when I offered to pay it was not allowed! The only solution would be offered in an
is to yet remove many more teeth to do a "denture" which I can't ever use a
ve no hands and its dangerous and excluded in England to prevent chocking and infec
o told the same by dentists in MCC New York and medical center in Missouri Springfield.
now No. 99 on the list and since Oct 2015; and even if I was taken tomorrow
e above are the only options; which are increasing my disabilities and worsening
22-16 my conditions! please allow me help in opening [illegible] and allow me dental
work including implant, bridges crowns.. etc. (Thanks)

DATE — SIGNATURE OF REQUESTER

art B– RESPONSE

RECEIVED
SEP 23 2016
ADX AW Office

Exhibit 5 [illegible] Page 3 / 10

DATE — WARDEN OR REGIONAL DIRECTOR

*atisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

IGINAL: RETURN TO INMATE — CASE NUMBER: 877295-F1

69

CASE NUMBER: ______

t C– RECEIPT

n to: ______ LAST NAME, FIRST, MIDDLE INITIAL — 69 REG. NO. — UNIT — INSTITUTION

ECT: ______

DATE — RECIPIENT'S SIGNATURE (STAFF MEMBER)

Case No. 1:20-cv-00694-PAB-SKC   Document 119   filed 07/22/21   USDC Colorado   pg 314
Case 1:34-to-00356-AT   Document 00553 Administration Remedy Appeal 108

artment of Justice

Bureau of Prisons   *Loss of teeth & no prevention or relief*   877295 A1

use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attach-
ust be submitted with this appeal.

Mostafa, K. Mostafa          67495-054     1-103        Florence
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT       Colorado
                                                             INSTITUTION

REASON FOR APPEAL *This answer doesn't provide any prevention for the loss
y teeth while trying to open food pouches to eat, nor does it
ride any relief
lost 4 teeth since my extradition to US 2012 and all dental
I had because I am Coerced to use my teeth to
food pouches as I am disabled (No hands) and in Complete
my since 2012 with no help to open food sealed packages.
into are not allowed to do any dental work such as: Crowns
s, Caps, implants or provide essential items such as: electric
ush, water flossing and all their recommendations are Trashed
red, denture can not be for me us! I have no hands! I can't
put it on or off or clean it or clean the gum!
1 - 16 you are using the SAM to destroy my health*

DATE  *and Coerce me to harm my teeth tooth*  SIGNATURE OF REQUESTER

RESPONSE

*Exhibit 15 & AAO page 5/10*

RECEIVED

JAN 1 9 2017

Administrative Remedy Section
Federal Bureau of Prisons

*Exhibit 03 page 5*

DATE                              GENERAL COUNSEL
                                  CASE NUMBER: 877295
IAL: RETURN TO INMATE

RECEIPT                           CASE NUMBER:

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT       INSTITUTION

DATE                   SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

A.311

BP-231(13)

(Exhibit 15 A - page 40 of 41)
Hygiene

# UTILIZATION REVIEW COMMITTEE
## INMATE NOTIFICATION LETTER
### FCC FLORENCE
Camp/FCI/USP/ADX

Name: Mostafa, Kamel          Date: 3|1|17
Reg. Number: 67495-054        Housing Unit: H05-511

## Requested Consult/Procedure

☐ General Surgery    ☐ Orthopedics    ☐ Gastroenterology        ☐ Ear, Nose, and Throat
☐ Ophthalmology     ☐ Prosthetics    ☐ Colonoscopy and/or EGD  ☐ Oral Surgery
☐ MRI               ☐ CT Scan        ☐ Cardiology              ☐ Urology
☐ Radiology         ☐ Nephrology     ☒ Other: _ electric toothbrush | hole punch

## Utilization Review Committee Decision

☐    The committee has referred your case to the Regional Office for final approval.
     You should be notified of your status within the next two months.

☐    The committee has APPROVED this request without modification.

☐    The committee has DENIED this request.
     ☐    You will be scheduled for further evaluation by a staff physician.
     ☐    You will be scheduled for further evaluation by a mid-level provider.
     ☐    You need to follow-up in sick call with any further issues.
     ☐    You will be referred to a specialty consultant.
     ☐    Your procedure is contraindicated due to unacceptable risk.
     ☐    You have been placed on the waiting list for: _____.
     ☒    Other: Not approved for electric took brush.
     **Re-submission of the request will be considered if medically indicated.

_____
Physician

MAR 01 2017

Copy Sent or Issued to Inmate On: _____
Copy Scanned Into BEMR                                    Form Last Updated: 11.19.10.TM


A.312

**Administrative Remedy No. 877295-A1**
**Part B - Response**


This is in response to your Central Office Administrative Remedy
Appeal wherein you assert your teeth have decayed as a result of
using them to open food packaging. You contend Bureau of
Prisons dentists are limited in the treatment they provide and
oral hygiene items are unavailable. You request no specific
relief.

We have reviewed documentation relevant to your appeal and,
based on our findings, concur with the manner in which the
Warden and Regional Director responded to your concerns at the
time of your Request for Administrative Remedy and subsequent
appeal. Our succeeding review of your medical record reveals on
November 21, 2016, you were seen for a treatment plan
examination. The dentist indicated you had five teeth that
required fillings and four other teeth that were recommended for
extraction. You have had routine dental treatment appointments
on December 23, 2016, and January 6, 2017, to address the
diagnosed problems. On January 6, 2017, you requested not to
have the four teeth extracted.

Should you re-consider the extractions, you are encouraged to
contact the dentist to continue your care. At that time, you
also may discuss the limitations of different tooth replacement
treatments, your nutritional concerns, and functional
limitations due to your disability.

The record reflects you have received dental/medical care and
treatment in accordance with evidence based standard of care and
within the scope of services of the Federal Bureau of Prisons.
You are encouraged to comply with proposed medical/dental
treatment so Health Services staff can continue to provide
essential care and to contact dental/medical personnel through
normal sick call procedures should your health condition change.

Considering the foregoing, this response is provided for
informational purposes only.


3|6|17
Date

Ian Connors, Administrator
National Inmate Appeals

**A.313**

COV[?]

S/S plen scan, return and sent to Medical Dept, Kitchen

To: 2nd: Whom it May Concern 5/4/2020
including Medical Dept., Kitchen, Dietionand Warden

From: I/M Mostafo # 67495-054 Unit H - Cell 5 11

Subject: Un Manageable Safety & Hygien issues in present
Food Trays

1- I am severly disabled (no hands and vision impaired) and
recently in feb 2020 was assigned to a Therapy Diet
and signed permission to open, in Kitchen, my Kosher
Food Items.

2- However, Since then Multiple un manageable Safety &
Hygiene developed make it very difficult, unsafe to
handle or reach the food or consumed it.

3- For example (but not limited to): (a) Some items are not alway
opened and I still have to use my stumps and teeth
(b) even worse Most opened items are only partially
opened and fluids, oil and content all mixed in
the Styr tray; make everything untouchable
without dirting/clothing, cell, body and destroying
the food itself
(c) Over heated hot trays (at least 3x weekly) fragments
parts of the trays to all size sharp razor party
I can feel some in my mouth but not all
(this issue is persistent i made many remedy"
(d) When I ask for safer tray many times I do not g
and have to go without food.

Request: As all above, and I am now in therapist diet
I could you please get me my disability plates
and tray and put the food in from Kitchen.

And, as for now, Temporary Measure to open all the
food and place it inside a standard Kitchen hand tray
(no plastic or papers) until a decision is made about
my disability. I am again becomeing fearful and phobic
of such dangerous difficult issues. Respectfully. [?]

*( Urgent ! case )*

*See attached*

**FEDERAL CORRECTIONAL COMPLEX**
**FLORENCE, COLORADO**
**INFORMAL RESOLUTION FORM**

_Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner._

Inmate Name: Mostafa K. Mostafa     Reg. No.: 67495-054

Unit: _____     Date: Wed 6-24-20

NOTICE TO INMATE: Be advised, normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below: COVID 19, Kitchen Persistant Misconduct endangering my life?

1.  State your complaint (single complaint or a reasonable number of closely related issues): I am severely disabled, no hands and very abraded front teeth. Forced of persistantly to open food items (un opend or partially opend) by using my front teeth or many years to date. Kitchen refusal to open properly food items is new in COVID 19 time is illegal ball & the water properly. (If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also Misco submit one copy of supporting exhibits, as exhibits will not be returned with the BP-229(13) response.)

2.  State what resolution you expect: As Recommended by regional office in tharapitic Diet. Please, provide all food out of any plustic or closed containers and stop using my solitary & disability to endanger/harm

Inmate's Signature: _____     Date: 6-24-20

Counselor's Signature: _____     Date: 6/24/2020

Department Involved: _____     Date Assigned: _____ Due Date: _____

Department's Response regarding Complaint: No response

_____

Department Head Signature: _____     Date: _____
Unit Manager's Review: _____     Date: _____
Informally Resolved: _____     Date: _____

|  | BP-8 ISSUED to Inmate | BP-8 RETURNED to Counselor | BP-9 ISSUED to Inmate | BP-9 RETURNED to Counselor | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 6/24 2020 | 6/24/2020 | 7/3/2020 |  | 7/8/20 |
| TIME |  |  |  |  |  |
| COUNSELOR | AP | A |  |  | CC |

FCC 1330.18C     Administrative Remedy Program     Attachment 1

U.S. DEPARTMENT OF JUSTICE                                    REQUEST FOR ADMINISTRATIVE REMEDY

Federal Bureau of Prisons

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostafa · K. Mostafa        67495-054    H                    ADX Co.
      LAST NAME, FIRST, MIDDLE INITIAL       REG. NO.          UNIT        INSTITUTION

**Part A– INMATE REQUEST** This No answer to avoid liability while still exposing me to the harm of Covid-19. As in the BP9 and the cop out attached, I am severly disabled (no hands and periurasion I have most of the undeelying endangering sickness and in complete solitary confinement 24-7.

Despite kitchen manager assurances to open all pointes and plastic fully including this staff manid, I am provided still with only some items of food open, other not open are only partially open, and do not have opener but my teeth to get the food out. This is very dangerous in Covid-19 time, all food items and Kosher trays, are typpeatidly handelled by staff gloves while touching every bodiy and things. please stop emptying the food in disability bowl

7-5-2020                                              [signature]
   DATE                                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Received
JUL 0 8 2020
Admin Remedy

_____          _____
       DATE                        WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE             CASE NUMBER: 1052022-[

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

                                                           CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____   _____   _____   _____
           LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____              **A.316**  RECIPIENT'S SIGNATURE (STAFF MEMBER)
       DATE

USP LVN        PRINTED ON RECYCLED PAPER                                    BP–229(13)
                                                                           APRIL 1982

BP-229 Response                                    Case Number: 1032022-F1

Your Request for Administrative Remedy dated July 5, 2020, and received in the
Administrative Remedy office July 8, 2020, has been reviewed. Specifically, you claim
Food Service is not opening your food packages. As relief, you request for food to be
emptied into a disability utensil.

A review of the issue raised in your Request for Administrative Remedy has been
conducted. The results of the review revealed Food Service is following the Certified diet
menu and also the therapeutic diet order written by the Health Services department.
The diet order states, all prepackaged religious food will be opened by food service
workers in a certified diet kitchen and placed into easy access tray containers. Food
Service is following this diet order.

Accordingly, this response to your Request for Administrative Remedy is for informational
purposes only. In the event you are not satisfied with this response and wish to appeal,
you may do so within 20 calendar days of the date of this response. You will need to
submit a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central
Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City,
Kansas 66101-2492.

B. True, Complex Warden                                    Date



**U.S. Department of Justice**
Federal Bureau of Prisons

Federal Correctional Complex
Florence, Colorado
☑ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

*Food Service Department*                              *Florence, CO 81226*

June 9, 2021

MEMORANDUM FOR:      FCC FLORENCE FOOD SERVICE STAFF

From:                P. Kipriadis – Complex Food Service Administrator

Subject:             Food Preparation for Inmate Mostafa #67495-054

Per the email(s) sent out on May 11, 2021 and June 8, 2021 to all ADX Food Service staff, there are updated feeding procedures for Inmate Mostafa #67495-054. This memorandum serves as official notification that may be held on file until further notice, of the following food preparation requirements:

- All food items, including the contents of halal certified religious meals, must be removed from packaging and placed in a covered hard teal tray. This tray must be specifically marked as Inmate Mostafa's meal.
- Other packaged food items such as tuna, sardines, etc. must also be opened and placed in the hard food tray.
- All applicable fruit (i.e., oranges and bananas) must be peeled and placed in the hard food tray. Apples shall be cut in half.

Inmate Mostafa is aware of and agrees with these changes in the preparation of his meals.

If there are any questions, comments or concerns regarding these accommodations, please reach out to any Food Service Administration at any time.

Thank You.

**A.318**

**U.S. Department of Justice**

**Federal Bureau of Prisons**

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mustafa. Kumel Mostafa    67495054    H    ADX. C.o.

LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** The answer is general and not true. And can easily be proven by camera footage even today Aug 13. I am only provided one stire paper tray for the solid Food which contains many Items all packed in plastic. Jelly, butter, Bread, 3x week Fish pouches, one pologne grece or twice Peanut butter, Salad Creams, mustard and salt, pepper, coffee, baverage Sachets. The only item Kitchen opens and place in another easier container is Milk put in paper cups. But As retaliation for my request all other Items are either never opened or opened in a way that I can't get the food out and have to complete the open by teeth. Certainly never placed in any other place a Most of the Time

8-13-20 COVID-19 has arisen. all the food oiled / mixed / unusable

DATE                SIGNATURE OF REQUESTER

**Part B - RESPONSE**

---

DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

FIRST COPY: REGIONAL FILE COPY               CASE NUMBER: 1032022-R1

**Part C - RECEIPT**

CASE NUMBER: _____

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.     UNIT     INSTITUTION

SUBJECT: _____

_____                                                                         
DATE                           SIGNATURE, RECIPIENT OF REGIONAL APPEAL

A.319

UPN LVN                                                     BP-230(13)
JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**
**North Central Regional Office**

**Regional Administrative Remedy Appeal**
**Part B - Response**

**Administrative Remedy Number**: 1032022-R2

This is in response to your Regional Administrative Remedy Appeal received in this office on September 14, 2020 in which you claim that Food Service is not opening all of your food packages. As relief, you request that Food Service open all of your food items as written in your diet order.

The information presented in your Regional Administrative Remedy Appeal and the Warden's response was reviewed.  The response provided to you by the Warden adequately addresses your concerns regarding this issue.  The Food Service department at your institution is following your diet order.  We find no deviation from your order or agency policy.

Based on the above information, this response to your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.  Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

10/13/20
Date

J.E. Krueger, Regional Director

**RECEIVED**

OCT 26 2020
ADX AW Office

**A.320**

FEDERAL CORRECTIONAL COMPLEX
FLORENCE, COLORADO
INFORMAL RESOLUTION FORM

*Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: Mostafa K. Mostafa Reg. No.: 67495-054
Unit: H Date: 8/19/20

NOTICE TO INMATE: Be advised, normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below: SAMs Conditions is unsafe in Covid-19

1. State your complaint (single complaint or a reasonable number of closely related issues): SAMs solitary conditions to gether with my health disability and disability & health condition are very dangerous physically & emotionally psychologically

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits, as exhibits will not be returned with the BP-229(13) response.)

2. State what resolution you expect: SAMs to be lifted or adjusted to normal Supermax conditions for medical and Covid

Inmate's Signature: [signature] Date: 8/19/20

Counselor's Signature: [signature] Date: 8/15/2020

Department Involved: ______ Date Assigned: ______ Due Date: ______

Department's Response regarding Complaint: You are not placed on an SAM by the BOP. This is done by an outside agency. The BOP only houses you according to your SAM. This can not be handled at this level.

Department Head Signature: ______ Date: ______
Unit Manager's Review: [signature] Date: 8/19/2020
Informally Resolved: ______ Date: ______

| | BP-8 ISSUED to Inmate | BP-8 RETURNED to Counselor | BP-9 ISSUED to Inmate | BP-9 RETURNED to Counselor | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 8/15/2020 | 8/19/2020 | 9/11/2020 | 8/25/2020 | 8-21-20 |
| TIME | | | | | |
| COUNSELOR | [initials] | [initials] | [initials] | [initials] | [initials] |

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

CO, D-19 & Deggra.on

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostofu, K. Mostofo   6749504   H   ADX CO.
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

**Part A- INMATE REQUEST** The Typed answer (attached) Does not address my extreame vulnerability to Covid-19 as severely disabled in solitary and have almost all the underlying hazardous health conditions all recorded! And that it will be already Too late once I catch the virus! The provided medical advice is wrong and unscientiffic Designation should be changed

8/20/20   _____
DATE   SIGNATURE OF REQUESTER

**Part B- RESPONSE**

Received
AUG 2 5 2020
Admin Remedy Office

_____   _____
DATE   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE   CASE NUMBER: 1043331-F1

_____

CASE NUMBER: _____

**Part C- RECEIPT**
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____   _____
DATE   RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN   PRINTED ON RECYCLED PAPER   BP-229(13)
APRIL 1982

A.322

Case No. 1:20-cv-00694-PAB-SKC   Document 61-43   filed 12/18/23   USDC Colorado   Page 37 of 108
Case 1:04-cr-00356-AT   Document 61543   filed 12/18/23   Page 37 of 108   pg 66
of 69

FEDERAL CORRECTIONAL COMPLEX
FLORENCE, COLORADO
INFORMAL RESOLUTION FORM

*Notice to Inmate: Inmates have the responsibility to use this Program in Good Faith and in an Honest and Straightforward manner.*

Inmate Name: Mostafa v. Nesta Fa   Reg. No.: 67445-051

Unit: 11   Date: 8-13-20

NOTICE TO INMATE: Be advised, normally prior to filing a Request for Administrative Remedy, BP-229(13), you must attempt to informally resolve your complaint through your Correctional Counselor. Please follow the steps listed below: Designation to ADX not suitable for covid-19

1. State your complaint (single complaint or a reasonable number of closely related issues):

(If more space is needed, you may use up to one letter size (8 1/2 x 11) continuation page. You must also submit one copy of supporting exhibits, as exhibits will not be returned with the BP-229(13) response.)

2. State what resolution you expect: I would like A Dx Designation

Inmate's Signature: _____   Date: 8-13-20

Counselor's Signature: _____   Date: 81-19-2020

Department Involved: _____   Date Assigned: _____   Due Date: _____

Department's Response regarding Complaint: See attached response on back of page

Department Head Signature: _____   Date: 8/20/20
Unit Manager's Review: _____   Date: _____
Informally Resolved: _____   Date: _____

| | BP-6 ISSUED to inmate | BP-8 RETURNED to Counselor | BP-9 ISSUED to inmate | BP-9 RETURNED to Counselor | REMEDY CLERK |
|---|---|---|---|---|---|
| DATE | 8/13/02 | 8/19/702 | 8/20/2020 | 8/25/2020 | |
| TIME | | | | | |
| COUNSELOR | | | | | |

FCC 1330.18C   Administrative Remedy Program   Attachment 1

A.323

Your placement at the ADX is deemed appropriate at this time. The ADX currently does not have any cases of COVID-19. In the event you develop symptoms, please notify staff promptly to conduct an assessment. Health services follows guidelines provided by the CDC and will manage your condition and symptoms appropriately based on guidelines.

8/20/20

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

*CE. 'ID-19  And  SA 1*
*G8 attached*

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: Mostofa K. Mostafa    67495-054    H    ADX-CO
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A– INMATE REQUEST**  The answer is Too general and does not address my health and Safety Under SAMs Confinement in covid-19 dangerous Time. My disability and underlaying multiple hazardous to Covid-19 are well documented and simply mean that SAM isolation imposed is A de-facto of Death sentence illegal and immoral by ADX and SAMs

8-20-20
DATE

SIGNATURE OF REQUESTER

**Part B– RESPONSE**

Received
AUG 2 5 2020
Admin Remedy Office

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

FIRST COPY: WARDEN'S ADMINISTRATIVE REMEDY FILE    CASE NUMBER: 1045247-F1

CASE NUMBER: _____

**Part C– RECEIPT**
Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN    BP-229(13)
APRIL 1982

**BP-229 RESPONSE**                                         **Case Number: 1043331-F1**

Your Request for Administrative Remedy dated August 20, 2020, and received in the Administrative Remedy office August 25, 2020, has been reviewed. Specifically, you state that your underlying health conditions combined with COVID-19, your housing assignment, and the Special Administrative Measures imposed against you, places you at risk of death. You do not request a specific form of relief.

A review of the issue raised in your Request for Administrative Remedy has been conducted. The results of the review revealed this issue was addressed via Administrative Remedy Number 1043247-F1. You have provided no new information that warrants further review.

Accordingly, your Request for Administrative Remedy is closed as repetitive. In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a    BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.


B. True, Complex Warden                                        10/7/2020
                                                               Date

**A.326**

**BP-229 RESPONSE**                                    Case Number: 1043247-F1

Your Request for Administrative Remedy dated August 20, 2020, and received in the
Administrative Remedy office August 25, 2020, has been reviewed. Specifically, you state
that your underlying health conditions combined with COVID-19, your housing
assignment, and the Special Administrative Measures (SAM) imposed against you, place
you at risk of death. You do not request a specific form of relief.

A review of the issue raised in your Request for Administrative Remedy has been
conducted. The result of the review revealed that the SAM has been appropriately
imposed against you. Further, you are appropriately housed and are managed in
accordance with Institution Supplement 5321.07(3)(J), Special Security Unit (H-Unit).
Your housing assignment is based on security and custody needs and in accordance with
Program Statement 5100.08, Security Designation and Custody Classification Manual.
Finally, The Bureau of Prisons is taking extraordinary measures to contain the spread of
COVID-19 and treat any affected inmates. We recognize that you, like all of us, have
legitimate concerns and fears about the spread and effects of the virus. However, your
concern about being potentially exposed to, or possibly contracting COVID-19, does not
currently warrant a change in your housing assignment.

Accordingly, this response to your Request for Administrative Remedy is for informational
purposes only. In the event you are not satisfied with this response and wish to appeal,
you may do so within 20 calendar days of this response by submitting a BP-230(13) to the
Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway
Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

B. True, Complex Warden                                10/7/2020
                                                       Date

United States Government

## memorandum

*United States Penitentiary*
*Administrative Maximum*
*Florence, Colorado   81226*



te:          August 20, 2018

om:          A. Oliver, Language Specialist

:            Mostafa, Kamel   #86552-083

**BJECT:      Rejection of Outgoing Letter, Inmate Mostafa, K. #67495-054**

e attached letter marked by SIS staff as 18-043-006-O has been denied by the FBI due to unapproved
rd-party communications.   In the letter, you tell your family to not tell a third party that you love and
ss him because it is against the rules.   This statement is considered to be a violation of the SAM,
:ouraging your family to relay a message to other people who not currently on your approved list of
horized contacts.

e letter is being returned to you.   Received Wed 8-22-78

**A.328**

173

Cell 511



**U.S. Department of Justice**
Federal Bureau of Prisons

Federal Correctional Complex
Florence, Colorado
☒ *Administrative Maximum Security Institution*
☐ *High Security Institution*
☐ *Medium Security Institution*
☐ *Minimum Security Institution*

January 26, 2021

MEMORANDUM FOR:     ALL CONCERNED

FROM:                            B. True, Complex Warden

SUBJECT:                       Inmate Mostafa, Kamel Reg. No. 67495-054

Effective with the issuance of this memorandum, inmate Mostafa, Kamel Reg. No.
67495-054, will not be required to be rotate cells every 90 days while housed in H-Unit.

Until such time as another cell can be adapted to accommodate his specific medical
requirements, Mostafa will remain in cell 511. However, the cell and all personal property
will be thoroughly searched, at a minimum of once every thirty days.

Cell sanitation will be maintained and all contraband must be controlled. Staff will provide
Mostafa with adequate supplies to ensure he is able to keep the cell clean and complies
with institutional sanitation requirements. At no time will Mostafa be allowed to
accumulate excessive or unauthorized property. If there is a question in regards as to
what is authorized property, staff will consult the Operations Lieutenant, Unit Team,
and/or Health Services staff to determine if it is allowable.

**U.S. Department of Justice**          Central Office Administrative Remedy Appeal

**Federal Bureau of Prisons**

Ex-0136
Covid - Kitchen

Type or use ball-point pen. If attachments are needed, submit four copies. One copy each of the completed BP-229(13) and BP-230(13), including any attachments must be submitted with this appeal.

From: _Moston - K. Mostofa_   _67495-054_   _H_   _ADX - CO._
        LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

Part A - REASON FOR APPEAL Unfortunately, again Regional office is not well informed about the reality. Nor addressed the issue that the Diet is very clear that Food should be opened, free from any plastic and replaced in any eat containers; as it is dangerous otherwise for me. Till now, most of the items are only partially opened! and not replaced in any easy eaten Containers. Such is still compelling me to use my already very abraded teeth to open or complete the open. And now, is very hazardous in covid-19 time; as I am in solitary, disabled and deprived frozen help and disabitity items to open pouches or clean,

11-02-20
DATE                                     SIGNATURE OF REQUESTER

Part B - RESPONSE

RE:

NOV 1 6 2020

Administration Rec
Federal Bureau

_____
        DATE                                     GENERAL COUNSEL

ORIGINAL: RETURN TO INMATE                CASE NUMBER: _1032022-A1_

Part C - RECEIPT                          CASE NUMBER: _____

Return to: _____
        LAST NAME, FIRST, MIDDLE INITIAL   REG. NO.   UNIT   INSTITUTION

SUBJECT: _____

_____
        DATE            🌐                SIGNATURE OF RECIPIENT OF CENTRAL OFFICE APPEAL

USP LVN              A.330                                    BP-231(13)
                                                              JUNE 2002

193

Ex. 13 - C2

COVID - Kitchen

Central office reply to none

— Compliance with food died notes

and hazardous to COVID

Using teeth to open packages

(even after the reply Kitchen &
most staff never complied)!

$EX.13$ $C_2$    FOOD — WAY & COVID

**Administrative Remedy Number 1005228-A1**
**Part B - Response**

This is in response to your Central Office Administrative Remedy
Appeal where you raise issues regarding food trays and how your meals
are delivered to you at the ADX. You state your meals are to be opened
and the food items placed in different containers, and this does not
happen. You claim some of the containers are only partially opened
and you have to use your teeth to open them. You also claim the food
items are mixed with each other, making some of your food messy,
slippery and unusable." You request the rules be followed regarding
your meal trays.

A review of your appeals reveals, due to your physical limitations,
you have a Medical Duty Order from the Health Services Department
in regards to your meals. Specifically, all packaged religious diet
food will be opened by Food Service workers in a certified foods
kitchen, and placed into easy access containers. This office has
confirmed that staff at the ADX are aware of this accommodation. If
this is not occurring or you encounter other issues with a specific
food tray, it is suggested you advise staff at that time, so the matter
can be immediately addressed and/or the food tray exchanged if
necessary.

This response is provided for informational purposes.

_____
Date   10/12/20

_____
Ian Connors, Administrator
National Inmate Appeals

(EX. 13 D)

175

Re: food in fragmented food trays
as in 9/20/2020

→ No Compliance with Door note
Jan 23, 2020

→ Threats to issue Tickets against p/f
if he ask for help or to
record the violation in food.

→ Example of punishment Ticket
by Deft Loewi & Dft Norgan

Urgent food safety Matters Persist

To Kitchen Manger                    Tue 9/22/20

From Mostafa #67495-054 (Disable)

Hello, as you are aware of the medical notes stuck to my door about the format of my diet,

All prepackage food should be removed from plastics and placed in other easy safe container,

However, the hot food Kosher tray is now one of the still most dangerous items not removed from its hard plastic tray and also, provided covered with another 2 layers of plastics. Which very difficult to negotiate safely.

Furthermore, and even worse when it is over heated it does fragment into different sizes sharp razors plastics and mixed with the food. And when I ask the officer to replace it they refused to comply with the note on the door. Much worse some, like 9/20/20 afternoon watch try to excuse me of twisting and fragmenting the tray, and when I push the Duress button to get help or get the tray filmed by unit camera they give me a ticket as → punishment! And I always then loose Meals.

→ I done many Complains and request before.
        → Requested Urgently

Could you please, until I am approved with my utensil for disability. Could you plese, comply with the Medical note and place the hot food tray Content inside another Container without any plastics or fragments

thank you — Repectfully I/M

A.334

*Exhibit 95 - Att-8  10/11*

*page 55A*

*2 of A*

BP-229 Response                              Case Number: 1024696-F1

*( Fully Exhausted Remedy ) No Relief,*

Your Request for Administrative Remedy dated May 29, 2020, and received in the
Administrative Remedy office on June 4, 2020, has been reviewed. Specifically, you are
appealing the denial of your placement into Phase III.

A review of the issue raised in your Request for Administrative Remedy has been
conducted. The results of the review revealed that outside law enforcement agencies did
not consent with approving your Phase III placement. You were denied placement into
Phase III because additional time is needed to determine whether you can function with
additional privileges without posing a risk to institutional security and good order; posing
a risk to the safety and security of staff, inmates, or others, including yourself; and/or
posing a risk to public safety. We encourage you to continue to participate in and
complete all programs recommended by Unit Team; demonstrate positive behavior,
including respectful and appropriate conduct towards staff and other inmates; and
demonstrate an overall positive institutional adjustment to include, but not limited to,
personal hygiene, and cell sanitation. You will be reviewed for placement in the next
phase, ordinarily six months from your current review, providing you continue to meet
the eligibility requirements identified in Institution Supplement 5321.07(3)K, Special
Security Unit.

Accordingly, your Request for Administrative Remedy is denied. In the event you are not
satisfied with this response and wish to appeal, you may do so within 20 calendar days of
the date of this response by submitting a BP-230(13) to the Regional Director, Federal
Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor,
400 State Avenue, Kansas City, Kansas 66101-2492.

B. True, Complex Warden                    Date  7/2/2020

*Requested to Compete
With able inmate,
without help or Tools*

*55A*
**A.335**

U.S. Department of Justice
Federal Bureau of Prisons

Regional Administrative Remedy Appeal

(215)

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Mostafa K. Mostafa    67495-054    H    ADX CO
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

Part A – REASON FOR APPEAL  Respectfully to avoid repeat and save space, I reserve and incorporate all issues raised in my BP8 & BP9 and elaborate following:

1- The reason for feet infection was wrongly over ruling the 2013 Regional office decision to be trimmed by podiatric every 6 weeks and should be restored now to avoid repeat.

2- The reason for arm/stumps infection is the faulty prosthetics provided in 2013. Accordingly, making similar one is not the solution, let alone without supervision closely by specialized in double upper amputee occupational therapist.

3- See the contradictions of the medical reports saying "he is not use his prosthetics enough" then later "he should not use/over use them"! All provided things are not for my disability type. —Most.

8-8-22
DATE                                          SIGNATURE OF REQUESTER

Part B – RESPONSE

DATE                                          REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.
FIRST COPY: REGIONAL FILE COPY                    CASE NUMBER: 1126017-R1

Part C – RECEIPT                                   CASE NUMBER:

Return to:
LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION
SUBJECT:

DATE                          SIGNATURE, RECIPIENT OF REGIONAL APPEAL
A.336
USP LVN                                            BP-230(13)
                                                   JUNE 2002

Medical Dept.                    Thursday June 30-16
Mostafa  #67495-054  Unit-H
Kamel

Re: Multiple charging for Chronical Conditions

I have been charged for Toe nails Clipping and other
Chronical Conditions more than 7 times. I wrote to
legal dept. for Correction and refund but they said
- it has to be through your dept.

Please stop Charging for any Chronical or disability
related matters and refund the Sum.

(thanks)

United States Penitentiary
Administrative Maximum (ADX)
Health Services Department          Y. Fetterhoff, MRAS (ADX)
5880 State Highway 67 South         Florence Correctional Complex
Florence, CO 81226                  Florence, CO 81226

Also, answer my request 3 wks ago to obtain my medical
records including Occupational Therapist Draft report and
final one too       (thanks)

per the co-pay policy, everytime you request to
be seen by medical regardless for what (to include
chronic issues and conditions), you will be charged
a co-pay. Only Health Service's initiated encounters
will not be charged a co-pay. Since you have been
at the ADX, you have been charged a co-pay 3 times.
not 7.              VF
No refunds will be given back to you.

A.337

Case No. 1:20-cv-00694-PAB-SKC   Document 244 - filed 01/11/23   USDC Colorado   pg 172 of 279



Image: HARAC via Zakka de Happy

## Squeeze Only

The biggest difference between the Casta and typical scissors is in the handle. Instead of the loops where fingers go, there are two pads with springs. Now a person can hold the scissors in their palm or fingers and thumb. Springs between the pads then make it so the user only has to do a squeezing motion.

A.338

I tried to make copies for you but I never received
one of my original copies back nor the copies
so I only have one left for the court if this issue
is not resolved fairly to me and my grieving family.
However, I am sure with the details above you can
easily obtain the papers from ADX, SAMs records.

Respectfully, Accordingly, could you please
help to mitigate the harsh SAMs & its misuse by
helping me with the following:

(1) Allow me 2 extra calls per a month
to have a meaningful conversation with members
of my family (I now have less than 5 minutes per a
month per a person and have to repeat to every
one many sentences as they are all worried asking
the same questions about me and no group hearing allowed)

(2) Restore the visiting forms found by FOIA
or approved visitors so I have some visits i.e
(for now till the other forms found) please add Marwa,
Othman and Yassir

(3) Allow me please to write two letters
per a week 5 pages (10 sides). Please note that I did not
write for almost 18 month as many get lost and I had
before to write in small font to fit the 3 pages as well as
many of my children get upset when there is no enough
or any for them in the letter which can take up
if it reach at all. Please advise/help    Respectfully
                                    I/M    Noshi 11-03-2021

page 3 of 3 (or 2 of 3)

A.339

...vidence...

...nd exhausted remedy work of ever receiving any
the "missing" Family Visiting requests! and accordingly
-ly cleared my wife and one of my daughters (Marium)
Visitors (who can not travell on their own) and thus
never had a single visit since extradited from U.K
October 06, 2012. though I use to have one or two
Visits weekly by three adults & 3 children each visit in
J.K. The FOIA proved the misuse of several
known & unknown SAMs operatives and their harmful
unprofessional lies.

Though all my family sent their signed and
detailed visiting forms (including sent more than once)
only two of my large family forms were acknowledged
and approved. I have a wife, 7 boys, 2 girls, 11
grandchildren and 3 siblings.
Some of their visiting forms and approvals were
included in FOIA as follow: (I need the send to foia again
regarding the rest)

① SON Othman Mostafa : FOIA ID
      BOP FOIA # 2017-00239
      204 of 363
② SON Yassir Mostafa : BOP FOIA # 2017-00239 - 208 of 363
③ Daughter Marwa Mostafa : BOP FOIA # 2017-00239 - 205 of 363
④ Example of ADX ⇒ SAMs exchanged E-mail approving
   Marwa in 2017 : BOP FOIA # 2017-00239 - 298 of 363

And hopefully more to come as evidence of the same above.
(page 2 of 3)
PTO →

A.340

Page 01 of 03

To: Mr. Willms Esq. Legal Dept.                      Wed. Nov. 03, 21
From: I/m Mostafa  # 67495-054          11 - 5 11

Subject(s): Last week 3 requests, And Advice Needed Re:
                    FOIA New Evidence of Misuse of SAM

            Dear respected Mr. Willms,
                Hello, I prepared 3 requests to give you last
Week during round. However, our respected Counselor
Mr. Holbrook took the envelope to give you, did you
recieve it or replied?
        The requests were about;
            →(a) to help arrange with ADX staff to allow
me print and compile files from my criminal case discovery
to use in my civil claim, as discussed with madam Prise Esq.
after the court conference call 10/25/2021.
            →(b) Regarding to continue the arrangement of a
allowing me to keep paper work (extra legal volumes) as
arranged pre to your arrival to ADX (see details there)
            →(c) To provide me with the last two page of my
both cases; New York and civil one because it appears that
my last motion to both courts are missing.
        Accordingly, Kindly advise regarding last week 3 requests.

* Secondly Regarding New evidence of Misuse of SAMs
        against me and my family I have just received from
    Bop FOIA in respond to my request on 2017
Request Number: 2017-00239. And I received October 18, 2021
from sis Mr. Twis - 363 pages. And among many, it included

(page 1 of 3)
A.341                                                    PTO →

Jan 16, 2020

TO: The Honorable Michael E. Hegarty
United States Courthouse
901 19th Street, Suite A542
Denver, CO. 80294-3589.

FROM:
Mostafa. K. Mostafa
Reg No. 67495-054
US penitentiary Max
P.O. Box 8500 8550
Florence, Co. 81226.

Subject: Letter Motion Pro Se.

Letter Motion seeking to stop And Investigate The continuous.
Mental And Physical Abuse And Misuse Of SAM
Against The Sick And Disable Inmate: Mostafa

TO: (Hon) Judge Michael Hegarty.
Dear respected Judge Hegarty,

1.      Thank you very much for your repeated visits to unit
H in ADX, which I am housed in Cell 511 or 300.

I am the 61 Yr old severely disabled (No hands) which
your honor patiently listened to my concern & pain-
ful daily physical and mental stress due to combination
of solitary confinement, my physical and anxiety
impediments, and lack of many essential; filthy,
items and help to be (safe) clean and unstressed.

2.      If it was not due to your fairness and hardwork
I would have missed many of your visits, as we are
never told the exact month / week. However, Today for
the first time I was told about your intended next Fri-
day visit, by Dr powdery.

3.      Accordingly, and to optimize your honor time and
purpose of visits, I feel in object need to file this
letter motion because I suffered enormously since
your last visit. Some of this suffering were only
because your honor's recommendations were ignored

**A.342**

4. Also, during any over seven yrs under SAM without
essential clothing, items or help, and getting injured almost
weekly, I was repeatedly told that I should not make
"Oral" Request(s) for relief before I exhaust all my remedy,
no matter what dangerous my situation is.

   But then when all remedy exhorted I was then aked
to tell my attorney to write to ADX, which she did
a lot and never received any reply or even acknowled
-gement (I have copies of her e-mails and letters)

   Please also See Exhibit A (a list of some of the
remedies & many more available)

5. After all that, I was denied any relief from ADX or
any consideration to ease my physical and stress
and I was told bluntly and repeatedly by unit-
manager Ms. Fotitmunde "See you in court" &
"take up to court"

6. And while my teeth pain, for being forced to open
all pouches and plastics, became unbearable,
and my stumps were badly abroded, red very sore
and bleeding at the least push or scratch, I was
told to pack up again and move to the more harm
-ing cell 300 (your honor reccommended after see
-ing my injuries several time, that I should stay in 511).

7. I asked to be moved to anywhere else to prevent
further injuries and the contagious endless stress
and anxiety knowing that I could be injured and further
disabled at any time, but the management insisted
eventhough the respected new Warden Mr. True
agreed to use his discretion to keep me in cell 511
but I have to write to him, which I did but to no
avail (please see Exhibit C 5pgs)

8. As I was moved to Cell 300 and many of my property
damaged and some trashed, in OCT 19, 2019 I started food strike.

A.343    2.

For the first time in my life (16 yrs in prison). Mainly
to have a psychological break, stumps and teeth
respite / break

9- As i was asked repeatedly to eat i also asked
to have my essential utensils for my disability to
eat safely and hygienically unstressed.

   And to be treated as a disable & sick inmate
not just an "able inmate in a disable cell "

10 - I was force fed several times and physically
assaulted by three member staff & threatened,
attacked, injured and bled badly.
   Please see Claim Ten in Exhibit B.

11 - I was promised help in my daily tasks, food i
can eat and open etc. so I ended my food
strike after 47 days on Dec 05, 2019.
But nothing materialized till now; not even a
note on the door that this inmate needs help in
opening pouches and the many food inside the
many thick plastics of the Jewish and Muslim tray.

12 - I do need the same break for my psychology, teeth
and sore stumps as I sought it and felt it during
my food strike; it was the much lesser of the
two pains. But after the deception and broken
promises and the persistance of misuse the SAM
to use my disability against me to destroy me
physically and mentally, I belief my next food
strike would be very prolonged till the law is
followed and the cruel abuse, misuse of SAM and
management deliberate harm &/or indifferend cease.

13 - I had to launch a civil case with the Catalogue
of abuse and hazardous conditions I am forced in,
which I am enclosing here Ten claims in Exhibit B
I hope Your honor could see there in the cumulative

**A.344**

continuous and compelling harm to my physical and
mental status, as well as their entanglement
with other issues like legal & family's issues let alone
the fact that I am aging in a demizing conditions of
detention.

14. More evidence and authentications are available
when needed.

15. Conclusion And request:

Your honor? fairness and prudence are urgently
needed to:

(a) stop the abuses and misuse of SAM

(b) Provide decisive judgement to prevent
more injuries and hazardous condition
of detention

(c) Appoint an impartial special advocate to
re-evaluate the exaggurations given to
place the SAM first place and (flimsy excuses
to renew it (please see Claim one Exhibit B)

(d) To restore the American nation's image
and credability when giving assurances to
foreign courts/countries to secure extradit-
ions, as they did in my case for 8½ years
litigation

(e) Provide any relief possible from the relief
Sought in the last page of Exhibit B.

(f) If an attorney is needed to furnish the honorable judge
with more/better presentation, please appoint one.

Thanks                        Respectfully Submitted
                              I/M Mostafa K Moskah
A.345      signed:  _____    01-16-20.

Judge Hegarty Motion Jan 16, 2020

# Exhibit B

Copy of the Ten Claims Sent
To District Court Denver Re:

# S.A.M & A D X Abuses

(35 pages)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

Plaintiff,

v.

MERRICK GARLAND, United States Attorney General, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
TUTOILUMUNDO, ADX Unit Manager, in his official capacity,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her  individual capacity,
LOEWE, ADX officer, in his  individual capacity,
NORJANO, ADX Officer, in his  individual capacity,
CHOROSEVIC, ADX Occupational Therapist, in his individual capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
WILLIAM, ADX Nurse, in his individual capacity,
HUDELSTON, ADX Nurse, in his individual capacity,
STERETT, ADX Doctor,  in his individual capacity,
ARMIJO, ADX Lieutenant, in his individual capacity, and
EDWARDS, ADX Officer, in his individual capacity.

Defendants.

## Fourth Amended Complaint

## I.  THE NATURE OF THE ACTION

1.        The Plaintiff is a 64-year-old civil engineer, who was well-known as the imam of a

mosque in Finsbury Park, London in the United Kingdom ("UK").  The Plaintiff was convicted,

and sentenced to life imprisonment for allegedly inspiring others to resist the wars in

Afghanistan, Yemen, and other Muslim countries at war with the United States.  The Plaintiff

1

**A.347**

was severely disabled in 1993, losing both hands up to his mid-arms, leaving him blind in his left eye, and with poor vision in his right eye.  At the time, the Afghan resistance was fighting against the Soviet Union, not the United States.  The Plaintiff then returned to the UK to be with his wife, nine children, and grandchildren (he now has 11), who are all British.

2.      Prior to his trip to Afghanistan, the Plaintiff had worked as a civil engineer, and designed several large construction projects, including the Royal Military Academy Sandhurst, which is used by the British military.  However, upon his return from Afghanistan, beginning in 1994, the Plaintiff began preaching at the Finsbury Park Mosque (FPM), where he was named as the imam of the mosque.  The FPM was closed by the UK authorities in January of 2003, due to concerns that the FPM was "radicalizing" its members to oppose the UK's wars in Muslim countries.

3.      The Plaintiff continued to lead prayers on the street in front of the closed mosque, until he was arrested and put in the Belmarsh prison in the UK on May 27, 2004.  The Plaintiff was charged and convicted of inciting violence and racial hatred in the UK after the United States designated him a terrorist and requested his extradition. After an eight-year legal battle, the Plaintiff was extradited to the United States to face additional charges arising from the content of his speech.  His extradition was at first denied by the European Court of Human Rights, until officials from the U.S. Department of Justice made assurances to that court that the Plaintiff would not be held in the ADX "administrative maximum security" prison in Florence, Colorado on account of his disabilities.  After he was extradited, the Plaintiff was convicted, sentenced to life imprisonment, and placed in the ADX for the rest of his life.

4.      The Plaintiff's conditions of confinement in the ADX have at times been unique and unlike any other prisoner held in the United States.  The Defendants built a special cell in the ADX to prevent the Plaintiff from ever communicating with other inmates, although now he is

2

**A.348**

allowed to do so.  The Plaintiff is severely disabled, having lost both arms in 1993, with no vision in one eye, and poor vision in his remaining eye.  The Plaintiff's cell was designed for a person in a wheelchair, and doesn't accommodate his disabilities.  Nor does he have prosthetic devices that allow him to attend to the basic funcions of life, such as eating and cleaning himself. He is not allowed to pray with other Muslims, and has no reasonable access to <u>halal</u> food that accomodates his disabilities.  The Plaintiff suffers from two different kinds of discrimination, based on his religion and his disabilities.

## II.  JURISDICTION AND VENUE

5.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, based on the Religious Freedom Restoration Act, 42 U.S.C. § 2000bb <u>et seq</u>., the Civil Rights Act of 1871, 42 § U.S.C. 1983, based on violations of the First, Fifth, and Eighth Amendments of the U.S. Constitution, the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), and the Administrative Procedure Act, 5 U.S.C. § 500 <u>et seq</u>.

6.      The Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(2), for claims relying on the theory in <u>Bivens v. Six Unknown Named Agents</u>, 403 U.S. 388 (1971).  The Plaintiff  is a citizen of the United Kingdom.  The <u>Bivens</u> Defendants are citizens of various U.S. states.  The amount in dispute between the Plaintiff and each <u>Bivens</u> Defendant exceeds $75,000.

7.      This Court has personal jurisdiction over Defendants.   Defendants Parry, Averit, Garduno, William, Hudelston, Sterett, Armijo, Edwards, Follows, Chorosevic, Loewe and Norjano are alleged to work at the ADX prison in Colorado, and on information and belief, reside in Colorado.  The remaining Defendants  Garland, Wray, Carvajal, True, Tutoilumundo, Macmillan,  are sued in their official capacities as officials of the Department of Justice, which controls every aspect of the ADX prison and the Plaintiff's situation.  On information and belief each is a resident of a state of the United States.  There is general personal jurisdiction over all

**A.349**

46.     The Plaintiff is not allowed to pray with an imam or with other prisoners, to wash before praying, and is served <u>kosher</u> meals instead of <u>halal</u> meals, preventing him from exercising his religious beliefs, and discriminating against him on account of his religion.   Some of these conditions have changed over time, or are authorized in the SAMs but not allowed in practice.

47.     The Plaintiff exhausted his administrative remedies, a process reviewable under the standards in 5 USC § 706 of the Administrative Procedure Act.   According to the Defendants, the Plaintiff "has filed no fewer than 423 individual administrative remedies and appeals of those remedies."  Defendants' Motion for Partial Summary Judgment at 3 [Doc. 102].  The Defendants only challeged the exhaustion of several of Plaintiffs' First Amendment claims.  <u>Id</u>.  However, Plaintiff has no burden to exhaust his legal theories, and need only complain about the conduct of the Defendants that is at issue.

## V.  DEFENDANTS' VIOLATIONS OF LAW

48.     Defendants' actions violate, and Plaintiff's causes of action arise from, the following laws:

(a)     The Religious Freedom Restoration Act, 42 U.S.C. § 2000bb <u>et seq</u>.

(b)     The Rehabilitation Act, 29 U.S.C. § 794(a);

(c)     The Civil Rights Act, 42 U.S.C. § 1983;

(d)     The United States Constitution;

(e)     The Administrative Procedure Act, 5 U.S.C. § 500 <u>et seq</u>.;

(f)     Common law of the United States of America;

(g)     Statutes and common law of Colorado;

(h)     The US-UK Extradition Treaty; and

(i)     The UK Human Rights Act.

## VII.  CAUSES OF ACTION

**A.350**

49.     With respect to all of the causes of action described below, the harm to Plaintiff was caused by the acts or omissions of Defendants.  Numerous individuals are sued in their official capacities, even though they all work for the Department of Justice, because they are believed to have had a role in the conduct or policies at issue in this case.  The Defendants conspired and aided and abetted each other in ways unknown to the Plaintiff, and most have <u>respondeat</u> <u>superior</u> liability, as agency officials, for the conduct of those working for them.

### First Cause of Action

**Violation of the Religious Freedom Restoration Act, of 1993,
42 U.S.C. 2000bb  <u>et seq</u>., asserted against Defendants Garland,
Wray, Carvajal, and True, in their official capacities.**

50.     The Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein.

51.     The Plaintiff is a Muslim and the former Imam of a mosque in London, England.

52.     The restrictions placed on Plaintiffs' communications prevent him from attending worship services or praying with other prisoners, substantially burdening the Plaintiffs' practice of his religion.  As the Plaintiff explains in more detail <u>infra</u> at ¶¶ 60-61, group prayer is totally prohibited in the H Unit of the ADX prison, where the Plaintiff is housed.  The Plaintiff has never been allowed to pray with other Muslim prisoners since he was transferred to prisons in the United States, including the ADX, Metropolitan Correctional Center ("MCC") or Federal Medical Center in Missouri ("FMC").  This is in contrast to the Belmarsh Prison in the United Kingdom, where the Plaintiff was previously incarcerated and allowed to pray with other prisoners.

53.     After the Plaintiff arrived in the United States, he was kept in complete isolation, and wasn't allowed to communicate with any other prisoners between 2012-2015.

**A.351**

54.     In October of 2015, the Plaintiff was for the first time allowed to go to "rec."  This refers to "recreational time," which is spent in a cage next to five other prisoners in similar cages. Beginning October 18, 2019, the Plaintiff was allowed go to "rec" approximately once per week. At some point, this was reduced to once every two weeks.  The Plaintiff wasn't allowed to leave his cell at all between the periods of November 14, 2020 - January 29, 2021 and October 15, 2021 - November 5, 2021.  The Plaintiff has not been to "rec" at all in the past three months. This is due partly to the Defendants' restrictions, and partly due to the Plaintiffs' health problems.

55.     The Plaintiff has asked for the rec time to be used for group prayer.  There are many other Muslim prisoners in the H Unit of the ADX, where the Plaintiff is housed.  However, group prayer has never been permitted.  Moreover, when recreational time is allowed, it is scheduled for times between 7AM-11AM, which doesn't include any of the 5 times per day Muslims are supposed to pray.  Only a small change to the schedule would cause it the rec time to coincide with one of the prayer times.  The Defendants refusal to accommodate group prayers is an arbitrary and unreasonable restriction on the prisoners' practice of their religion.

56.     Muslim prisoners should also be allowed to make a row, or rows, while facing in the direction of Mecca.  The Defendants arbitrarily placed the recreational cages facing in a different direction.  A change in orientation of 45 degrees or less would allow the Muslim prisoners to make either two rows or three, or three rows of two.

57.     Although no photographs of recreational cages in the H Unit are available, since the H Unit is used for Muslim prisoners, the Defendants should have alternative means that are readily available to accommodate the prisoners' right to group prayer.  The Defendants could reserve one or another of these types of cages for one of the Muslim prayer times on Fridays, and allow the prisoners to choose whether to use their rec time this way, and decide amongst themselves which

**A.352**

of them will lead the Friday prayers.  This would place a <u>de minimis</u> burden on the Defendants to alter the rec schedule, not requiring any additional staff, or impacting on any legitimate penological interest in any way.

58.     When the Plaintiff was in Belmarsh prison in the UK, he had daily prayers with other prisoners, weekly prayers with other prisoners on Fridays, and two additional *Eid* prayers, all of which were held in person, in groups.  At times, the Plaintiff was asked by the prison managers to lead Friday sermons, when the prison's Imam wasn't available.  The Defendants don't need to provide an Imam, though, since any Muslim prisoner could lead the prayers.

59.     For some period of time, the Plaintiff was allowed monthly visits by an Imam while at the ADX, for three to five minutes each.  In March 2020, these visits were stopped altogether and have not been resumed.  [Doc. 43-1 at 11 ¶ 12]   These visits are a poor substitute for group prayer, which is essential to the religion of Islam.

60.     A connection with the *ummah*, or community of Muslims, is essential to the religion of Islam.  [Doc. 43-1 at 11 ¶ 12].   The Plaintiff's SAMs state that: "c) Inmate Communication Prohibitions - i)  You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate, visitor, attorney, or anyone else, except as outlined and allowed by this document, that could reasonably foreseeably [sic] result in you communicating (sending or receiving) information that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) threatening or other terrorism-related information. ii)  The USMS/BOP/DF may permit you to communication with other SAM inmates orally only during certain predesignated times, the place and duration to be set by the USMS/BOP/DF.  You shall not have any physical contact with other inmates during

**A.353**

this predesignated time and all such predesignated sessions may be monitored and/or recorded."
[Doc. 169-1 at 6, ¶ (1) (c)(ii)].  Nevertheless, the Plaintiff has never been allowed to pray with
others.  Nor has he observed any other prisoners in the ADX engaged in group prayer, during
recreational time, or at other times.  According to the Plaintiffs' January 6, 2022 SAMs, which
are currently in force, "5) **<u>Religious Visitation</u>**   a) If a USMS/BOP/DF- and/or FBI-approved
religious representative is to be present for prayer with you, the prayer shall be conducted as part
of a contact or non-contact visit, at the discretion of the USMS/BOP/DF."  [Doc 169-1] at 16.
(emphasis in original)  The Defendants have never had to use this discretion because they have
never approved any such visit or even group prayer among the prisoners.  The Plaintiff worked
as an *Imam* and could lead the prayer, or another Muslim prisoner could lead the prayer.  The
Defendants don't need to provide personnel to lead the prayers.

61.     Courts have recognized the right of prisoners to group prayer.  See <u>Lindh v. Warden</u>, Fed.
Corr. Inst., 2013 WL 139699 Case No. 2:09-cv-00215-JMS-MJD (S.D. Ind. Jan. 11, 2013).  So
have the Defendants themselves.   BOP Program Statement 5360.09, Religious Beliefs and
Practices, requires the Defendants to provide prisoners with "reasonable and equitable
opportunities" to pursue their religious beliefs.  But instead of providing equitable opportunities,
the Defendants discriminate against Muslims and unfairly associate the religion with terrorism.

62.     In addition to being unable to participate in group prayer, the failure to provide <u>halal</u> food
in a form that is accessible to the Plaintiff substantially burdens his practice of his religion.
Serving the Plaintiff <u>kosher</u> food instead, puts substantial pressure on the Plaintiff to modify his
behavior and violate his beliefs.  <u>Halal</u> meals are available generally, but the Plaintiff had to
choose <u>kosher</u> over <u>halal</u> because the <u>halal</u> food is packaged differently and delivered in a

different type of tray that the Plaintiff is unable to use.  A reasonable accomodation would be for the Defendants to serve the Plaintiff <u>halal</u> food packaged the same was as the <u>kosher</u> food.

63.     Specifically, the tray used to serve <u>kosher</u> food is half the height of the tray used for <u>halal</u> food, and is easier for the Plaintiff to scoop from.  The Plaintiff wants to eat the <u>halal</u> meals, but the way they are served makes them too difficult to eat.  The different types of food trays appear arbitrary and serve no legitimate penological interest.   The Defendants have failed to accommodate the Plaintiff's disability by forcing him to eat food prepared according to a different religion.

64.     In addition, the Plaintiff is denied feast meals related to his Islamic faith.  [Doc. 43-1 at 11 ¶ 12]  He should be provided with feast meals for *Eid*.  The Plaintiff's religion requires that he eat meat for these meals.  The Defendants would not give the Plaintiff a Passover meal, even though the dates for Passover meals, which are provided for a week to Jewish inmates, coincides with one of the <u>Eid</u> festivals.  The Defendants' failure to provide a meal with meat on *Eid* places a substantial burden on the Plaintiff's practice of his religion.

65.     Due to the restrictions imposed by the Defendants, the Plaintiff cannot wash himself "after toilet to pray his minimum 5 times" and "always soil his cloths and area in trying." [sic] [Doc. 43-1 at 11 ¶ 12].  The Plaintiff's religion requires that he wash himself before praying.  The poor hygiene afforded to the Plaintiff serves no legitimate penological interest, burdens the Plaintiff's exercise of his religion, which need not be compelled by, or central to, his system of religious belief in order to be protected.

66.     These conditions must be considered in their totality, and are not pled as individual claims.

**A.355**

Plaintiff's alleged role in supporting terrorism, and exaggerates the dangers of Muslim terrorists over persons committing similar acts, who are motivated by other reasons.  Even the Plaintiff's infant grandchildren are considered dangerous.  This is due to a discriminatory animus which the Defendants have institutionalized.

95.     The Defendants have failed to consider ready alternatives that fully accommodate the prisoner's rights, at <u>de minimis</u> costs to valid penological interests, such as changing the times for prayers, the orientation of the cages, or packaging <u>halal</u> meals the same way as <u>kosher</u> meals.

96.     The Defendants have failed to properly balance the impact on prison staff, on the Plaintiffs' liberty, and on the allocation of limited prison resources, including the costs of litigating issues that should be resolved at the administrative agency level.  The Defendants' responses to requests and appeals pursuant to the Administrative Remedy Program don't make use of any legal analysis, cite any laws, or the facts relied on to make decisions.  Whatever factors the Defendants take into account in processing these requests are left unstated.  The overwhelming majority of them are denied without explanation, placing the burden on the Court to review handwrittten complaints and no legal analysis or reasoning to use as a starting point. Most of them are <u>Bivens</u> actions because that is the theory suggested in the Defendant's prisoner complaint form.

### Fifth Cause of Action

**Violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a), against Defendants Garland, Wray, Carvajal, and True, in their official capacities, for failure to provide reasonable accomodation for Plaintiff's amputated arms.**

97.     Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein.

98.     The Americans with Disabilities Act ("ADA") and the Rehabilitation Act ("Rehab Act") apply to prisoners in state and federal prisons, respectively.  They are treated identically in the

25

**A.356**

law, except that the ADA has an additonal requirement that the Defendant receive federal funds. The relief provided by the two statutes is coextensive.  See  Barnes v. Gorman, 536 U.S. 181, 189 & n. 3 (2002); Morris v. Rumsfeld, 420 F.3d 287, 290 (3d Cir.2005); Washington v. Ind. High Sch. Athletic Ass'n, Inc., 181 F.3d 840, 845 n. 6 (7th Cir.1999).   For this lawsuit, the analysis governing each statute is the same.  See  Cutter v. Wilkinson, 544 U.S. 709, 716 n. 4 (2005); Jaros v. Ill. Dep't of Corr., 684 F.3d 667, 672 (7th Cir. 2012).

99.      The Plaintiff is disabled within the meaning of the Rehabilitation Act because two of his arms were amputated, he lost sight completely in one eye, and has problems with cataracts and very poor vision in his other eye.   These physical impairments substantially limit many of the major life activities of the Plaintiff, and qualify as disabilities under § 103 of the Rehabilitation Act.   See 29 USC § 705.   Although the text of the Rehabilitation Act speaks in terms of employment, it also applies in the prison context, but instead of being a substantial impediment to employment, a disability must be a substantial impairment to major life activities.   Lacking both arms and being nearly blind are two different disabilities, neither of which have been reasonably accomodated by the Defendants.

100.    The Plaintiff is qualified to participate in the Defendant Bureau of Prisons' programs for inmates, because he is incarcerated in a federal penitentiary, which must accommodate his disabilities so that he can participate in all of the programs and activities available to other prisoners.   See Wis. Cmty. Serv. v. City of Milwaukee, 465 F.3d 737, 746 (7th Cir.2006); Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir.2004); Grzan v. Charter Hosp. of Nw. Ind., 104 F.3d 116, 119 (7th Cir.1997).   Refusing to make reasonable accommodations is tantamount to denying access.   Although the Rehabilitation Act doesn't expressly require accommodation, "the

Supreme Court has located a duty to accommodate in the statute generally." Wis. Cmty. Serv., 465 F.3d at 747; Alexander v. Choate, 469 U.S. 287, 300–01 (1985).

101.    Although incarceration isn't a program or activity, the meals and showers made available to prisoners are.  Jaros v. Ill. Dept of Corrections, 684 F.3d 667,672 (7th Cir. 2012);  Cassidy v. Ind. Dep't of Corr., 199 F.3d 374, 375 (7th Cir. 2000); Crawford v. Ind. Dep't of Corr., 115 F.3d 481, 483 (7th Cir. 1997); Shomo v. City of New York, 579 F.3d 176, 185 (2d Cir. 2009); Kiman v. N.H. Dep't of Corr., 451 F.3d 274, 287–88 (1st Cir. 2006).  In addition, the basic necessities of life, like opening food packages, eating, washing, using the toilet, brushing teeth and hair, cutting toenails, cleaning the cell, or even leaving the cell when allowed, are all made unreasonably difficult by the Defendants, who fail to accommodate the Plaintiff's disabilitites.

102.    The Plaintiff isn't dangerous to other inmates, either physically or otherwise.  The Plaintiff has an excellent disciplinary record during more than ten years in prison.  See School Bd. of Nassau County v. Arline, 480 U.S. 273, 287 (1987) (holding that a person who poses a significant risk to others is not "otherwise qualified" for the activity, establishing a four-part test for determining whether a contagious disease constitutes such a risk); 42 U.S.C. § 12182(b)(3).

103.    The Plaintiff is excluded from, is not allowed to benefit from, or has been subjected to discrimination in the BOP's programs because he doesn't have adequate prosthetic devices or access to prison facilities and programs that accommodate his diabilities.

104.    All of the prison officials and the governmental agencies named as Defendants receive federal funding.  See ¶¶ 8-19 supra.

105.    According to the Bureau of Prisons' regulations, the Defendants are required to provide a reasonable accomodation for the Plaintiff's disabilities.  "Accommodation needs vary from person to person, and therefore must be individualized. If an accommodation is needed, it will be

**A.358**

provided by the department that verified the disability. When a determination is made that an inmate's needs go outside the scope of the department, different professions must work collaboratively to meet the needs of the inmate. For particularly complex cases, accommodations are determined by a team comprised of a psychologist, medical provider, educator, recreation specialist, unit manager, reentry affairs coordinator, and captain. This team is led by the Associate Warden, Programs, whose responsibility is to serve as the local coordinator on disabilities. Legal staff are consulted as needed. A social worker is part of the team if the position is filled." See Management of Inmates With Disabilities, BOP Program Statement 5200.05 at 8 (2017).  Reasonable discovery will determine how these determinations were really made.

106.    The Defendants have also failed to provide any of the accomodations listed in BOP Program Statement 5200.05.  It says "Accommodations may include, but are not limited to, accessibility of all relevant areas of the compound, assistive devices or technologies, specialized approaches to learning, interpreters, additional time to complete tasks, modified materials (e.g., large print), enhanced reentry planning, and inmate companions. Information about accommodations authorized for a particular inmate is documented by the department approving them, and a notification is sent to the Unit Team." Id. at 9.  See Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980) (prisoner bedridden by a back injury alleged that prison staff failed to provide him a wheelchair, forcing him to drag himself along the floor); Maclin v. Freake, 650 F.2d 885, 889 (7th Cir. 1981) (paraplegic prisoner alleged that he had not received physical therapy for nearly a year after entering prison).

107.    The Defendants' failure to provide adequate prosthetics for the Plaintiff's arms impairs his abilities to perform actions that involve the management of basic bodily functions, which are

**A.359**

considered Activities of Daily Living (ADLs) in the Defendants' regulations.   Id. at 2.   See Plaintiffs Pro Se Motion for TRO at 6 [Doc. 39].

108.   The Plaintiff was provided with adequate prosthetics when he was in the Belmarsh prison in the UK.  However, about six years ago, the Defendants sent the Plaintiff's prosthetics to their facility in Maryland, which lost or destroyed them.  The Plaintiff went almost nine months without any prosthetics at all, from September 13, 2016, through April of 2017.

109.   After nine months, the Defendants provided new prosthetics.  However, the prosthetic arms provided by the Defendants are made of a material that causes the Plaintiff's arm stumps to become inflamed and swell.  They should be made of similar materials to the prosthetics used by the Plaintiff in the UK, which didn't cause this reaction.

110.   Due to skin irritation problems, the Plaintiff can only use his prosthetics for 10-15 minutes at a time.

111.   The prosthetic arms provided by the Defendants aren't waterproof.  The inside of the prosthetics are blackened and contaminated, which is dangerous because the Plaintiff's arm stumps have protruding bones not covered by flesh, which are susceptible to infections.  The Plaintiff has had to have further amputations of his arms due to these infections, which were treated when he was in the MCC in 2013, but have not been treated while the Plaintiff has been in the ADX.

112.   The prosthetic arms provided by the Defendants don't have adjustable holding fingers, allow different pressures to be applied, or allow different contact surfaces on the fingers.

113.   The Plaintiff is unable to hold toilet paper with prosthetics provided by the Defendants. Since the Plaintiff uses the same prosthetic fingers for everything, the contamination of the prosthetic fingers with feces is unhygenic and potentially dangerous to the Plaintiff's health.

**A.360**

114.    When the Plaintiff explained this problem to Defendant Chorosevic (an occupational therapist) on February 16, 2022, Defendant Chorosevic responded "use your stumps to hold the toilet tissue then."  Defendant Chorosevic knows that the Plaintiff's arms are amputated, and that he cannot reach this part of his body with his arm stumps, but is indifferent to the Plaintiff's suffering.  On information and belief, Defendant Chorosevic has no experience with double upper amputees, since this disability is uncommon or unique in the ADX.

115.    The prosthetic arms provided by the Defendants have holding fingers that are sharp and can cut the Plaintiff if he is not careful.

116.    The prosthetic arms provided by the Defendants don't have elbow hinges, so that he cannot adjust the angle, or control them like other types of prosthetic arms that Plaintiff has had. The new prosthetics also require a lot of strength to operate, and are difficult to use.  Some prosthetics are motorized, but the Plaintiffs' are not.

117.    The Plaintiff wasn't allowed to participate in the design of the new prosthetics, nor would the Defendants ever allow the Plaintiff a visit by an occupational therapist of his choice, as demanded by his lawyers.  Instead, the persons provided by the Defendants were unqualified to design the prosthetics, and have been indifferent to the fact that they don't work properly.

118.    The Defendants have also failed to provide dental care, or an electric, prosethetic toothbrush the Plaintiff can use. Id.  This has caused the Plaintiff to lose many of his teeth due to infections.  The Plaintiff has lost all his lower back teeth, two of his top back teeth, and suffered severe abrasions to his front teeth and gums, because he is only able to open packets by using his stumps to hold the item and his teeth to rip it open.  [Doc. 43-1 at 24 ¶ 5].

119.    The Defendants serve the Plaintiff food in packages that he is unable to open except by using his teeth.  Id.  The Plaintiff is at greater risk of contracting covid because of this, and

because he has to put these packs in his mouth after they have been touched by prison staff.  Id. at 18.  The Plaintiff fears that once his remaining teeth are gone, he will not be able to open the packages.  A reasonable accomodation would be to package the food differently, or to provide the Plaintiff with a prosthetic tool for opening the packages.

120.    The Plaintiff's persistent, untreated dental infections put him at greater risk of contracting a serious case of covid-19 or other illnesses.  The Defendants have persistently refused to provide antibiotics or other treatments for the Plaintiff's dental infections.  When he was housed in the MCC in NY until February, 2015, PA Ramos treated the Plaintiff's infections, which have gone untreated or have been inadequately treated since the Plaintiff has been housed in the ADX. The dental work done by dentists in the Belmarsh prison in the UK has been damaged and destroyed over time, and has not been replaced.

121.    The Plaintiff also needs a soap pump to attend to his basic hygeine and keep himself clean.  Id.  The levers on the sink and shower in Plaintiff's cell should be designed to take Plaintiff's disabilities into account, so that he can operate them without injuring himself or flooding his cell..

122.    The Plaintiff is unable to trim his toenails, and has cut himself and developed infections of his toes.  Id. at 15.  At the present time, the flesh behind both of the Plaintiff's big toes is infected and painful.  The Plaintiff has Type 2 Diabetes, and fears that infections of his toes could lead to amputations of his toes or feet.  The dangers of covid-19 may are compounded if the Plaintiff has to fight two infections at once.  The Defendants ignored Plaintiffs' requests for assistance with his toenails and infections for 9 1/2 months, demonstrating an attitude of indifference.  See Leach v. Shelby Cnty. Sheriff, 891 F.2d 1241, 1243 (6th Cir. 1989) (inmate

**A.362**

with paraplegia not bathed for several days despite danger of a recurring ulcer, forced to lie in own urine due to a lack of catheters, and receiving insufficient aid for bowel training needs).

123.     The Plaintiff has difficulty tying his shoelaces with the prosthetics provided.   The Plaintiff also has difficulty putting on his socks. As a result, the Plaintiff only changes socks about once every ten days, and wears them to the shower.   An occupational therapist noted this issue with the prosthetics in 2013, but this has never been adequately addressed.

124.     The Plaintiff was completely deprived of glasses for two lengthy periods of time.   The second occasion lasted nearly nine months, from October 2020 through August of 2021.   The Defendants' slowness in replacing the Plaintiff's glasses demonstrates the poor quality of medical care he has received.   The Plaintiff's near blindness, even with glasses, compounds his other disability.

125.     Due to the restrictions imposed by the Defendants, the Plaintiff cannot properly comb his hair, is provided no suitable hairbrush, cannot safely shave, and is unable to cut his own hair, and is denied haircuts for months on end.  [Doc. 43-1 at 11 ¶ 12]  The Defendants' denial of any way for the Plaintiff to brush or cut his hair serves no valid penological interest.   The Defendants don't regularly cut the Plaintiffs' hair, or allow him to cut it himself.

126.     The Defendant's failure to provide a hairbrush means that the only tool the Plaintiff has to brush his hair is a toothbrush.  The Plaintiff has an old toothbrush for this purpose, although the bristles aren't strong enough to penetrate all of his hair.  The Plaintiff normally uses water and compacts his hair with his arm stumps to arrange it.  The Plaintiff cannot maintain a beard or make himself presentable due to the Defendants' restrictions.

**A.363**

127.    In 2018, the Defendants provided the Plaintiff with a hair brush.  However, the handle was removed for security reasons.  The Plaintiff was able to use this until some time in 2020, but it could not reach the back of his head.  The Plaintiff no longer has access to a hair brush.

128.    The Plaintiff also needs to trim the hair under his arms and pubic area to adhere to his religious practices, but has no way to do this.  This should be done on a monthly basis, at least.

129.    The Defendants have failed to provide other reasonable accomodations, including a plate, tray and spork designed for an upper amputee.  Id. at 8.  These accomodations were recommended by the Defendants' occupational therapist when the Plaintiff was imprisoned in the Metropolitan Detention Center in New York in 2013.  Id. The occupational therapist also recommended providing the Plaintiff with assistance with cleaning his cell and bedding.  Id.  The Defendants also refused to take into account the recommendations made by an occupational therapist in the United Kingdom.  Id. at 11-12.

130.    In response to Plaintiff's attorney's requests to provide Plaintiff with the essentials of daily care, an evaluating Occupational Therapist visited the Plaintiff in 2013.  In making her recommendations, the occupational therapist incorrectly assumed that the Plaintiff could make his own bed, open condiment packages, required no assistance in opening or drinking fluids safely, and required no additional help or items for cleaning assistance.  [Doc. 43-1 at 22 ¶ 4].

131.    Notwithstanding the Occupational Therapist's assumptions, the Plaintiff has to use his bare arm stumps to collect garbage from and clean his cell, which takes a long time and results in injuries, abrasions, sweating, and fatigue. [Doc. 43-1 at 22 ¶ 5].  Similarly, the Plaintiff has great difficulty changing his bedding with the prosthetics he has. [Doc. 43-1 at 22 ¶ 5, 24 ¶ 5].  Instead of providing the Plaintiff with reasonable accomodations to clean his cell and arrange his bedding, the Defendants have required the Plaintiff to clean his cell and arrange his bed without

**A.364**

adequate tools.  The Plaintiff doesn't have appropriate prosthetic fittings that can be used for these tasks.  Id. at 9.

132.    The Plaintiff's medical chart requires that his cell and bed must be cleaned and changed daily because of his skin problems and hyperhidrosis, and because abrasion causes his arm stumps to bleed.  [Doc. 43-1 at 24 ¶ 5].  The Plaintiff is unable to do this by himself.

133.    The Occupational Therapist nevertheless recommended that adaptive equipment, shower grab bars, a disability-friendly food tray, plastic plate, and fabricated utensils be provided; and other personal grooming items be provided to the Plaintiff until his criminal trial was finished.  [Doc. 43-1 at 24 ¶ 7].  None of the foregoing items have ever been provided to the Plaintiff, either during the criminal trial, or since.  Id.

134.    In February 2015, the Plaintiff was assessed by another occupational therapist while he was temporarily housed at the Federal Medical Center in Missouri.  [Doc. 43-1 at 25 ¶ 10]. This assessment lasted less than ten minutes and, despite numerous requests, the Plaintiff has never been provided with a copy of her report.  Id.  He was never seen or assessed by this occupational therapist again.  Id.

135.    On April 15, 2016, while housed at ADX, another occupational therapist assessment was conducted.  [Doc. 43-1 at 25 at ¶ 11]. This assessment was only twenty-two minutes in duration and was conducted under extreme duress.   Fourteen other ADX officials from various departments, including the legal, medical, and food departments, were present for the assessment.  Id.

136.    That occupational therapist concluded that "because [Plaintiff] has prosthetics and can open a peanut butter jar he does not need anything from the list of fitting and items he requested from ADX."  Id.  Unknown to the Occupational Therapist, an ADX officer had loosened the

**A.365**

peanut butter jar so that the Plaintiff could open it.  Id.  Nevertheless, the ability to open a jar of peanut butter doesn't show that the prosthetics are adequate for the Plaintiff's needs or a reasonable accomodation of his disability.

137.    Aside from failing to address the Plaintiffs' issues managing basic bodily functions, the Defendants have failed to consider their own rules that prohibit housing disabled prisoners in isolation.  "Peer support, such as inmate companions, are considered at institutions housing inmates with disabilities." Id. at 9.

138.    Compensatory damages and attorneys fees are available for Rehabilitation Act claims, in addition to injunctive relief.  29 U.S. Code § 794a.

## Sixth Cause of Action

**Violation of § 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a),
against Defendants Garland, Wray, Carvajal, and True, for failure to provide
adequate facilities, including accomodations to his toilet, shower, sink and table.**

139.    Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein.

140.    In 2015, the Defendants built a special cell in the ADX for the Plaintiff, which was Cell #300.  The Plaintiff was then transferred to the ADX from the Federal Medical Center in Missouri where he had been temporarily housed.

141.    Cell #300 is dark and has dangerous, sharp edges.  It has no windows, so no sunlight can get in.  The Plaintiff is blind in one eye and has poor vision in the other.  The Defendants failed to accommodate the Plaintiff's failing vision, which qualifies as a disability on its own, by providing a cell with adequate light.  This cell, like others at the ADX, was designed to allow only a minimum amount of sunlight to reach the prisoner.  However, the Plaintiff's poor vision requires that he be provided with a reasonable accomodation.

**A.366**

142.    In 2017, the Defendants built Cell #511 in the ADX.  Cell #511 has a window to allow light in, but was designed for a person in a wheelchair.  The Plaintiff has no arms, and is not in a wheelchair.  The Defendants then moved the Plaintiff from Cell #300 to Cell #511, after two years of being incarcerated in the darkness.

143.    The sink, shower and toilet in Cell #511 do not accommodate the Plaintiff's disabilities. The buttons have sharp edges and are too difficult for the Plaintiff to push with his prosthetics. The Plaintiff has to press the buttons directly with the bone from one of his arm stumps, which are not covered with flesh.

144.    Reasonable discovery of the Plaintiff's medical records will show that in 2007, while in prison in the UK, the Plaintiff developed a serious bone infection from similar activities, resulting in further bone amputation.  After this incident, the UK authorities had only allowed the use of "lever faucets" and "U shape outlets" to prevent further bone injury.  The Defendants are aware of this, but indifferent to it, denying Plaintiff's administrative remedy requests and not responding to his attorneys' letters.

145.    The Plaintiff needs an upward water stream from the toilet in order to clean his rectum. This is required for hygiene as well as the Plaintiff's religion, which requires its adherents to clean themselves before praying.  The only water stream in the cell points downward, from a height of about four feet, and is not a reasonable accomodation for a double upper amputee.

146.    The toilet in the Plaintiff's cell is difficult for him to flush and doesn't have a lever that the Plaintiff can easily use.  This contributed to an infection of one of Plaintiff's arms, and a further amputation of it.

**A.367**

147.    At times, the Plaintiff's inability to control the shower has resulted in flooding of the Plaintiff's cell because he was unable to turn the water off.

148.    The shower has a safety rail at the level of a person sitting in wheelchair, which is too low to be used by a person standing up.

149.    The Plaintiff needs a larger table that he can use to arrange and move objects, and often has to use his mouth to lift objects, which is unsanitary and dangerous during the pandemic.  In October of 2021, apparently in response to the Plaintiff's Administrative Remedy Program requests and letters from his attorney, the Defendants increased the size of the Plaintif's table, but refused to move it closer to the sink.  The new table is located such that the Plaintiff has to sit on the toilet to use it.  This is demeaning and unhygenic, and more in the nature of retaliation than a genuine effort to accommodate the Plaintiff's disabilities.

150.    Cells #300 and #511 are both near steel gates that open every 30 minutes and make a lot of noise, resulting in the Plaintiff's perpetual state of sleep deprivation.  Although this might appear unintentional on the part of the Defendants, it is yet another condition of confinement that distinguishes the Plaintiff from other prisoners, and a type of punishment not authorized by law. The Plaintiff formally complained about this through the Administrative Remedy Program.

151.    The U.S. Department of Justice issued prison and jail-specific ADA regulations in 2010. 28 C.F.R. § 35.152.  These regulations require prisons and jails to, as a general rule, place disabled prisoners in the most integrated setting appropriate to their needs.  The Defendants have failed to consider these regulations, or weigh them properly in determining Plaintiff's housing needs.  The Defendants placed the Plaintiff in a cell which isolates him from other prisoners and prevents him from ever communicating with them.

**A.368**

173.    Defendant True ignored the Plaintiff's requests for an investigation, and provided only vague, general responses to the Plaintiff's grievances concerning the assault.  Defendant True raised the ticket to the Regional DHO.

174.    Defendants not only ignored Plaintiff''s request to investigate and report the incident, but also ignored his attorney's letters about it.  Id.  Reasonable discovery will show who determined whether or not to investigate the incident.

175.    The Plaintiff's subsequent administrative grievances concerning the October 28, 2019 assault yielded only vague responses.  Id. at 20.  On information and belief, the Defendants never even investigated the incident.

176.    During the same time period as the hunger strike, the Plaintiff didn't receive any toenail trimmings, from March 2019 until January 13, 2020, when Defendant Hudelston used a tool from his pocket to crudely cut them, causing bleeding and some pain.  As explained supra, the Plaintiff can't trim his own toenails, and frequently suffers from toenail infections as a result. These infections are particularly dangerous because of the Plaintiff's Type 2 Diabetes, which could eventually result in the amputation of his toes.  The Plaintiff was told by Defendants Chorosevic, Sterett and Follows that his toenails would not be trimmed until he ended the hunger strike.  This type of punishment is not authorized by law.

177.    In addition, Defendant Tuttoilmundo confiscated or denied the Plaintiff access to his clothes, legal documents, religious books, and other items during the hunger strike.  [Doc. 43-1 at 36].  This was retaliatory and served no legitimate penological purpose.

178.    The Plaintiff's force-feeding and forced intraveneous hydration during the hunger strike were medical treatments not authorized by the Plaintiff.  The Defendants had a duty to obtain the Plaintiff's informed consent, which they never obtained.  The Plaintiff was cited for refusing to

obey orders when he wouldn't eat, and for when he tried to pull out the IV tubing in another incident on November 21, 2019.  See [Doc 98] at 53-54.  Forced medical treatments violate many U.S. and European Union laws.

179.    The Plaintiff's hunger strike was a form of symbolic speech.  The Defendants' reaction to the hunger strike was retaliatory and intended to discourge hunger strikes, even though the Defendants have no legal authority to force a prisoner to eat, or to force-feed them.  Force-feeding is a medical intervention to which the hunger striker doesn't consent.

180.    The Plaintiff was deprived of a constitutional right at the hands of these federal officials, who are sued in their individual capacities pursuant to Bivens v. Six Unknown Named Agents, 403 U.S. 388 (1971).

181.    The Plaintiff has no other legal remedy available to him.  He has exhausted his administrative remedies with respect to this claim.

182.    No special factors or immunity defenses can be raised to defeat the claim.  For this claim, the officials were acting under color of law, but did not have the discretion to violate the Plaintiff's constitutional rights by physically assaulting him.

183.    As a result of the physical injuries he received, the Plaintiff also suffered emotional distress.  Plaintiff's injuries were more than de minimis.  See Schultz v. Pugh, 728 F.3d 619, 621 (7th Cir. 2013)

### Eighth Cause of Action

**Violation of Eighth Amendment for deliberate indifference to medical needs, asserted against Defendants Follows, Hudelston, Sterett, Loewe, Chorosevic and Narjano, in their individual capacities.**

184.    Plaintiff incorporates by reference all of the preceding paragraphs as if set forth herein.

**A.370**

185.    The Defendants' failure to provide adequate dental care, including an electric toothbrush, has led to infections and the loss of many or most of the Plaintiff's teeth.

186.    The Plaintiff has to open food packages with his teeth, further damaging his teeth.

187.    The Defendants' failure to provide adequate foot care, or including trimming the Plaintiff's toenails, resulted in infections of his toes.

188.    These infections of Plaintiffs' teeth and toes are especially dangerous because of the covid pandemic.  The Plaintiff has contracted covid-19 in the ADX at least once, most likely from interacting with ADX staff.

189.    From 2005 until his admission to ADX in 2015, the Plaintiff was able to control some of his medical conditions without medication through a specific diet. [Doc. 43-1 at 28 ¶¶ 1-2]. Upon his entry at ADX, he has been denied this medical diet, despite repeated and renewed requests for the same, id. at 29 ¶ 4, leading to deteriorating health and, since 2017, dependence on pharmaceutical medications to treat his symptoms.  Id. at 28 ¶ 3. The Plaintiff's blood pressure is now very high, his skin cracked and bleeding, and he is plagued with constipation, blood sugar fluctuations, and excessive sweating.  Id. at 29 ¶ 3.  The Plaintiff has psoriasis and hyperhydrosis (overheating) of the skin, Type 2 Diabetes, and has had high blood pressure for 20 years.  [Doc. 37-1 at 5].  His request for a "proper diet: salad, tomatoes" [Doc. 43-1 at 39 ¶ 6], is essentially a request that his diet include vegetables, which are necessary for proper nutrition.  A reasonable interpretation of the word "food" in the case law should be understood as referring to nutritious food appropriate for the Plaintiff's medical conditions, including diabetes and high blood pressure.  [Doc. 37-1 at 5]  The Plaintiff should be allowed out of his cell to exercise.

190.    In response to one of the Plaintiff's Administrative Remedy Program requests, the Regional Office of the Bureau of Prisons determined that Plaintiff's food should be opened

**A.371**

D. STATEMENT OF (CLAIMS)

Claim Nine, page Two : - in Alexandria, Egypt.)
—————————————— only Two are cleared for
Visits so far The Two who can not Travel alone ! and
never had any visits since extradited.

3 - 45 minuts of calls allowed per a months and to
speak at one person at any time which is less than
2 min./months per a person in a very stressful
Conditions

4- four of the plaintiff sons are excluded from any
communications, and all but one of all grand child-
-ern are also excluded from any Contacts (the oldest is
6 yrs old)

5- The real cycle of a letter and its answer is 6 months
Go working days to send and to to recieve week ends and
holidays is Not counted Thus only Two meaningful letters
per a year for a successful informative mail. No e-mail
permitted.

6- Every opportunity is Sieged by SAM operatives to add
restrictions, cancel calls or renwew the SAM every year
dishonisly. For instance but not limited to : in 2018 the

"D. STATEMENT OF CLAIMS"

Claim Nine, Page Three: The plaintiff wrote to one of his sons who was depressed at the time for not being able to write or talk enough with the plaintiff (or visit) saying:
"... but don't tell him (his one yr old son) that I love him and miss him because it is not allowed" the SAM operatives, desperate to renew the SAM for 2019 using any trick, acknowledged the phrase but said they understood it as "tell him !.." and said it was an attempt to contact third party (the plaintiff one year old grandson) and used it to renew the 2019 SAM in page Three. Similar dishonesty in previous years.

7- The plaintiff showed the paper work, photos of his grand son to the visiting respected federal judge (Hon.) M. Hegarty and he honorably and openly didn't agree with such misuse of SAM and thankfully noted the stress endured by the plaintiff and his family from this behavior and unnecessary exaggeration

8- Thus, the plaintiff and his family hardly write now and know that the very little allowed communication is but stressful, bad faithed and entrapment.

For the above, the Defendants to be sued in their:
✓ official and ✓ personal capacities [END of Claim Nine]

D. Statement of Claims

Claim one, page 04:

as severily disabled (all in records) in need of constant help, fittings and items and medical daily visit. All that denied by SAMs since extradition 2012.

The FBOP claims to have made "special-needs" living environment in order to accommodate the Plaintiff's disability by turning indoor Storage room(s) into "disability cell(s)". However, the disability essentials for a double amputee upper and vision impaired are never accommodated; every thing is for a Lower double amputee or a wheel Chair one. And one of the cells has no natural light. Existing fitting & solitary compel the plaintiff to be injured and further impair himself physically and mentally as the are No toilet for double amputee upper, no continuous water in sink or shower, no safety rail upper level, mirror, table to eat and write near the sink and right size, no utility shelves or cloth hanger and other mitigating help.

Moreover, None of the essential items to carry out daily task, safely and hygienly Such as: No disability Utensils, Cuttlary suitable hair brush. electric tooth brush, disability bedding sheets, Soap bump and many others mentioned in Remedy requests. and denied because of the SAMs and/or FBOP-ADX policies. The plaintiff is Treated as any other fit Young inmate Self Sufficient

A.374

D. Statement of Claims

Claim Two, page 05 (Dental & nails care)
But the most painful
physical pain (non stop) is the ADX policy
of not allowing any dental work or replace
damaged work done prior to ADX. Such as but not
limited to: Bridges, Crowns, implant ...etc.

The plaintiff can not use any dentures
by the confirmed nature of his disability and has
lost all the Dental work he had in England prior to
SAMs & ADX as well as three of lower Back
teeth due to being forced insolitary to open
strong Punches of fish, pologmie and other food
plastic packages (all documented), to the extent
that some teeth nerves could be seen from abrasive
eccessive work and no longer can eat on back teeth
as all lower Jaw empty.

Yet all ADX dentist repeatedly explained to
plaintiff and in record that ADX policy afford no
repair (Accordingly no pair Rehef or help)
not even allowed more than once a year cleaning
nor plaintiff allowed electric/Flossing Brush to clean
his teeth like all other able inmates. Thus continuous
Pain, no proper cleaning or any help/relief.

As for toe nails trimming it is not regular and
sometimes, like last year, had to wait 14 months to have it
done after many complaints and food strike. Causing severe
pain difficult to walk and extreme hazard for a diabetic to
potential cause yet another amputation lower part this time!

A.375

D. Statement of claims

Claim One page 05   SAM's operatives violations
for mail are too many, repeated and has nothing
to do with security, just bullying plaintiff and his
family .. Such as, but not limited to: rejecting mail and
renewing SAM in 2019, because plaintiff wrote to his son:
" don't till Ahmed (1 yr old grand son) that I love him, its
not allowed "  SAM operatives called plaintiff's
one year old grand son: "Third party" and that I really
Mean to till him "I love you". See Ex-A item 15
and items 12→18 For other misuse of SAMs Mail and
retaliation for food strike ...

12- SAMs Religious violations in general and particularly for
plaintiff mount to spiritual soul torture, prolonged and has
nothing to do with security such as: because of Solitary and
deprivation of items, fittings or help: i- Can't cleanse after
toilet to pray his minimum 5 times. ii- always soil his cloths and area
in trying. iii- or his teeth & mouth. iv- Comb hair or keep a long
beard as no suitable hair brush, soap, pump. v- Can't remove
hair from private area & under arms and injures himself when
try to use razor and can't report cuts as it will not be provided
again (Razor). vi- Sometimes no hair cuts, like in covid
time For many months, then only provided for able inmates who
Can cut their own (discrimination too). vii- No Imam for
4 yrs in ADx then when employed only visits 3-5 minuts a month
in average (not seen since March this year). viii- no communal
prayer even once a week or a year (compulsory). ix- No feast
meals allowed according to Islamic faith. Also see Ex-A: 21→23.

D. Statement of Claims

Claim Four, page 02 :     Rep # ADx O.T Malpractices.

4- In answer to plaintiff's Trial attorney's many requests 2012 To provid the essentials for daily care, Ncc Newyork provided evaluating OT, Ms. Deots. And She visited in March 27, 2013, and during the visit she entered the cell alone and made Mal practice assumptions still harming plaintiff to date such as, but not limited to, "The bed was made" and concluded plaintiff therefore does not need help in that, And "small packets of condiments were open", and he does not need help in opening or making drink safely ... .

Same in other visits in April 2, 2013 and Final visit in April 16, 2013. also, concluded in "assumption that" no need for help or items for cleaning because the cell was clean !

5- She made the above and other assumption and conclusions without discussing any with plaintiff : How things were made? is it done by causing harm? safe or hygiene? how often could be done? or needed? How long could it be done Long /short term harm? And the rest of the "must be followed practice" in any O.T Text book chart and assessments. For instance : The Cell was clean as she entered it 2 days after the 21 days Cell move and was cleaned by the moved inmate out of his Courtessy. For plaintiff to do it, he has to use his bare stumps to collect the garbish /clean and takes hours, injuries and abrosion, sweatings and Fatigue. And can only be done in parts equal to once in 45 days. poor cleaning,

The same with the bed because of stumps abrasion and elect- rostatics she did not see or comment about the blood on the sheet. To date 2020 the plaintiff only change his bed once every 2 months

**A.377**

D. Statement of facts

Claim Four page 03.

While it is clear in his medical chart for 8½ yrs that his cell and bed must be cleaned and changed daily because of the skin problems, and hyper hydrosis and stumps bleed when abraded.

6 - Also, she new but did not record, that plaintiff has to open any packet by the use of both stumps as one holder and his teeth as the opener. The result to date the loss of all lower back teeth, 2 of the top back teeth, severe abrasion to front teeth and gum and the loss of all dental work done in England without any replacement by BOP.

7- However, she acknowleged in her report very few of the manifested injuries in plaintiff's body and made some reccomendations to mitigate them such as: (i) "skin integrity is poor, both stumps are" redness and swelling of the left limb appear to be improving (ii) "healed red marks were observed on his lower left limb." [sock] material slips out of his hook metal cuts his skin" (iii) Difficult, unsafe eating from pointorays

8- She reccomended items never delivered to date as.
(a) to be provided with suggested adaptive Equipment
(b) Sock Aid/help to put on socks without damaging his skin
(c) Grab bars in shower (high level)
(d) to be provided with food tray and plastic plate (for dis balance and safety), and eating fabricated untensils.

9- Other provided only untill trial finshed then taken back, to date such as:(i) Pen with rubber grip (ii) suitable hair brush (iii) soap pump.

A.378

D. Statement of ~~BS~~ Claims

Claim Four page 04:
10 - Federal Medical Center Missoury O.T Assessment
plaintiff was moved there to be "Thoroughly" assessed for
suitable designation, in feb 2015 and stayed til moved to
ADX in oct. 2015. O.T there, was only allowed 8½ minutes
with the plaintiff, surrounded by intimidating intruptive staff
for introduction to the assessment program in her chart.
but never seen the plaintiff again nor any assessment was
made, Bop refusing to date to provide any of her report
or comment or how/based on what? the designation
to ADX was concluded.

11 -      ADX  O.T. Assessments April 13, 2016.
                                      Cell 300
Was but 22 minutes of bullying, degradation and chain
of Malpractices.   He entered plaintiff cell with more than
14 staff of multiple ADx Departments; legal, Medical, Food ...
all surrounding plaintiff interfering. He concluded his report
and assessment that because he has prosthetics and can
open a peanut butter jar then he does not need anything
from the list of fitting and items he requested from
ADX.     He, the OT, does not know or asked that
one of the officers losen the jar led for plaintiff.
     And it is clear from O.T text book and ADA
and endless civil cases that this OT. committed multiple
Malpractices and their physical and psychological harm on
plaintiff's daily life are sever and endangering his life
to date, Especially at the urgent needs of hygiene to
prevent the pandemic from harming the plaintiff

**A.379**

# Exhibit 7
# Declaration of D. McMullen

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 20-cv-00694-PAB-NYW

MOSTAFA KAMEL MOSTAFA,

      Plaintiff,

v.

MERRICK B. GARLAND, in his official capacity,
CHRISTOPHER WRAY, FBI Director, in his official capacity,
MICHAEL CARVAJAL, BOP Director, in his official capacity,
B. TRUE, ADX Warden, in his official capacity,
UNKNOWN SAMs OPERATIVES, in their official capacities,
MACMILLAN, ADX Facilities Department, in his official capacity,
FOLLOWS, ADX Medical Department Manager, in her official capacity,
PARRY, ADX Officer, in his individual capacity,
AVERIT, ADX Officer, in his individual capacity,
GARDUNO, ADX Lieutenant, in his individual capacity,
LOWE, ADX officer, in his official capacity,
NORJANO, ADX Officer, in his official capacity, and
WILLIAM, ADX Nurse, in his official capacity,

      Defendants.

---

## DECLARATION OF D. McMULLEN

    I, D. McMullen, pursuant to 28 U.S.C. § 1746, and based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment, hereby declare as follows relating to this case:

    1.    I am the Complex Facilities Manager at the Federal Bureau of Prisons ("Bureau") facility known as the Federal Correctional Complex in Florence, Colorado, which includes the United States Penitentiary – Administrative Maximum ("ADX"). I have held this position since January 2016. Prior to my assuming this role, I worked in the ADX Facilities Department as a General Foreman from January 2014 to October 2015. From October 2015 to January 2016, I was the General Foreman in the high-security United States Penitentiary located on the Complex.

1

**A.381**

I have been employed by the Bureau, in positions of increasing responsibility, since June 2001.

2.      As Complex Facilities Manager, I am responsible for many duties, including, but not limited to, initiating and evaluating proposals for improvements, major repairs, and replacement of facilities across the Complex.  I am familiar with the physical configuration of all buildings on the Complex and the unique safety and security requirements for construction of correctional facilities in general and the ADX in particular.  I have access to records maintained in the ordinary course of business by the Bureau, including technical drawings and blueprints of the facilities across the Complex, including the ADX.  All attachments to this declaration are true and accurate copies of Bureau records maintained in the ordinary course of business.

3.      I am familiar with Mostafa Kamel Mostafa, register number 67495-054, who is incarcerated at the ADX.

4.      In anticipation of Mostafa's arrival at the ADX, then Complex Warden Oliver made Facilities Department staff aware that a handicapped cell was to be constructed in the Special Security Unit, also known as H Unit.  Mostafa is a bilateral amputee missing both hands. As the General Foreman at ADX at the time, it was my responsibility to plan and build the cell according plans approved by the Bureau's central office. I was charge of overseeing the construction of both handicap cells at the ADX.

5.      The decision was made to construct two handicapped-accessible cells in H Unit. In this way, a second handicapped inmate could be accommodated at the same time as Mostafa. In addition, per Bureau practice, inmates are required to frequently rotate cells.  A schematic showing the layout of both cells, cell 300 and cell 511, is attached to this declaration.  *See* Attachment 1.

6.      The cells, which face each other across a central hall, are nearly mirror images of

2

**A.382**

each other.  *See id.*  Both cells are reconfigured indoor recreation areas and therefore contain more than twice the living space of a standard ADX cell.  Cell 300 has 186 square feet, and cell 511 has 192 square feet.  *Id.*  The size of a standard ADX cell ranges between approximately between 77 and 87 square feet. For example, depending on the housing unit, some cells have showers, other units are community based showers.

7.      Both cells comply with the standards set forth in the Architectural Barriers Act, 42 U.S.C. § 4151 *et seq.*, which applies to the construction of Bureau facilities.  In addition to being substantially larger than other ADX cells, cells 300 and 511 have wider doors and larger showers that contain benches and safety grab bars.  Each shower also has two shower heads, one mounted higher in the shower and the other mounted at a lower level.  The lower shower head allows Mostafa to more easily clean the lower half of his body. Each shower head is controlled by a separate button.

8.      The water in ADX cells is normally programmed to run no longer than 1.5 minutes in the shower and 12-16 seconds in the sink.  That limitation complies with water consumption standards to which the Bureau must adhere and also reduces the potential for inmates to flood their cells, which can present a serious security problem.  However, the water in the shower and sink in both cells 300 and 511 has been programmed to run longer, 1.5 minutes in the sink and 3.0 minutes in the shower, to reduce the number of times Mostafa must depress the button[1] for water flow. The toilet flush remains consistent with other ADX cells.  There is no limit to the number of times Mostafa can press the button on his sink and shower.

9.      Each cell contains approximately six square feet of windows and complies with

---

[1] Faucet handles, which can readily be broken to make weapons, cannot be installed at ADX.

American Correctional Association standards for natural light.

10.     I am aware that Mostafa characterizes cell 300 in very negative terms, such as the "dangerous, dark infested cell 300." There is no factual basis for these statements. As I have explained above, the cells are exactly the same in every substantive respect.

11.     One slight difference between the two cells is that the buttons for activating the shower and sink in cell 300 are of the "paddle" type and are marginally larger than the buttons in cell 511. I installed the paddle buttons in cell 300 after Mostafa complained that the original buttons hurt to depress. Later, Mostafa complained that the retrofitted paddles had sharp edges and would subsequently cut him. While I personally examined the original buttons and found no sharp edges, the paddle buttons were installed in an attempt to appease Mostafa. Regardless, Mostafa still prefers cell 511 and has consistently complained whenever he has been asked to do a routine cell change to cell 300, the only other handicapped-accessible cell in H Unit.

12.     In April 2015, during the period when cells 300 and 511 were being constructed, I traveled to the Federal Medical Center in Springfield, Missouri ("FMC Springfield"), to examine the cell where Mostafa was housed at the time. I made the trip to obtain information that might be useful in constructing the handicapped cells at the ADX. A schematic of Mostafa's cell at FMC Springfield is attached at Attachment 2.

13.     I have been made aware that Mostafa claims I said I would "do exactly the same cell at ADX." I would not have made that representation because it would have been impossible to exactly replicate the Springfield cell at the ADX, which is a completely different physical plant.

14.     Regardless, there is no substantial difference between the cell at Springfield and that at ADX. The cell at Springfield had no revisions specifically designed for a person without

4

**A.384**

hands. Furthermore, cells 300 and 511 at the ADX are more spacious then the cell in which

Mostafa was housed at Springfield, which had only 154 square feet of living space. *Compare*

Attachments 1 and 2.

Pursuant to the provisions of 28 U.S.C. § 1746, I declare under penalty of perjury that the

foregoing is true and correct to the best of my information, knowledge, and belief.

Executed on this May 26, 2021, in Florence, Colorado.

/s/ *D. McMullen*
D. McMullen
ADX Florence
Federal Bureau of Prisons

**Attachments:**

Attachment 1:  Schematic, H Unit cells 300 and 511
Attachment 2:  Schematic, FMC Springfield cell

**A.385**

# McMullen Declaration – Attachment 1

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)



A.387

# McMullen Declaration – Attachment 2

*Mostafa v. Garland, et al.*,
No. 20-cv-00694-PAB-NYW (D. Colo.)



14' 11"

10' 6"

USMCFP Springfield
D01-019L

INMATE
CELL

154 SQ. FT.

**A.389**

$\frac{230}{357}$

Ex. 15. Att. 02     1/4

Cells Drawings, Sketches
& Comments of Illustations



A.391



A.392



Ex. 15. Att. 2  4/4

A.393

Case No. 1:20-cv-00694-PAB-SKC   Document 158   filed 12/10/21   USDC Colorado   pg 12 of
Case 1:04-cr-00356-AT   Document 615-3   Filed 12/15/23   Page 108 of 108

15 of 20

See Ex. 04. (1)2, b, 2,3, C, d, e, F, 1, 2, g.
including List of visitors - example of remedy of
denial of receiving marijua (exhausted), SAMs
discussing about Rca form & approval, other
family forms suchas Son Othman, Yasser.
PTff, to date, never had any visits since
his extradition 2012 & suffers psycholog
-ical painful stress & anxiety increasing by the
time. See also, PTff request to legal Dept
to try to correct the situation and the
general meaneless reply brushing the
issue aside.

## Conclusion of Argument (A)

25: Many other facts show that the Case
is ripe for non dismissal and ready
for some or all discovery as the
Prima face Threshold has been established
by many undisputable facts and can only
be strengthened by the rest of Discovery

26 - It is also, not in public interest that PTff
suffers more degenerative time & conditions or death
in a prolonged stay or after summary
dismissal without full discovery and experts
to advise this respected Court

27- Also the Deficiency of legal Syntax, or need
cure PTff arguments should be burdened on the impostors
and abusers of S.A.Ms as they are the A to Z, reasons of it, And
respectfully, should warrant an appointment of attorney to PTff.
And deny the Stay and to summary dismissals.